## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **PACE INDUSTRIES, LLC,** *et al.*,[1] | Case No. 20-10927 (___) |
| **Debtors.** | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING DEBTORS TO PAY (I) PREPETITION EMPLOYEE OBLIGATIONS AND (II) PREPETITION WITHHOLDING OBLIGATIONS AND (B) AUTHORIZING BANKS TO HONOR RELATED TRANSFERS

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion"), pursuant to sections 105, 363, 507 and 541 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an interim order substantially in the form annexed hereto as **Exhibit A** (the "Interim Order") and a final order substantially in the form annexed hereto as **Exhibit B** (the "Final Order"):  (a) authorizing the Debtors, in their sole discretion, to continue to honor and pay (i) all prepetition employee obligations as described more fully herein and (ii) all prepetition federal, state and applicable foreign withholding obligations, and (b) (i) authorizing all banks to honor the Debtors' prepetition transfers for payment of any of the foregoing and (ii) prohibiting banks from placing holds on, or attempting to reverse, any transfer of funds on account of the foregoing.  In support of this Motion, the Debtors submit the *Declaration of Craig Potter in Support of First Day Relief*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: KPI Holdings, LLC (5032); KPI Capital Holdings, Inc. (6489); KPI Holdings, Inc. (6913); KPI Intermediate Holdings, Inc. (4492); Pace Industries, LLC (6490); Pace Industries, Inc. (6822); Pace FQE, LLC (3611); Port City Group, Inc. (6598); Muskegon Castings, LLC (6858); Alloy Resources, LLC (0283); and Pace Industries of Mexico, L.L.C. (5764).  The Debtors' headquarters are located at 481 South Shiloh Drive, Fayetteville, Arkansas 72704.

(the "First Day Declaration"),[2] filed contemporaneously herewith, and respectfully submit as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware* dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue of the chapter 11 cases and the Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are sections 105, 363, 507, and 541 of the Bankruptcy Code and Rules 6003 and 6004 of the Bankruptcy Rules.

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner or creditors' committee has been appointed in these cases.  The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      Prior to the Petition Date, the Debtors solicited votes on the *Joint Prepackaged Chapter 11 Plan for Pace Industries, LLC and Its Affiliated Debtors* (including all

---

[2]      Capitalized terms used but not otherwise defined herein have the meanings given to them in the First Day Declaration.

exhibits, schedules, appendices, and supplements thereto, and as amended, modified, or supplemented from time to time, the "<u>Plan</u>"), through their disclosure statement related to the Plan (the "<u>Disclosure Statement</u>").  The Plan has been unanimously accepted by the only class entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.  The Debtors have filed or will be filing concurrently herewith a motion seeking, among other things, to schedule a combined hearing on the confirmation of the Plan and approval of the related Disclosure Statement.

5.    The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration.

## **<u>RELIEF REQUESTED</u>**

6.    By this Motion, the Debtors seek authority, in their sole discretion (and subject to the statutory caps contained in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code), to pay and honor (i) all prepetition claims of Employees, including, but not limited to, claims for Wages, Overtime, Temporary Employee Compensation and Independent Contractor Compensation (each as defined herein), as applicable, and certain costs and disbursements related to the foregoing, (ii) any claims or payments pursuant to the Employee Benefit Plans (as defined herein), (iii) all Benefits Withholding Obligations (as defined herein) (collectively with (i) and (ii), the "<u>Employee Obligations</u>"), and (iv) the Reimbursable Expenses.[3]

7.    In addition, the Debtors seek an order authorizing all banks and other financial institutions to receive, process, honor and pay any and all checks or wire transfers

---

[3]    Notwithstanding the foregoing, nothing in this Motion seeks to authorize (1) the payment of any amounts in satisfaction of bonus or severance obligations subject to section 503(c) of the Bankruptcy Code; (2) the payment of any amounts owing to any retired or former Employees (as defined herein) under any supplemental executive retirement plan or otherwise, or (3) the Debtors to cash out unpaid vacation or leave time upon termination of an Employee, unless applicable state law requires such payment. While there is one Employee whose severance payment is subject to section 503(c), this Motion does not seek relief in connection with that payment.

drawn on the Debtors' accounts with respect to payments described in this Motion.  The Debtors additionally request that the Court authorize them to issue new postpetition checks to replace any checks that may be dishonored and to reimburse any expenses that Employees may incur as a result of any bank's failure to honor a prepetition check.

8.    The filing of a chapter 11 petition is a stressful and uncertain time for a debtor's employees.  Such stress and uncertainty often damages employee morale at a critical time when a debtor most needs its employees' loyalty.  Honoring the Employee Obligations and the Reimbursable Expenses will ensure the Debtors' smooth transition into chapter 11 and minimize the hardship the Employees may otherwise endure if payroll and Employee Benefit Programs are interrupted.  Honoring such obligations will also prevent a rapid loss of the Employees, which the Debtors anticipate would otherwise occur if the Employee Obligations and Reimbursable Expenses are not timely paid.  The Debtors believe that the continued payment of the Employee Obligations and Reimbursable Expenses is both critical and justified because of the vital importance of the Employees to the Debtors' business. As such, the Motion should be approved to provide the Employees with certainty that they will continue to be paid in the ordinary course during this time.

## I.    The Debtors' Workforce

9.    The Debtors employ approximately 730 employees. Of these 730 employees, 252 are full-time salaried employees and approximately 478 are either full-time or part-time hourly employees.  The Debtors also utilize the services of staffing agencies to fulfill critical employment needs and to address fluctuations in demand or hire employees with special skills required by the Debtors.  The number of temporary employees (the "Temporary Employees") fluctuates at any given time depending upon the Debtors' needs.  As of the Petition

Date, the Debtors employ 2 Temporary Employees.  Finally, the Debtors employ 4 independent contractors (the "Independent Contractors").

10.     The Debtors typically employ significantly more employees: approximately 370 full-time salaried employees and 2,065 full-time or part-time hourly employees. The Debtors also typically employ approximately 125 Temporary Employees. However, due to the recent outbreak of COVID-19 across the United States, the Debtors have temporarily shut down six of their die-casting facilities in the United States and have temporarily laid off approximately 70% of their employees who work at those facilities in an effort to comply with mandatory stay-at-home orders issued by governments in certain states in which the Debtors operate (the "COVID-19 Layoffs").

11.     As a result of the COVID-19 Layoffs, the Debtors currently do not employ any unionized employees. However, prior to the layoffs, the Debtors employed 330 unionized Employees (collectively, the "Unionized Employees"). The Unionized Employees were located at the Debtors' Airo Division in Loyalhanna, Pennsylvania and were subject to a collective bargaining agreement ("CBA") with the Laborers' International Union of North America Local Union #1357 ("LIUNA"), dated May 15, 2019.

12.     The Employees, Temporary Employees, and Independent Contractors perform a variety of critical functions for the Debtors' businesses, including, without limitation, accounting, administration, engineering, finance, human resources, information technology, operations, manufacturing, marketing, purchasing, shipping, transportation, research, and sales. Their skills, specialized knowledge and understanding of the Debtors' infrastructure and operations, as well as their relationships with customers, vendors and other third parties, are essential to the Debtors' continuing business operations.

26344391.1

5

## II.    Wages, Incentive Payments and Payroll Obligations

### A.    Wages

13.    The Debtors' employees earn wages or salaries on account of their services to the Debtors (collectively, the "Wages").  Salaried employees are paid on a bi-weekly basis for the two weeks preceding the date that their Wages are paid.  Hourly Employees are paid on a weekly basis for the period ending one week before the date that their Wages are paid.  Any non-exempt Employee who works over forty (40) hours per week is eligible for overtime pay ("Overtime") at the rate of 1.5 times such Employee's base hourly rate.

14.    The Debtors' average gross payroll is approximately $500,000 per weekly pay period for hourly employees and $800,000 per bi-weekly payroll period for salaried employees,[4] excluding the Debtors' portion of the Payroll Taxes (as defined below).[5]  The Debtors fund payroll on a weekly basis.  As of the Petition Date, the Debtors estimate that they owe Employees an aggregate of approximately $410,600 in accrued Wages and Overtime earned prior to the Petition Date (subject to the variability described above).  No Employees are owed in excess of the statutory cap under section 507(a)(4) of the Bankruptcy Code on account of such Wages and Overtime.[6]

15.    The Debtors process payroll for all Employees through Ceridian HCM, Inc. ("Ceridian").  Ceridian debits the Debtors' BMO Harris Account ending in x6362 (the "Concentration Account") on a weekly basis on Thursdays and issues checks and direct deposits to the Employees every Friday for hourly employees and every other Friday for salaried

---

[4]    Due to the significant number of hourly employees the precise amount of the Debtors' payroll can vary each pay cycle.

[5]    These figures reflect the Debtors' reduced workforce as a result of the COVID-19 Layoffs.  Prior the COVID-19 Layoffs, the Debtors' average gross payroll was approximately $1.7 million per weekly payroll period for hourly employees and $1.3 million per bi-weekly payroll period for salaried employees.

[6]    Although certain Employees are owed severance payments in excess of the statutory cap, this Motion does not seek relief to make those payments.

employees.  Ceridian also manages the Debtors' Payroll Tax filing process.  Specifically, Ceridian calculates the amount of Payroll Taxes (as defined herein) required to be remitted each pay period, draws that amount from one of the Debtors' bank accounts, and forwards the Payroll Taxes to the applicable Taxing Authorities.  Finally, the Debtors remit payments to benefit plan administrators directly through the Concentration Account.

16.    By way of this Motion, the Debtors request the authority, in the ordinary course of business, to pay Wages and Overtime accrued prepetition to their Employees, up to the statutory priority amount of $13,650 per Employee (inclusive of other Employee Obligations that are subject to section 507(a)(4) of the Bankruptcy Code), and to continue to otherwise pay Employees in the ordinary course of business.[7]

**B.    Incentive Payments**

17.    In addition to the Wages, certain non-insider Employees in the Debtors' Airo, Harrison, Grafton and PTI plants are eligible to receive ordinary course incentive payments if certain metrics are achieved (the "Incentive Payments").  The specific metrics vary by plant, but generally include certain production targets as well as safety and equipment targets.  The magnitude of the Incentive Payments ranges between 3-4% of the Employees' salaries. Incentive Payments are paid on a monthly basis in arrears and administered by Equishare.  As of the Petition Date, the Debtors are aware of approximately $470,000 in accrued and unpaid Incentive Payments owed to certain of the Employees.

---

[7]    For the avoidance of any doubt, the monthly averages cited in Sections II.C., II.E, and II.F below with respect to Temporary Employee Compensation, Payroll Taxes, and Garnishments, respectively, refer to the Debtors' average monthly spend prior to the COVID-19 Layoffs. No Independent Contractors were laid off as a result of the COVID-19 plant closures. Likewise, all monthly and/or yearly averages, as applicable cited in Section V below with respect to the Debtors' various Employee Benefit Plans refer to the Debtors' monthly and/or yearly spend prior to the COVID-19 Layoffs. The Debtors are confident that they will be rehire Employees impacted by the COVID-19 Layoffs after the stay-at-home orders are lifted by the applicable state governments and the Debtors' temporarily closed plants are reopened.

18.     By this Motion, the Debtors request authority under the Final Order to pay eligible non-insider Employees on account of the Incentive Payments earned prior to the Petition Date up to the statutory priority amount of $13,650 per Employee (inclusive of other Employee Obligations that are subject to section 507(a)(4) of the Bankruptcy Code) and to continue to otherwise pay Incentive Payments to eligible Employees in the ordinary course of business (subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder).

## C.      Temporary Employee Compensation

19.     The Debtors currently employ the services of 2 Temporary Employees who work in the Debtors' PTI plant. As noted above, prior to the COVID-19 Layoffs, the Debtors employed the services of approximately 125 Temporary Employees who provided services to the Debtors in six of the Debtors' plants.  The Debtors use a variety of staffing agencies to hire the Temporary Employees.[8]  The Debtors remit compensation for the Temporary Employees (the "Temporary Employee Compensation") to the temporary staffing agencies through the Debtors' accounts payable system.  The Debtors' average monthly spending on Temporary Employee Compensation is approximately $22,000, which is paid weekly in arrears. As of the Petition Date, the Debtors estimate that they owe approximately $400,000 to the staffing agencies on account of Temporary Employee Compensation.  No Temporary Employees are owed amounts in excess of the $13,650 statutory cap under section 507(a)(4) of the Bankruptcy Code on account of such Wages and Overtime.

---

[8]      These agencies include Aerotek, Inc., Award Staffing Inc., Addition Contract Services Inc., Randstad North America, Inc., ManpowerGroup, TRC Staffing Services, SEEK Careers & Staffing, and Express Employment Professionals.

**D.      Independent Contractor Compensation**

20.      The Debtors' average monthly spending on Independent Contractor compensation (the "Independent Contractor Compensation") is approximately $25,000. Independent Contractors are paid either bi-weekly or monthly in arrears.   Independent Contractors are not entitled to Incentive Payments.  As of the Petition Date, the Debtors estimate that they owe approximately $14,700 on account of Independent Contractor Compensation.  No Independent Contractors are owed amounts in excess of the $13,650 statutory cap under section 507(a)(4) of the Bankruptcy Code on account of such Independent Contractor Compensation.

**E.      Payroll Taxes**

21.      As employers, the Debtors are required by law to withhold federal, state and local taxes from Wages for remittance to appropriate tax authorities (the "Employee Taxes"). In addition to the Employee Taxes, the Debtors are required to pay, from their own funds, social security and Medicare taxes and pay, based on a percentage of gross payroll and subject to state-imposed limits, additional amounts for state and federal unemployment insurance (together with the Employee Taxes, the "Payroll Taxes") and remit the same to the appropriate authorities (collectively, the "Taxing Authorities").

22.      In the aggregate, the Debtors estimate that Payroll Taxes total approximately $940,000 per month, based on actual monthly Payroll Taxes paid during calendar year 2019.  As noted above, Ceridian manages the Debtors' Payroll Taxes filing process. Ceridian calculates the amount of Payroll Taxes required to be remitted each pay period, draws that amount from one of the Debtors' bank accounts, and forwards the Payroll Taxes to the applicable Taxing Authorities.

23.      As of the Petition Date, the Debtors estimate that there are no unpaid and outstanding amounts owed to the Taxing Authorities on account of Payroll Taxes for the most

recent period up to the Petition Date.  The Debtors hereby seek authority, in their sole discretion, to continue remitting the Payroll Taxes to the appropriate Taxing Authorities as needed, including, without limitation, with respect to the most recent payroll period up to the Petition Date, and any prior period (subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder).

**F.      Garnishments**

24.      In the ordinary course of processing payroll checks for their Employees, the Debtors may be required by law, in certain circumstances, to withhold from certain Employees' wages amounts for various garnishments, such as tax levies, child support, and other court-ordered garnishments (collectively, the "Garnishments").  The Debtors then remit the Garnishments to the appropriate state agencies.  The Debtors estimate that they withhold approximately $125,000 per month from Employees' wages on account of Garnishments.

**III.    Costs Incidental to Payroll**

25.      The Debtors incur costs incidental to Employee Wages, such as payments to parties for charges associated with the administration of the Wages and for other costs incident to the provision thereof (collectively, the "Processing Costs").  As noted above, the Debtors process payroll for all Employees in the United States through Ceridian.   Ceridian also provides the Debtors with their human resource information system, or HRIS, which hosts the Debtors' performance management and compensation modules, and manages the Debtors' Payroll Tax filing process.  Fees paid to Ceridian total approximately $608,000 annually.

26.      To the best of the Debtors' knowledge, as of the Petition Date, the Debtors do not owe Ceridian any outstanding amounts on account of payroll and tax processing services rendered because the Debtors pay for such services on a transactional basis such that amounts are paid currently each week with the associated payroll cycle for that week. Although the Debtors

do not believe that any Processing Costs are accrued and outstanding as of the Petition Date, the

Debtors seek authority to pay any such amounts out of an abundance of caution.  Payment of the

unpaid Processing Costs is justified because the failure to pay any such amounts might disrupt

the services of third-party providers that are essential to the timely payment of Employees.  By

paying these Processing Costs, the Debtors will avoid disruptions of such services, ensuring that

the Employees obtain all of their compensation without interruption.  Accordingly, the Debtors

hereby seek authority, but not direction, to continue remitting the Processing Costs to the

appropriate third parties.

### IV.    <u>Vacation Time and Other Paid Leave</u>

27.    As part of their overall compensation, the Debtors offer Employees certain

fixed amounts of paid leave.  The Debtors' Vacation Policy provides paid leave for vacation

("<u>Vacation Leave</u>"), accrued based upon the Employee's years of service to the Debtors.  Each

year, Employees accrue their Vacation Leave entitlement on January 1.  Employees are allowed

to carry over five (5) days of vacation from one calendar year to the next calendar year, but any

additional unused vacation days will be lost if not used in the same calendar year.  The balance

of an Employee's Vacation Leave is paid out if an Employee's job is terminated without cause.

The Debtors estimate that, as of the Petition Date, their total liability for accrued, but unpaid,

Vacation Leave is approximately $4.06 million.

28.    The Employees and Unionized Employees are also provided paid holiday

time off for eleven (11) and twelve (12) days per year, respectively ("<u>Holidays</u>").  Employees

may take up to three (3) paid work days due to the health of a member of the Employee's family

("<u>Bereavement Leave</u>").  The Debtors do not separately account for unused Bereavement Leave.

29.    The Debtors also allow their Employees to take certain other leaves of

absence for personal reasons, many of which are required by law ("<u>Leaves of Absence</u>," and

along with Vacation Leave, Holidays, and Bereavement Leave, collectively, "Paid Leave").

Leaves of Absence include family medical leaves, military leaves, and jury duty, and they do not

count toward an Employee's Vacation Leave.

30. By this Motion, the Debtors request authority to continue to honor their

Paid Leave policies in the ordinary course of business in a manner consistent with their

prepetition practices (subject to and in accordance with any orders authorizing postpetition

financing and the use of cash collateral and the applicable budget thereunder); provided,

however, that nothing in this Motion seeks to authorize the Debtors to cash out unpaid Paid

Leave upon an Employee's departure unless applicable state law requires such payment.

**V.    Employee Benefit Plans[9]**

31. The Debtors have established certain benefit plans and policies for eligible

Employees that provide, among other benefits, medical, dental and vision plans, life insurance,

disability insurance, retirement plans and other benefits which are described in more detail below

(collectively, including any administrative costs with respect thereto, the "Employee Benefit

Plans").[10]  The Debtors seek authority to maintain their Employee Benefit Plans, including

paying, in their discretion, any amounts owed in the ordinary course of their business (including

premiums and administrative fees), regardless of when the claims and/or costs related to such

Employee Benefit Plans accrued (subject to and in accordance with any orders authorizing

---

[9]      Any descriptions of Employee Benefit Plans in the Motion are intended as summaries only. To the extent
there are any inconsistencies between the summary descriptions of Employee Benefit Plans contained
herein and the terms and conditions of any documentation governing such programs, the terms of such
documentation shall control.

[10]     In addition to the insurance programs discussed herein, the Debtors also maintain a workers' compensation
insurance policy, which is addressed in a separate motion titled *Debtors' Motion For An Order
(I) Authorizing the Debtors to (A) Continue Their Workers' Compensation Programs and Their Liability,
Property and Other Insurance Programs and (B) Pay Certain Obligations in Respect Thereof and
(II) Authorizing and Directing the Debtors' Financial Institutions to Honor and Process Checks and
Transfers Related to Such Obligations*, filed contemporaneously herewith.

postpetition financing and the use of cash collateral land the applicable budget thereunder).  A brief description of the Employee Benefit Plans is provided below.

## A.    Medical Plans

32.    The Debtors sponsor several health and welfare benefit plans, including medical, dental, and vision coverage for certain of their Employees.  The Debtors offer eligible Employees, other than Employees at the Airo Division, medical benefits through a self-funded plan (the "US Medical Plan") administered by Blue Advantage Administrators of Arkansas ("BAA").  The Debtors offer eligible Employees at the Airo Division a fully-insured plan (the "Airo Medical Plan," and collectively with the US Medical Plan the "Medical Plans") administered by Highmark, Inc. ("Highmark").  The Debtors provide benefits to approximately 1,485 Employees under the US Medical Plan, and approximately 364 Employees under the Airo Medical Plan.  Open enrollment for the Medical Plans begins in May 2020, with Employees' enrollment choices taking effect on July 1, 2020.  Employees are eligible to participate in the US Medical Plan and Airo Medical Plan, as applicable, on the first of the month following thirty (30) days of continuous employment.

### 1.    US Medical Plan

33.    The Debtors are required to pay for all costs arising under the US Medical Plan, including claims payments and associated administrative costs, but Employees are responsible for satisfying the annual deductible and for paying copayments to a network provider.  Claims under the US Medical Plan average approximately $2 million per month.  The Debtors pay approximately $66,000 per month to BAA in administrative fees for their services in connection with the US Medical Plan.  The Debtors also carry stop-loss insurance to cover any individual's claims in excess of the amount of estimated claims in a calendar year.  The Debtors

pay approximately $43,000 per month for such stop-loss coverage provided by Ironshore Insurance Company.

34.     As of the Petition Date, the Debtors estimate that their liability on account of incurred but unpaid medical claims for Employees in the US Medical Plan, along with related administrative costs and/or insurance premiums, is approximately $1.92 million.

**2.     Airo Medical Plan**

35.     On average, the Debtors have incurred approximately $6.2 million per year in connection with the Airo Medical Plan, including costs of administration.   No administrative fees or insurance premiums are unpaid and outstanding on account of the Airo Medical Plan.

**B.     Dental Plan**

36.     The Debtors offer fully-insured dental benefits to eligible Employees and their dependents through Delta Dental (the "Dental Plans").   The Dental Plans are not self-funded.  Employees are eligible to participate in the Dental Plans on the first day of the calendar month coincident with or following thirty (30) days of employment.  Employees are responsible for all costs associated with the Dental Plans, and therefore the Debtors do not have any unpaid and outstanding premiums on account of the Dental Plans.  The premium funds are deducted from the Employees' paychecks and remitted to Delta Dental.  The Debtors estimate that, as of the Petition Date, they are holding approximately $70,000 in deductions for remittance to Delta Dental.

**C.     Vision Plan**

37.     The Debtors offer vision benefits to their eligible Employees and their dependents through plans (the "Vision Plans," and together with the Medical Plans and Dental Plan, the "Health Plans") (i) administered by Vision Service Plan Insurance Company ("VSP")

with respect to non-Unionized Employees and (ii) administered by Davis Vision ("Davis") with respect to Unionized Employees. The Vision Plans are not self-funded. Employees are eligible to participate in the Vision Plan on the first day of the calendar month coincident with or following thirty (30) days of employment. The Debtors pay 100% of the premiums of the Vision Plan. Such payments cost the Debtors approximately $16,000 per month in the aggregate. As of the Petition Date, the Debtors estimate that they owe approximately $15,350 in unpaid and outstanding premiums on account of the Vision Plans.

38.    By this Motion, the Debtors seek authority (subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder) to (a) pay all such amounts owed under the Health Plans to the extent that they remain unpaid on the Petition Date subject to the statutory caps contained in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (as applicable), (b) continue to provide the Health Plans in the ordinary course of business, (c) continue to honor the Debtors' obligations under such benefit programs, including any premiums and administrative fees, and (d) pay any obligations in connection with the Health Plans in the ordinary course of business, including any premiums or administrative fees.

**D.    Other Insurance Plans**

39.    The Debtors offer eligible Employees disability insurance, including short-term disability insurance and long-term disability insurance (the "Disability Insurance Plans"). The short-term disability insurance plan provides eligible Employees continued employment benefits for a maximum of 26 weeks following an extended illness or injury. The long-term disability insurance plan provides Employee who elect coverage with 60% of an employee's salary up to $5,000 per month. Eligible Employees are also offered a basic life insurance benefit, which includes an accidental death and dismemberment benefit, in an amount

equal to (i) an employee's annual base pay, up to a maximum of $50,000 for hourly Employees and (ii) twice the employee's salary up to $500,000 for salaried Employees (the "Life Insurance Plan").

40.    On average, the Debtors incur an aggregate monthly cost of approximately $23,100 in connection with the Disability Insurance Plan and approximately $64,000 in connection with the Life Insurance Plan.  As of the Petition Date, the Debtors believe that there are approximately $124,000 in accrued and unpaid monthly costs in connection with the Life Insurance Plan.  Furthermore, as of the Petition Date, approximately $150,400 is outstanding with respect to the Disability Insurance Plans.

41.    By this Motion, the Debtors seek authority to pay, in their sole discretion (and subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder), any and all prepetition amounts owed on account of the Disability Insurance Plans and Life Insurance Plans, and to continue their prepetition practices with respect to such benefits.

E.    **Supplemental Insurance Programs**

42.    The Debtors' Employees may also choose to enroll in certain other insurance policies (collectively, the "Supplemental Insurance Programs").  The premiums for the Supplemental Insurance Programs are paid for by each participating Employee.  By this Motion, the Debtors seek authority to continue their prepetition practices with respect to the Supplemental Insurance Programs (subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder).

F.    **Flexible Spending Accounts/Health Savings Accounts**

43.    The Debtors offer Employees the ability to contribute a portion of their pre-tax compensation to flexible spending accounts and health savings accounts ("Savings

16

Accounts") to pay for eligible out-of-pocket health care and dependent care expenses.  Prior to

the COVID-19 Layoffs, approximately 457 Employees maintained Savings Accounts.  The funds

deducted from the Employees' paychecks for contribution to the Savings Accounts are remitted

to Total Administrative Services Corporation ("TASC"), which administers claims and remits

reimbursements to Employees.  The Debtors pay TASC approximately $1,580 per month to

administer the Savings Accounts, and the Debtors currently withhold approximately $25,000 per

month on account of Employee contributions to the Savings Accounts.  The Debtors estimate

that, as of the Petition Date, they are holding approximately $6,750 in Savings Account

deductions for remittance to TASC.  There are no unpaid and outstanding amounts in connection

with the Savings Accounts.

**G.    COBRA**

44.    The Debtors pay in the ordinary course of business certain costs associated

with the provision of COBRA extended group health benefits insurance coverage to certain

former employees and their dependents (the "COBRA Coverage").  The Debtors' COBRA

Coverage is administered by WageWorks for a fee of $490 per month (the "COBRA Program").

Under the COBRA Program, an Employee may elect to receive COBRA Coverage for the

continuance of the Medical Plans, Dental Plan, and Vision Plan.  As of the Petition Date, 7

former Employees currently receive COBRA Coverage with respect to the Medical Plans, 8

former Employees receive COBRA Coverage with respect to the Dental Plan, and 5 former

Employees currently receive COBRA Coverage with respect to the Vision Plan, respectively.

No administrative fees are unpaid and outstanding on account of the COBRA Program.

**H.    401(k) Plan**

45.    The Debtors maintain retirement savings plans for the benefit of eligible

Employees in accordance with the requirements of section 401(k) of the Internal Revenue Code

(the "401(k) Plan").  Approximately 2,100 Employees currently contribute to the 401(k) Plan.

The 401(k) Plan is administered by Wells Fargo.  Employees may contribute to the 401(k) Plan

each year through salary deferrals up to the IRS limit.  Until recently, the Debtors also provided

matching contributions to each Employee participant's account under the 401(k) Plan equal to

40% of Employee's salary deferrals, up to 7% of an Employee's compensation (the "Matching

Contributions").  The Matching Contributions under the 401(k) Plan do not totally vest until an

Employee has completed five (5) years of service with the Debtors, although Matching

Contributions vest 20% after one year, 40% after two years, 60% after three years, and 80% after

four years.  However, under IRS guidelines, termination of the 401(k) Plan will cause all

unvested amounts to become automatically vested at the time of plan termination.

46.    The Debtors deduct contributions from Employees' paychecks and remit

contribution amounts to Wells Fargo.  The approximate monthly amount withheld from such

Employees' paychecks for the 401(k) plan contributions is $425,000.[11]  Prior to March 1, 2020,

on average, the Debtors paid approximately $31,600 per pay period in Matching Contributions.

No amounts are accrued but unpaid by the Debtors under the 401(k) Plan as of the Petition Date.

47.    By this Motion, the Debtors seek authority, in their discretion, to continue

to honor their obligations with respect to the 401(k) Plan in the ordinary course of their business

(subject to and in accordance with any orders authorizing postpetition financing and the use of

cash collateral and the applicable budget thereunder).

**I.    Other Benefit Programs**

48.    The Debtors provide eligible Employees with an Educational Assistance

Program ("EAP"), pursuant to which the Debtors reimburse up to a maximum amount of $2,000

---

[11]    Deductions related to the Debtors' 401(k) Plan are on account of Employee plan contributions and 401(k) loan repayments.  Currently, 480 Employees have outstanding 401(k) loan obligations.

per year for actual expenses of an accepted class from an accredited college or university. Full-time Employees are eligible to participate in the EAP after six months of employment. The Debtors estimate that payments on account of the EAP amount to approximately $5,000 per month. As of the Petition Date, the total amount outstanding under the EAP is approximately $25,200.

49.     The Debtors provide Employees with service awards for every five years they are employed with the Debtors, which program is administered by Incentive Services, Inc. As of the Petition Date, the total amount outstanding for this program is approximately $7,180.

50.     The Debtors provide eligible Employees the ability to receive up to $100 in gift cards by taking educational quizzes that provide knowledge and awareness about health and wellness through a program administered by Quizzify. The Debtors pay Quizzify approximately $2,400 monthly to administer this program. As of the Petition Date, the Debtors owe approximately $12,000 to Quizzify in connection with the administration of this program.

51.     The Debtors offer Employees access to the Trestletree Tobacco Cessation Program ("Trestletree"), a behavior-focused solution to becoming tobacco-free. As of the Petition Date, the Debtors owe approximately $480 to Trestletree in connection with the administration of this program.

## VI.    Pension Obligations

52.     Pursuant to the CBA, the Debtors make contributions on behalf of the Unionized Employees directly to a multi-employer pension plan, the LIUNA National (Industrial) Pension Fund (the "Pension Plan"). The Pension Plan is currently underfunded. The unfunded liabilities of the Pension Plan may require increased future payments by the Debtors and other participating employers. As a result, the Pension Plan has adopted a funding rehabilitation plan to increase the applicable plan's funding percentage. As of the Petition Date,

the Debtors believe that there are approximately $232,500 in accrued and unpaid monthly costs in connection with the Pension Plan.

## VII.    Reimbursable Business Expenses

53.    Prior to the Petition Date and in the ordinary course of their businesses, the Debtors reimbursed Employees or remit payment directly to certain credit card companies for approved, legitimate expenses incurred on behalf of the Debtors in the scope of their employment (the "Business Expenses").  The Business Expenses include, without limitation, expenses for work-related travel, lodging, auto expenses, telephone charges, internet charges, meals, and other miscellaneous expenses.

54.    As of the Petition Date, the Debtors are aware of approximately $5,500 in accrued and unpaid Business Expenses awaiting payment.  However, although the Debtors encouraged the submission of expense reports for Business Expenses prior to the Petition Date, the Debtors anticipate that some Employees will have not yet submitted their recent expense reports for accrued and unpaid Business Expenses.  The Debtors typically reimburse approximately $18,300 per month in unpaid Business Expenses.

55.    In addition, 169 Employees are provided with credit cards issued by Regions Financial (collectively, the "Expense Cards," and together with the Business Expenses, the "Reimbursable Expenses") for use for paying business expenses.  A balance of approximately $90,000 remained on the Expense Cards as of the Petition Date.  Failing to reimburse employees for Reimbursable Expenses could have a negative effect on Employee morale and would cause those employees with outstanding Reimbursable Expenses to suffer undue hardship.

56.    Accordingly, the Debtors seek authority, in their sole discretion, to (i) continue their prepetition practices with respect to the Reimbursable Expenses in the ordinary

26344391.1

course of business; (ii) continue to pay the Reimbursable Expenses as they deem appropriate in their business; and (iii) pay all prepetition amounts outstanding in connection with the Reimbursable Expenses in their business judgment (in each case, subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder).

## VIII.    Benefits Withholding Obligations

57.    As part of the relief requested herein, the Debtors seek authorization to pay the Payroll Taxes and all other withholdings such as contributions to savings, retirement or pension plans, insurance contributions and charitable contributions, if any (collectively, the "Benefits Withholding Obligations").

58.    The Debtors routinely withhold from Employee paychecks the Benefits Withholding Obligations and are required to transmit these amounts to third parties.  The Debtors believe that such withheld funds, to the extent that they remain in the Debtors' possession, constitute moneys held in trust and therefore, are not property of the Debtors' estates. Thus, whether or not such funds are prepetition amounts, the Debtors believe that directing such funds to the appropriate parties does not require Court approval.  Nevertheless, in the interests of transparency and full disclosure, the Debtors seek authority to pay any outstanding amounts owed for Benefits Withholding Obligations, in the ordinary course of business, including those incurred prior to the Petition Date (subject to an in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder).

**BASIS FOR RELIEF**

I.    **Sufficient Cause Exists for the Court to Authorize the Debtors to Pay Employee Obligations and Employee Benefits Plans**

59.    Pursuant to section 507(a)(4)(A) of the Bankruptcy Code, claims of employees against a debtor for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status to the extent of $13,650 per individual.  11 U.S.C. § 507(a)(4)(A).  Similarly, section 507(a)(5) of the Bankruptcy Code provides that employees' claims for contributions to certain employee benefits plans are also afforded priority unsecured status to the extent of $13,650 per employee covered by such plan, less any amount paid pursuant to Bankruptcy Code section 507(a)(4). 11 U.S.C. § 507(a)(5).

60.    Furthermore, section 363(b)(1) of the Bankruptcy Code provides that, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

61.    The Debtors believe that many of the Employee Obligations relating to the period prior to the Petition Date constitute priority claims under sections 507(a)(4) and (5) of the Bankruptcy Code.  As priority claims, these obligations must be paid in full before any of the Debtors' general unsecured obligations may be satisfied.  Accordingly, the relief requested will

affect only the timing of the payment of these priority obligations and should not prejudice the rights of general unsecured creditors or other parties in interest.

62.    The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  *See In re Lehigh and New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of the debtor); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition employee wages and benefits while acknowledging that there is judicial power to "authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor"); *see also In re Just For Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that Bankruptcy Code section 105(a) "provides a statutory basis for the payment of prepetition claims" under the doctrine of necessity and noting that the Supreme Court, the United States Circuit Court of Appeals for the Third Circuit, and the District Court of Delaware all accept the authority of the bankruptcy court "to authorize the payment of prepetition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan).  The rationale for the "doctrine of necessity" is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor . . . ."  *In re Ionosphere Clubs, Inc.*, 98 B.R.

26344391.1

at 176. Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

63.     The Debtors submit that, as set forth above, payments made in connection with the Employee Obligations and Employee Benefits Plans are justified by the facts and circumstances of the Chapter 11 Cases.  Courts in this and other districts have ruled that the standard for approval under section 503(c)(3) of the Bankruptcy Code – that the programs are justified by the facts and circumstances of the case – is essentially the same as the standard for similar transactions under section 363(b)(1) of the Bankruptcy Code: the business judgment standard.  *See, e.g., In re Global Home Prods., LLC*, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) (reviewing incentive plans under the business judgment standard); *In re Dana Corp.*, 358 B.R. 567, 584 (Bankr. S.D.N.Y. 2006) (reviewing bonus plans under the business judgment standard). Thus, payments in connection with Employee Obligations and Employee Benefits Plans are allowed under section 503(c)(3) of the Bankruptcy Code because they represent the exercise of the Debtors' sound business judgment under section 363 of the Bankruptcy Code and are in the best business interest of the Debtors' estates and their creditors.

64.     In these cases, any delay or failure to pay Employee Obligations and Employee Benefits Plans could irreparably damage the Employees' morale, dedication, confidence and cooperation and could adversely affect the Debtors' relationship with the Employees at a time when the Employees' support is critical.  The Debtors simply cannot risk the substantial harm to their businesses that would inevitably attend any decline in their Employees' morale.  Such relief allows the Debtors to focus on maximizing value for the benefit of their estates and creditors.  Under these circumstances, approval of the requested relief is appropriate.

65.     Absent an order granting the relief requested herein, the Employees could suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question may be needed to enable certain of the Employees to meet their own personal financial obligations.  Imposing such hardship on the Employees could undermine the Debtors' stability, perhaps irreparably, because it could cause otherwise loyal Employees to seek other employment alternatives.  In addition, it would be inequitable to require the Employees to bear personally the cost of any Business Expenses they incurred prepetition on behalf of the Debtors with the understanding that they would be reimbursed.

66.     With respect to Payroll Taxes in particular, the payment of such taxes will not prejudice other creditors, as the relevant Taxing Authorities generally would hold priority claims under section 507(a)(8) of the Bankruptcy Code with respect to such obligations. Moreover, Payroll Taxes withheld from an Employee's wages on behalf of an applicable Taxing Authority are held in trust by the Debtors.  Therefore, these Payroll Taxes are not property of the Debtors' estates under section 541 of the Bankruptcy Code.  See, e.g., Begier v. IRS, 496 U.S. 53, 60-61 (1990) (concluding that withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate).

67.     The Debtors do not seek to alter any of the Employee Benefits Plans at this time.  This Motion is intended only to permit the Debtors, in their discretion (but subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder), to (i) make payments consistent with existing policies to the extent that, without the benefit of an order approving this Motion, such payments may be inconsistent with the relevant provisions of the Bankruptcy Code and (ii) continue to honor practices, programs, and policies with respect to their Employees, insofar as such

practices, programs, and policies were in effect as of the Petition Date. Payment of all obligations arising under the Employee Benefits Plans in accordance with the Debtors' prepetition business practices is in the best interests of the Debtors' estates, their creditors and all parties in interest and will enable the Debtors to continue to operate their businesses in an economic and efficient manner and to conduct a successful reorganization without disruption. The Debtors' Employees are central to their businesses and are vital to these Chapter 11 Cases, and failure to pay amounts owed under the Employee Benefits Plans would have a detrimental impact on the Debtors and their efforts to preserve and maximize value for their stakeholders. The total amount sought to be paid herein is modest compared with the magnitude of the Debtors' overall business and the importance of the Employees to the Debtors' operations during these Chapter 11 Cases.

68.     In other chapter 11 cases, courts in this district have approved payment of prepetition claims for compensation, benefits, and expense reimbursements similar to those described herein. *See, e.g.*, *In re Gen. Wireless Operations Inc.*, No. 17-10506 (BLS) (Bankr. D. Del. Mar. 10, 2017); *In re Lily Robotics, Inc.*, No. 17-10426 (KJC) (Bankr. D. Del. Feb 28, 2017); *In re Golfsmith Int'l Holdings, Inc.*, No. 16-12033 (CSS) (Bankr. D. Del. Sept. 15, 2016); *In re Vertellus Specialties Inc.*, No. 16-11290 (CSS) (Bankr. D. Del. June 1, 2016); *In re City Sports, Inc.*, No 15-10254 (KG) (Bankr. D. Del. Oct. 28, 2015).

69.     Accordingly, by this Motion, the Debtors seek authority, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to continue to provide Employee Benefits Plans and pay Employee Obligations, at their discretion, as they become due and owing during the pendency of these cases and to continue, uninterrupted, all practices, programs and policies

with respect to the Debtors' Employees, insofar as such practices, programs and policies were in effect as of the Petition Date.

## II.    Request for Authority for Banks to Honor and Pay Checks Issued and Electronic Funds Transfers Requested to Pay Employee Obligations

70.    The Debtors request that the Court authorize all banks to receive, process, honor and pay any and all checks drawn or electronic funds transfers requested to pay Employee Obligations, whether such checks were presented prior to or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.  The Debtors also seek authority to issue new postpetition checks, or effect new electronic funds transfers, on account of such claims to replace any prepetition checks or electronic funds transfer requests that may be dishonored or rejected as a result of the commencement of the Chapter 11 Cases.  The Debtors submit that they have sufficient liquidity to pay such amounts as they become due in the ordinary course of the Debtors' businesses.

## THE MOTION SATISFIES BANKRUPTCY RULE 6003

71.    Bankruptcy Rule 6003 provides that to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may grant certain forms of relief during the twenty-one (21) days immediately following the filing date.  As described herein and in the First Day Declaration, the Debtors' Employees are integral to their operations.  Failure to satisfy the Debtors' obligations with respect to their Employees in the ordinary course of business during these cases will jeopardize the Employees' loyalty and trust, possibly causing Employees to leave the Debtors' employment; such a departure of vital employees would severely disrupt the Debtors' operations at this critical juncture.  Moreover, the Employees rely on their compensation, benefits, and reimbursement of expenses to pay their living expenses, and it could be financially ruinous if the Debtors cannot pay them in the ordinary course of business.

Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of certain prepetition obligations related to the Employees.

## WAIVER OF BANKRUPTCY RULE 6004

72.    To successfully implement the relief the Debtors request in this Motion, the Debtors also request that the Court waive the notice requirements of Bankruptcy Rule 6004(a) and the stay imposed by Bankruptcy Rule 6004(h).  As discussed above, the relief requested herein must be granted without delay in order for the Debtors to continue operating their business and for preservation of the estates.  Therefore, the Debtors respectfully request that the notice and stay requirements imposed by Bankruptcy Rules 6004(a) and 6004(h) be waived.

## DEBTORS' RESERVATION OF RIGHTS

73.    Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any invoice with respect to any potential claims under applicable non-bankruptcy law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

74.    Notice of this Motion will be provided to:  (i) the U.S. Trustee (David Buchbinder, david.l.buchbinder@usdoj.gov); (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis) at the email addresses provided in the Debtors' top 20 creditors list; (iii) McGuireWoods LLP (Brian I. Swett, Esq., bswett@mcguirewoods.com) and Richards, Layton & Finger, P.A. (John Knight, Esq.,

26344391.1

knight@rlf.com), as primary and Delaware counsel to Bank of Montreal in its capacities as administrative agent under the Debtors' prepetition secured revolving credit facility and the Debtors' postpetition secured revolving credit facility; (iv) Schulte Roth & Zabel LLP (Adam C. Harris, Esq., adam.harris@srz.com and Kelly V. Knight, Esq., kelly.knight@srz.com) and Landis Rath & Cobb LLP (Adam Landis, Esq., landis@lrclaw.com), as primary and Delaware counsel to TCW Asset Management Company LLC in its capacities as administrative agent and collateral agent under the Debtors' prepetition senior secured notes agreement and the Debtors' postpetition secured term loan financing facility; (v) Gibson Dunn & Crutcher LLP, as counsel to certain holders of the Debtors' preferred equity (Jeffrey C. Krause, Esq., jkrause@gibsondunn.com); (vi): Dorsey & Whitney LLP, as counsel to certain holders of the Debtors' preferred equity (Attn: Larry Makel, Esq., makel.larry@dorsey.com); (vii) Hughes Hubbard & Reed LLP, as counsel to Kenner & Company, Inc. (Kathryn A. Coleman, Esq., katie.coleman@hugheshubbard.com); (viii) the Internal Revenue Service (sbse.insolvency.balt@irs.gov); and (ix) the United States Attorney's Office for the District of Delaware (usade.ecfbankruptcy@usdoj.gov) (collectively, the "Notice Parties").  Notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  A copy of this Motion and any order approving it will also be made available on the Debtors' case information website located at http://www.kccllc.net/pace.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:  April 12, 2020
        Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Edmon L. Morton*
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Joseph M. Mulvihill (No. 6061)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
emorton@ycst.com
jmulvihill@ycst.com

-and-

WILLKIE FARR & GALLAGHER LLP
Matthew A. Feldman (*pro hac vice* pending)
Rachel C. Strickland (*pro hac vice* pending)
Debra M. Sinclair (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
mfeldman@willkie.com
rstrickland@willkie.com
dsinclair@willkie.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **PACE INDUSTRIES, LLC,** *et al.,*[1] | Case No. 20-10927 (___) |
| **Debtors.** | (Jointly Administered) |

## INTERIM ORDER (A) AUTHORIZING DEBTORS TO PAY (I) PREPETITION EMPLOYEE OBLIGATIONS, (II) PREPETITION WITHHOLDING OBLIGATIONS, AND (III) POSTPETITION EMPLOYEE OBLIGATIONS IN THE ORDINARY COURSE, AND (B) AUTHORIZING BANKS TO HONOR RELATED TRANSFERS

Upon the motion (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105, 363, 507 and 541 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 6003 and 6004, seeking entry of an order: (a) authorizing, but not directing, the Debtors to continue to honor and pay (i) all prepetition employee obligations as described more fully in the Motion and (ii) all prepetition federal and state withholding obligations and (b) authorizing all banks to honor the Debtors' prepetition transfers for payment of any of the foregoing and prohibiting banks from placing holds on, or attempting to reverse, any transfers on account of the foregoing; and upon the *Declaration of Craig Potter in Support of First Day Relief*; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: KPI Holdings, LLC (5032); KPI Capital Holdings, Inc. (6489); KPI Holdings, Inc. (6913); KPI Intermediate Holdings, Inc. (4492); Pace Industries, LLC (6490); Pace Industries, Inc. (6822); Pace FQE, LLC (3611); Port City Group, Inc. (6598); Muskegon Castings, LLC (6858); Alloy Resources, LLC (0283); and Pace Industries of Mexico, L.L.C. (5764).  The Debtors' headquarters are located at 481 South Shiloh Drive, Fayetteville, Arkansas 72704.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

dated February 29, 2012; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, in their sole discretion, to continue to honor and pay all prepetition Employee Obligations in the ordinary course of business as they come due up to the following aggregate interim amounts:

| | |
|---|---|
| Wages and Overtime | $410,600 |
| Employee Benefit Plans | $2,100,000 |

3.      The Debtors are authorized, but not directed, to pay all prepetition amounts owing to the Temporary Employees for their services in the ordinary course of business as they come due up to an aggregate interim amount of $400,000.

4.      The Debtors are authorized, but not directed, to pay all prepetition amounts owing to the Independent Contractors for their services in the ordinary course of business as they come due up to an aggregate interim amount of $14,700.

5.        Notwithstanding any other provision of this Interim Order, prior to the entry of a Final Order granting the relief requested in the Motion, no payment to, or on behalf of, any individual Employee, Temporary Employee, or Independent Contractor on account of prepetition Employee Obligations shall exceed the amounts afforded priority status by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

6.        The Debtors are authorized to honor their Paid Leave policies in the ordinary course of business in a manner consistent with their prepetition practices.  For the avoidance of doubt, the Debtors' Employee Obligations relating to unpaid vacation or leave time shall not be paid out in cash except upon termination or resignation of an Employee with accrued and unpaid vacation or leave tine, and only if payment in cash under such circumstances is required under applicable law.  Any such payment shall not exceed $13,650 per Employee.

7.        The Debtors are authorized, in their sole discretion, to continue to honor and pay all Reimbursable Expenses, including any such prepetition expenses up to an aggregate interim amount of $95,500.

8.        The Debtors are authorized, in their sole discretion, to honor and continue their programs, policies and practices with respect to the Employee Obligations, Temporary Employees, and Independent Contractors that were in effect as of the Petition Date, in the ordinary course of business.

9.        The Debtors are authorized, in their sole discretion, to pay any obligations in connection with the Health Plans in the ordinary course of business, including any premiums or administrative fees.

10.        All of the Debtors' banks are authorized to receive, process, honor and pay any and all checks or electronic transfers drawn on the Debtors' payroll and general

disbursement accounts related to Employee Obligations, Reimbursable Expenses, Temporary Employees, and Independent Contractors authorized by this Order, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

11.     To the extent that any employment or related agreements may be deemed executory contracts within the meaning of section 365 of the Bankruptcy Code, the Debtors do not at this time seek authority to assume such contracts, and no relief is granted in respect thereof.

12.     Nothing herein shall be deemed to authorize (1) the payment of any amounts in satisfaction of bonus or severance obligations subject to section 503(c) of the Bankruptcy Code; (2) the payment of any amounts owing to any retired or former Employees under any supplemental executive retirement plan or otherwise, or (3) the Debtors to cash out unpaid vacation or leave time upon termination of an employee, unless applicable state law requires such payment.

13.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein, or authorizations contained hereunder, shall be subject to and in compliance with the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* (the "Interim DIP Order", as the same may be modified by any final order) and the Approved Budget (as defined in the Interim DIP Order).  To the extent there is

any inconsistency between the Interim DIP Order and the Approved Budget, on the one hand, and any action taken or proposed to be taken hereunder, on the other hand, the terms of the Interim DIP Order and the Approved Budget shall control.

14.     Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

15.     The requirements of Bankruptcy Rule 6004(a) are waived.

16.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

17.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

18.     <u>Objection Deadline and Final Hearing</u>.   The deadline by which parties must file and serve objections via mail or email, if any, to the Motion is ____, 2020 at 4:00 p.m. (Prevailing Eastern Time).  Objections shall be served upon: (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: Rachel C. Strickland, rstrickland@willkie.com and Debra M. Sinclair, dsinclair@willkie.com); (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE 19801 (Attn: Edmon L. Morton, emorton@ycst.com and Joseph M. Mulvihill, jmulvihill@ycst.com); and (iii) the Notice Parties.  If no objections to the Motion are filed, the Court may enter the Final Order without further notice or hearing.  The Final Hearing, if required, will be held on ___, 2020 at _:00 _.m. (Prevailing Eastern Time).

19.     The Court shall retain jurisdiction with respect to all matters arising from

or relating to the interpretation or implementation of this Order.

Dated: _____, 2020
Wilmington, Delaware

_____

UNITED STATES BANKRUPTCY JUDGE

26344391.1

**EXHIBIT B**

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| **PACE INDUSTRIES, LLC, *et al.*,**[1] | Case No. 20-10927 (___) |
| **Debtors.** | (Jointly Administered) |

**FINAL ORDER (A) AUTHORIZING DEBTORS TO PAY (I) PREPETITION
EMPLOYEE OBLIGATIONS, (II) PREPETITION WITHHOLDING OBLIGATIONS,
AND (III) POSTPETITION EMPLOYEE OBLIGATIONS IN THE ORDINARY
COURSE, AND (B) AUTHORIZING BANKS TO HONOR RELATED TRANSFERS**

Upon the motion (the "Motion")[2] filed by the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105, 363, 507 and 541 of

title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 6003 and

6004, seeking entry of an order: (a) authorizing, but not directing, the Debtors to continue to

honor and pay (i) all prepetition employee obligations as described more fully in the Motion,

(ii) all prepetition federal and state withholding obligations, (iii) postpetition employee

obligations in the ordinary course, and (b) authorizing all banks to honor the Debtors' prepetition

transfers for payment of any of the foregoing and prohibiting banks from placing holds on, or

attempting to reverse, any transfers on account of the foregoing; and upon the *Declaration of

Craig Potter in Support of First Day Relief*; and it appearing that this Court has jurisdiction to

consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: KPI Holdings, LLC (5032); KPI Capital Holdings, Inc. (6489); KPI Holdings, Inc. (6913); KPI Intermediate Holdings, Inc. (4492); Pace Industries, LLC (6490); Pace Industries, Inc. (6822); Pace FQE, LLC (3611); Port City Group, Inc. (6598); Muskegon Castings, LLC (6858); Alloy Resources, LLC (0283); and Pace Industries of Mexico, L.L.C. (5764).  The Debtors' headquarters are located at 481 South Shiloh Drive, Fayetteville, Arkansas 72704.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Reference from the United States District Court for the District of Delaware*, dated February 29,

2012; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final

order consistent with Article III of the United States Constitution; and this Court having

determined that the relief requested in the Motion is in the best interests of the Debtors, their

estates, their creditors and other parties-in-interest; and it appearing that proper and adequate

notice of the Motion has been given and that no other or further notice is necessary; and after due

deliberation thereon; and good and sufficient cause appearing therefor;

## IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED on a final basis as set forth herein.

2.     The Debtors are authorized, in their sole discretion, to continue to honor

and pay all prepetition Employee Obligations in the ordinary course of business as they come

due.

3.     The Debtors are authorized, but not directed, to pay all prepetition

amounts owing to the Temporary Employees for their services in the ordinary course of business

as they come due.

4.     The Debtor are authorized, but not directed, to pay all prepetition amounts

owing to the Independent Contractors for their services in the ordinary course of business as they

come due.

5.      No payment to, or on behalf of, any individual Employee, Temporary

Employee, or Independent Contractor on account of prepetition Employee Obligations shall

exceed the amounts afforded priority status by sections 507(a)(4) and 507(a)(5). Payments on

26344391.1

2

account of Employee Obligations related to unpaid vacation or leave time shall not exceed $13,650 per employee unless such amounts are required to be paid under applicable law.

6. The Debtors are authorized to honor their Paid Leave policies in the ordinary course of business in a manner consistent with their prepetition practices. For the avoidance of doubt, the Debtors' Employee Obligations relating to unpaid vacation or leave time shall not be paid out in cash except upon termination or resignation of an Employee with accrued and unpaid vacation or leave tine, and only if payment in cash under such circumstances is required under applicable law. Any such payment shall not exceed $13,650 per Employee.

7. The Debtors are authorized, in their sole discretion, to honor and continue their programs, policies and practices with respect to the Employee Obligations, Temporary Employees, and Independent Contractors that were in effect as of the Petition Date, in the ordinary course of business.

8. The Debtors are authorized, in their sole discretion, to pay any obligations in connection with the Health Plans in the ordinary course of business, including any premiums or administrative fees.

9. All of the Debtors' banks are authorized to receive, process, honor and pay any and all checks or electronic transfers drawn on the Debtors' payroll and general disbursement accounts related to Employee Obligations, Reimbursable Expenses, Temporary Employees, and Independent Contractors authorized by this Order, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

10. To the extent that any employment or related agreements may be deemed executory contracts within the meaning of section 365 of the Bankruptcy Code, the Debtors do

not at this time seek authority to assume such contracts, and no relief is granted in respect thereof.

11.     Nothing herein shall be deemed to authorize (1) the payment of any amounts in satisfaction of bonus or severance obligations subject to section 503(c) of the Bankruptcy Code; (2) the payment of any amounts owing to any retired or former Employees under any supplemental executive retirement plan or otherwise, or (3) the Debtors to cash out unpaid vacation or leave time upon termination of an employee, unless applicable state law requires such payment.

12.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein, or authorizations contained hereunder, shall be subject to and in compliance with the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* (the "Interim DIP Order", as the same may be modified by any final order) and the Approved Budget (as defined in the Interim DIP Order). To the extent there is any inconsistency between the Interim DIP Order and the Approved Budget, on the one hand, and any action taken or proposed to be taken hereunder, on the other hand, the terms of the Interim DIP Order and the Approved Budget shall control.

13.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

15.     The Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

Dated: _____, 2020
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE