## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | Chapter 11 |
| **PACE INDUSTRIES, LLC, *et al.*,**[1] | Case No. 20-_____(___) |
| **Debtors.** | |

## JOINT PREPACKAGED CHAPTER 11 PLAN FOR
## PACE INDUSTRIES, LLC AND ITS AFFILIATED DEBTORS

**PACE INDUSTRIES, LLC, ET AL., HAVE NOT FILED VOLUNTARY CASES UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE. NO CHAPTER 11 CASES HAVE YET BEEN COMMENCED.**

**THIS PREPACKAGED CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND WITHIN THE MEANING OF SECTION 1126 OF THE BANKRUPTCY CODE. THE SOLICITATION MATERIALS ACCOMPANYING THIS PLAN HAVE NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF 11 U.S.C. § 1125(a).**

**THE DEBTORS WILL FILE THIS PLAN WITH THE BANKRUPTCY COURT FOLLOWING SOLICITATION AND COMMENCEMENT OF THE CHAPTER 11 CASES AND WILL SEEK AN ORDER OR ORDERS OF THE BANKRUPTCY COURT APPROVING THE SOLICITATION OF VOTES AS HAVING BEEN IN COMPLIANCE WITH 11 U.S.C. § 1126(b) AND CONFIRMING THE PLAN PURSUANT TO 11 U.S.C. § 1129.**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: KPI Holdings, LLC (5032); KPI Capital Holdings, Inc. (6489); KPI Holdings, Inc. (6913); KPI Intermediate Holdings, Inc. (4492); Pace Industries, LLC (6490); Pace Industries, Inc. (6822); Pace FQE, LLC (3611); Port City Group, Inc. (6598); Muskegon Castings, LLC (6858); Alloy Resources, LLC (0283); and Pace Industries of Mexico, LLC (5764). The Debtors' headquarters are located at 481 South Shiloh Drive, Fayetteville, Arkansas 72704.

Dated:     April 11, 2020

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Joseph M. Mulvihill (No. 6061)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
jmulvihill@ycst.com
emorton@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Matthew A. Feldman (pro hac vice pending)
Rachel C. Strickland (pro hac vice pending)
Debra M. Sinclair (pro hac vice pending)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
mfeldman@willkie.com
rstrickland@willkie.com
dsinclair@willkie.com

*Proposed Counsel for the Debtors and Debtors in Possession*

# TABLE OF CONTENTS

ARTICLE I.  DEFINITIONS AND INTERPRETATION ..............................................................2

ARTICLE II.  CERTAIN INTER-CREDITOR AND INTER-DEBTOR ISSUES ....................16

    **2.1.**  *Settlement of Certain Inter-Creditor Issues* ..........................................16

    **2.2.**  *Formation of Debtor Groups for Convenience Purposes* ...................16

    **2.3.**  *Intercompany Claims and Intercompany Interests* .............................16

ARTICLE III.  DIP CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS,
           PROFESSIONAL FEE CLAIMS, U.S. TRUSTEE FEES AND
           PRIORITY TAX CLAIMS ..................................................................17

    **3.1.**  *DIP Claims* ..........................................................................................17

    **3.2.**  *Administrative Expense Claims* ..........................................................18

    **3.3.**  *Professional Fee Claims* ....................................................................18

    **3.4.**  *U.S. Trustee Fees* ...............................................................................19

    **3.5.**  *Priority Tax Claims* .............................................................................20

ARTICLE IV.  CLASSIFICATION OF CLAIMS AND INTERESTS .......................................20

    **4.1.**  *Classification of Claims and Interests* ...............................................20

    **4.2.**  *Unimpaired Classes of Claims* ...........................................................21

    **4.3.**  *Impaired Classes of Claims* ................................................................21

    **4.4.**  *Separate Classification of Other Secured Claims* ..............................21

ARTICLE V.  TREATMENT OF CLAIMS AND INTERESTS..................................................22

    **5.1.**  *Priority Non-Tax Claims (Class 1)* .....................................................22

    **5.2.**  *Other Secured Claims (Class 2)* .........................................................22

    **5.3.**  *Senior Notes Claims (Class 3)* ...........................................................23

    **5.4.**  *General Unsecured Claims (Class 4)* ..................................................23

    **5.5.**  *Existing Securities Law Claims (Class 5)* ...........................................23

    **5.6.**  *Existing Interests (Class 6)* .................................................................24

ARTICLE VI.  ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
           REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR
           INTERESTS .......................................................................................24

    **6.1.**  *Class Acceptance Requirement* ..........................................................24

    **6.2.**  *Tabulation of Votes on a Non-Consolidated Basis* ............................24

| | | |
|---|---|---|
| **6.3.** | **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."** | 24 |
| **6.4.** | **Elimination of Vacant Classes** | 25 |
| **6.5.** | **Voting Classes; Deemed Acceptance by Non-Voting Classes** | 25 |
| **6.6.** | **Confirmation of All Cases** | 25 |

ARTICLE VII.  MEANS FOR IMPLEMENTATION ............................................................25

| | | |
|---|---|---|
| **7.1.** | **Non-Substantive Consolidation** | 25 |
| **7.2.** | **Continued Corporate Existence, Vesting of Assets in the Reorganized Debtors and Entry into the Indemnification Agreement** | 26 |
| **7.3.** | **New ABL Facility; New Pace Industries Term Loan Facility; New Pace Holdco Loan Facility** | 27 |
| **7.4.** | **Authorization, Issuance and Delivery of Plan Securities** | 27 |
| **7.5.** | **Cancellation of Existing Securities and Agreements** | 28 |
| **7.6.** | **New Board** | 28 |
| **7.7.** | **New Management** | 28 |
| **7.8.** | **Corporate and Other Action** | 28 |
| **7.9.** | **Comprehensive Settlement of Claims and Controversies** | 29 |
| **7.10.** | **Transactions Authorized Under Plan** | 29 |
| **7.11.** | **Approval of Plan Documents** | 29 |

ARTICLE VIII.  DISTRIBUTIONS ...................................................................................30

| | | |
|---|---|---|
| **8.1.** | **Distributions** | 30 |
| **8.2.** | **No Postpetition Interest on Claims** | 30 |
| **8.3.** | **Date of Distributions** | 30 |
| **8.4.** | **Distribution Record Date** | 30 |
| **8.5.** | **Disbursing Agent** | 31 |
| **8.6.** | **Delivery of Distribution** | 32 |
| **8.7.** | **Satisfaction of Claims** | 32 |
| **8.8.** | **Manner of Payment Under Plan** | 32 |
| **8.9.** | **No Distribution in Excess of Amount of Allowed Claim** | 32 |
| **8.10.** | **Exemption from Securities Laws** | 32 |
| **8.11.** | **Setoffs and Recoupments** | 33 |
| **8.12.** | **Withholding and Reporting Requirements** | 33 |

ARTICLE IX.  PROCEDURES FOR RESOLVING CLAIMS ..............................................33

| | | |
|---|---|---|
| **9.1.** | **Disputed Claims** | 33 |

| | | |
|---|---|---|
| **9.2.** | *Objections to Claims* | 34 |
| **9.3.** | *Estimation of Claims* | 34 |
| **9.4.** | *Expenses Incurred on or After the Effective Date* | 35 |

ARTICLE X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............35

| | | |
|---|---|---|
| **10.1.** | *General Treatment* | 35 |
| **10.2.** | *Claims Based on Rejection of Executory Contracts or Unexpired Leases* | 36 |
| **10.3.** | *Cure of Defaults for Assumed or Assumed and Assigned Executory Contracts and Unexpired Leases* | 36 |
| **10.4.** | *Effect of Confirmation Order on Assumption, Assumption and Assignment, and Rejection* | 37 |
| **10.5.** | *Assumption of Directors and Officers Insurance Policies* | 38 |
| **10.6.** | *Severance Contracts and Programs* | 38 |

ARTICLE XI. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ...........38

| | | |
|---|---|---|
| **11.1.** | *Conditions Precedent to the Effective Date* | 38 |
| **11.2.** | *Satisfaction and Waiver of Conditions Precedent* | 39 |
| **11.3.** | *Effect of Failure of Conditions Precedent to the Effective Date* | 39 |

ARTICLE XII. EFFECT OF CONFIRMATION .........................................40

| | | |
|---|---|---|
| **12.1.** | *Binding Effect* | 40 |
| **12.2.** | *Discharge of Claims Against and Interests in the Debtors* | 40 |
| **12.3.** | *Term of Pre-Confirmation Injunctions or Stays* | 40 |
| **12.4.** | *Injunction Against Interference with Plan* | 41 |
| **12.5.** | *Injunction* | 41 |
| **12.6.** | *Releases* | 42 |
| **12.7.** | *Exculpation and Limitation of Liability* | 45 |
| **12.8.** | *Injunction Related to Releases and Exculpation* | 45 |
| **12.9.** | *Retention of Causes of Action/Reservation of Rights* | 45 |

ARTICLE XIII. RETENTION OF JURISDICTION .................................46

ARTICLE XIV. MISCELLANEOUS PROVISIONS.................................48

| | | |
|---|---|---|
| **14.1.** | *Exemption from Certain Transfer Taxes* | 48 |
| **14.2.** | *Termination of Professionals* | 49 |
| **14.3.** | *Amendments* | 49 |
| **14.4.** | *Revocation or Withdrawal of this Plan* | 49 |
| **14.5.** | *Allocation of Plan Distributions Between Principal and Interest* | 49 |

**14.6.**  *Severability* ......................................................................................50

**14.7.**  *Governing Law* ..................................................................................50

**14.8.**  *Section 1125(e) of the Bankruptcy Code* ..........................................50

**14.9.**  *Inconsistency* ...................................................................................50

**14.10.** *Time* ..................................................................................................51

**14.11.** *Exhibits* .............................................................................................51

**14.12.** *Notices* ..............................................................................................51

**14.13.** *Filing of Additional Documents* .......................................................52

**14.14.** *Reservation of Rights* .......................................................................52

# INTRODUCTION[2]

Pace Industries, LLC, a Delaware limited liability company, together with the other above-captioned Debtors, hereby propose the following chapter 11 plan under section 1121(c) of the Bankruptcy Code for the resolution of the outstanding claims against, and equity interests in, the Debtors.

The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (distributed contemporaneously herewith) for a discussion of the Debtors' history, businesses, properties, projections, the events leading up to solicitation of the Plan and for a summary and analysis of the Plan and the treatment provided for herein. The Debtors urge all holders of Claims entitled to vote on the Plan to review the Disclosure Statement and the Plan in full before voting to accept or reject the Plan. There also are other agreements and documents that will be filed with the Bankruptcy Court that are referenced in the Plan and the Plan Supplement as exhibits. All such exhibits are incorporated into and are a part of the Plan as if set forth in full herein. Subject to certain restrictions set forth in the Plan, and the requirements set forth in 11 U.S.C. § 1127, Bankruptcy Rule 3019 and Sections 14.3 and 14.4 of the Plan, the Debtors reserve the right to amend, supplement, amend and restate, modify, revoke or withdraw the Plan prior to the Effective Date.

The Chapter 11 Cases will be consolidated for procedural purposes only and the Debtors will request that they be jointly administered pursuant to an order of the Bankruptcy Court. The Plan constitutes a separate plan of reorganization for each of the Debtors and notwithstanding anything herein, the Plan may be confirmed and consummated as to each of the Debtors separate from, and independent of, confirmation and consummation of the Plan as to any other Debtors. If the Plan cannot be confirmed as to some or all of the Debtors, then the Debtors, with the consent of the Required Holders, (a) may revoke the Plan as to all of the Debtors or (b) may revoke the Plan as to any Debtors (and any such Debtors' Chapter 11 Cases may be converted, continued or dismissed) and confirm the Plan as to the remaining Debtors to the extent required without the need for re-solicitation as to any holder of a Claim against or Interest in the Debtors for which the Plan is not so revoked. The Debtors also reserve the right to seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class.

The Plan contemplates the reorganization of Pace Industries, LLC and each of its direct and indirect subsidiaries which, from and after the Effective Date, will be owned by New Pace Holdco LLC. New Pace Holdco will in turn be owned by parties who are currently holders of the Prepetition Senior Notes. The Plan further contemplates that, except as may be determined by the Required Holders in their sole discretion, on or after the Effective Date, Debtors KPI Holdings, LLC, KPI Capital Holdings, Inc., KPI Holdings, Inc. and KPI Intermediate Holdings, Inc. will transfer all of their assets (if any), other than their Interests in

---

[2]     All capitalized terms used but not defined herein have the meanings set forth in Article I.

one another, to Reorganized Pace Industries and will thereafter be dissolved in accordance with applicable law.

<h1 style="text-align:center">ARTICLE I.<br>DEFINITIONS AND INTERPRETATION</h1>

### A.    Definitions.

The following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural):

**1.1** *Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of the kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code (other than a DIP Claim, Professional Fee Claim, or U.S. Trustee Fees) incurred during the period from the Petition Date to the Effective Date, including: (a) any actual and necessary costs and expenses of preserving the Estates, any actual and necessary costs and expenses of operating the Debtors' business, and any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases; and (b) any payment to be made under this Plan to cure a default under an assumed, or assumed and assigned, executory contract or unexpired lease.

**1.2** *Allowed* means, with respect to a Claim under this Plan, a Claim that is an Allowed Claim or an Allowed _____ Claim.

**1.3** *Allowed Claim or Allowed _____ Claim* (with respect to a specific type of Claim, if specified) means: (a) any Claim (or a portion thereof) as to which no action to dispute, disallow, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter the priority thereof (including a claim objection), has been timely commenced within the applicable period of limitation fixed by this Plan or applicable law, or, if an action to dispute, disallow, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter priority thereof, has been timely commenced, to the extent such Claim has been allowed (whether in whole or in part) by a Final Order of a court of competent jurisdiction with respect to the subject matter; or (b) any Claim or portion thereof that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) pursuant to the terms of the Plan, (iii) by Final Order of the Bankruptcy Court, or (iv) with respect to an Administrative Expense Claim only (x) that was incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (y) that is not otherwise disputed.

**1.4** *Amended Constituent Documents* means, on or after the Effective Date, collectively, the amended and restated by-laws or similar governing documents and the amended and restated certificates of incorporation or other formation documents of the Debtors, which, for the avoidance of doubt, shall specifically include the post-Effective Date Indemnification Agreement, each in form and substance reasonably acceptable to the Debtors and the Required

Holders.  Forms of the Amended Constituent Documents shall be filed as part of the Plan Supplement.

**1.5**     ***Avoidance Actions*** means any and all avoidance, recovery, subordination or other claims, actions or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553 and 724(a) of the Bankruptcy Code.

**1.6**     ***Ballot*** means the form distributed prior to the Petition Date to holders of Impaired Claims entitled to vote on the Plan to indicate their acceptance or rejection of the Plan and approved by the Bankruptcy Court pursuant to the Confirmation Order.

**1.7**     ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.8**     ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware, or any other court exercising competent jurisdiction over the Chapter 11 Cases or any proceeding therein.

**1.9**     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases, and any local rules of the Bankruptcy Court.

**1.10**    ***Business Day*** means any day other than a Saturday, Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

**1.11**    ***Cash*** means the legal currency of the United States and equivalents thereof.

**1.12**    ***Causes of Action*** means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include: (i) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (ii) the right to object to or otherwise contest Claims or Interests; (iii) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (iv) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

**1.13**     *Chapter 11 Cases* means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and captioned *In re Pace Industries, LLC*, Case No. 20-[____] [(___)].

**1.14**     *Claim* means any "claim" as defined in section 101(5) of the Bankruptcy Code against the Debtors or property of the Debtors, including any Claim arising after the Petition Date.

**1.15**     *Claims Agent* means Kurtzman Carson Consultants LLC or any other entity approved by the Bankruptcy Court to act as the Debtors' claims and noticing agent pursuant to 28 U.S.C. § 156(c).

**1.16**     *Claims Objection Deadline* means 11:59 p.m. (prevailing Eastern Time) on the 180th calendar day after the Effective Date, subject to further extensions and/or exceptions as may be ordered by the Bankruptcy Court.

**1.17**     *Class* means each category of Claims or Interests established under Article IV of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.18**     *Class 3 Equity Distribution* means 100% of the New Pace Holdco LLC Units to be issued by New Pace Holdco on the Effective Date to the holders of Prepetition Senior Notes Claims pursuant to the Plan, subject to dilution by the New Warrants and the Management Incentive Plan Securities.

**1.19**     *Collateral* means any property or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.20**     *Confirmation Date* means the date on which the Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

**1.21**     *Confirmation Hearing* means a hearing to be held by the Bankruptcy Court to consider approval of the Disclosure Statement and confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.22**     *Confirmation Order* means the order of the Bankruptcy Court approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and confirming this Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance reasonably acceptable to the Debtors, the DIP ABL Agent and the Required Holders.

**1.23**     *Cure Amount* has the meaning set forth in Section 10.3(a) of this Plan.

**1.24**     *Cure Dispute* has the meaning set forth in Section 10.3(c) of this Plan.

**1.25**     *Cure Schedule* has the meaning set forth in Section 10.3(b) of this Plan.

**1.26** ***D&O Liability Insurance Policies*** means all insurance policies for directors', managers' and officers' liability (including employment practices liability and fiduciary liability) maintained by the Debtors prior to the Effective Date, including as such policies may extend to employees, and any such policies that are "tail" policies.

**1.27** ***Debtors*** means, individually or collectively, as the context requires:  (a) KPI Holdings, LLC; (b) KPI Capital Holdings, Inc.; (c) KPI Holdings, Inc.; (d) KPI Intermediate Holdings, Inc.; (e) Pace Industries, LLC; (f) Pace Industries, Inc.; (g) Pace FQE, LLC; (h) Port City Group, Inc.; (i) Muskegon Castings, LLC; (j) Alloy Resources, LLC; and (k) Pace Industries of Mexico, LLC.

**1.28** ***Debtors' Case Information Website*** has the meaning set forth in Article I, Section C.

**1.29** ***DIP ABL Agent*** means Bank of Montreal, solely in its capacity as administrative agent under the DIP ABL Credit Agreement, and any of its successors or assigns.

**1.30** ***DIP ABL Claims*** means all Claims or obligations held by the DIP Agent and/or the DIP ABL Lenders arising under or pursuant to the DIP ABL Credit Agreement and/or any order (whether preliminary, interim, final or otherwise and including, without limitation, the Final DIP Order), approving the DIP ABL Credit Agreement and/or the transactions contemplated therein, including, without limitation, Claims for all principal amounts outstanding, reimbursement for draws under any letter of credit issued under the DIP ABL Credit Agreement, all amounts outstanding with respect to bank credit products provided by any of the DIP ABL Lenders or any affiliate of any of the DIP ABL Lenders, interest, fees, reasonable and documented expenses, costs and other charges of the DIP ABL Agent and the DIP ABL Lenders.

**1.31** ***DIP ABL Credit Agreement*** means that certain senior secured debtor-in-possession credit agreement, dated as of [April __], 2020, by and among certain Debtors, the DIP ABL Agent, and the DIP ABL Lenders, including any and all documents and instruments executed in connection therewith (in each case, as it or they may be amended, modified or supplemented from time to time on the terms and conditions set forth therein).

**1.32** ***DIP ABL Facility*** means the debtor-in-possession asset-based revolving loan facility provided under the DIP ABL Credit Agreement.

**1.33** ***DIP ABL Lenders*** means the lenders from time to time party to the DIP ABL Credit Agreement.

**1.34** ***DIP Claims*** means the DIP ABL Claims and the DIP Term Loan Claims.

**1.35** ***DIP Credit Agreements*** means the DIP ABL Credit Agreement and the DIP Term Loan Credit Agreement.

**1.36** ***DIP Lenders*** means the DIP ABL Lenders and the DIP Term Loan Lenders.

**1.37**   *DIP Term Loan Agent* means TCW Asset Management Company LLC, solely in its capacity as administrative agent under the DIP Term Loan Credit Agreement, and any of its successors or assigns.

**1.38**   *DIP Term Loan Claims* means all Claims or obligations held by the DIP Term Loan Agent and/or the DIP Lenders arising under or pursuant to the DIP Term Loan Credit Agreement and/or any order (whether preliminary, interim, final or otherwise and including, without limitation, the Final DIP Order), approving the DIP Term Loan Credit Agreement and/or the transactions contemplated therein, including, without limitation, Claims for all principal amounts outstanding, interest, fees, reasonable and documented expenses, costs and other charges of the DIP Term Loan Agent and the DIP Term Loan Lenders.

**1.39**   *DIP Term Loan Credit Agreement* means that certain senior secured superpriority debtor-in-possession term loan agreement, dated as of [April __], 2020, by and among certain Debtors, the DIP Term Loan Agent, and the DIP Term Loan Lenders, including any and all documents and instruments executed in connection therewith (in each case, as it or they may be amended, modified or supplemented from time to time on the terms and conditions set forth therein).

**1.40**   *DIP Term Loan Lenders* means the lenders from time to time party to the DIP Term Loan Credit Agreement.

**1.41**   *Disallowed* means a finding or conclusion of law of the Bankruptcy Court in a Final Order, or provision in this Plan or the Confirmation Order, disallowing a Claim.

**1.42**   *Disbursing Agent* means, as applicable, Reorganized Pace Industries or the entity designated by Reorganized Pace Industries to distribute the Plan Consideration.

**1.43**   *Disclosure Statement* means the disclosure statement that relates to this Plan, including all exhibits and schedules annexed thereto or referred to therein (in each case, as it or they may be amended, modified, or supplemented from time to time), which shall be in form and substance acceptable to the Debtors and the Required Holders.

**1.44**   *Disputed* means, with respect to a Claim or Interest, that portion (including, when appropriate, the whole) of such Claim or Interest that: (a) (i) has not been scheduled by the Debtors in their Schedules, if filed with the Bankruptcy Court, or has been scheduled in a lesser amount or different priority than the amount or priority asserted by the holder of such Claim or Interest, or (ii) has been scheduled as contingent, unliquidated or disputed and for which no proof of claim has been timely filed; (b) is the subject of an objection or request for estimation filed in the Bankruptcy Court which has not been withdrawn or overruled by a Final Order; and/or (c) is otherwise disputed by the Debtors in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by Final Order.

**1.45** *Dissolving Debtors* means each of KPI Holdings, LLC, KPI Capital Holdings, Inc., KPI Holdings, Inc. and KPI Intermediate Holdings, Inc., provided that in the sole discretion of the Required Holders, any Dissolving Debtor may become a Reorganized Debtor.

**1.46** *Distribution Date* means the Effective Date or as soon as reasonably practicable thereafter.

**1.47** *Distribution Record Date* means, with respect to all Classes for which Plan Distributions are to be made, the Effective Date.

**1.48** *Effective Date* means the date specified by the Debtors in a notice filed with the Bankruptcy Court as the date on which the Plan shall take effect, which date shall be the first Business Day on which all of the conditions set forth in Section 11.1 of this Plan have been satisfied or waived in accordance with the terms hereof and no stay of the Confirmation Order is in effect.

**1.49** *Entity* shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

**1.50** *Estate* means each estate created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

**1.51** *Estimation Order* means an order or orders of the Bankruptcy Court estimating for voting and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the allowed amount of any Claim. The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

**1.52** *Exculpated Parties* means collectively and solely in their capacity as such, the Debtors and their affiliates, and their respective current and former officers, managers, principals, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and all other retained Professional Persons (in each case solely to the extent serving in such capacity as of the Petition Date).

**1.53** *Existing Interests* means all existing Interests (other than Intercompany Interests) that are outstanding immediately prior to the Effective Date.

**1.54** *Existing Securities Law Claim* means any Claim, whether or not the subject of an existing lawsuit: (a) arising from rescission of a purchase or sale of any debt or equity securities of any Debtor or an affiliate of any Debtor; (b) for damages arising from the purchase or sale of any such security; (c) for violations of the securities laws, misrepresentations, or any similar Claims, including, to the extent related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, any attorneys' fees, other charges, or costs incurred on account of the foregoing Claims; or (d) reimbursement, contribution, or indemnification on account of any such Claim.

**1.55** *Fee Escrow Account* means an interest-bearing account in an amount equal to the total estimated amount (subject to the Approved Budget (as defined in the Final DIP Order)) of unpaid Professional Fee Claims and funded by the Debtors on the Effective Date.

**1.56** *Final DIP Order* means the Final Order(s) of the Bankruptcy Court authorizing and approving, *inter alia*, the Debtors' entry into the DIP Credit Agreements.

**1.57** *Final Order* means an order, ruling or judgment of the Bankruptcy Court or in the applicable court of competent jurisdiction that has been entered on the docket in the Chapter 11 Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure has been or may be filed with respect to such order or judgment; provided, further, that no order or judgment shall fail to be a Final Order solely because of the susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code.

**1.58** *General Unsecured Claim* means any Claim other than:  (a) Secured Claims, including DIP Claims, Other Secured Claims, Prepetition ABL Claims and Prepetition Senior Notes Claims; (b) an Administrative Expense Claim; (c) a Professional Fee Claim; (d) U.S. Trustee Fees; (e) a Priority Tax Claim; (f) a Priority Non-Tax Claim; (g) an Intercompany Claim; and (h) an Existing Securities Law Claim.

**1.59** *Governmental Unit* means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

**1.60** *Impaired* means, when used in reference to a Class, any Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.61** *Indemnification Agreement* means the agreement of New Pace Holdco to indemnify and hold harmless the managers, directors, officers or employees of the Debtors who served in such capacity and were employed on or after the Petition Date with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of the Debtors, which indemnification obligation shall (a) be an unsecured obligation of New Pace Holdco, (b) be in an aggregate amount not to exceed $2 million for all such Persons, (c) be available only to the extent coverage under any D&O Liability Insurance Policies has been fully exhausted, (d) be available on the same terms, and subject to the same limitations, as the D&O Insurance Policies, and (e) otherwise be consistent with Section 7.2 hereof.  The form of the Indemnification

Agreement shall be filed as part of the Plan Supplement and shall be in form and substance reasonably acceptable to the Debtors and the Required Holders.

**1.62**    *Interest* means the interest (whether legal, equitable, contractual or otherwise) of any holders of any class of equity securities of the Debtors, represented by shares of common or preferred stock, limited partnership interests or other instruments evidencing an ownership interest in the Debtors, whether or not certificated, transferable, voting or denominated "stock" or a similar security, or any option, warrant or right, contractual or otherwise, to acquire any such interest.

**1.63**    *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.64**    *Management Incentive Plan* means any management incentive plan approved by the New Board for management of the Reorganized Debtors after the Effective Date.

**1.65**    *New ABL Agent* means the administrative agent, solely in its capacity as such, under the New ABL Credit Agreement and any of its successors or assigns.

**1.66**    *New ABL Credit Agreement* means, on and after the Effective Date, that certain senior secured exit amended and restated asset-based revolving credit agreement, dated as of [April ___], 2020, by and among certain Reorganized Debtors, the New ABL Agent, and the New ABL Lenders, including any and all documents and instruments executed in connection therewith (in each case, as it may be amended, modified or supplemented from time to time on the terms and conditions set forth therein).  The New ABL Credit Agreement shall be in form and substance substantially similar to the DIP ABL Credit Agreement and otherwise reasonably acceptable to the Debtors and the Required Holders and shall be filed as part of the Plan Supplement.

**1.67**    *New ABL Facility* means the exit asset-based revolving loan facility provided under the New ABL Credit Agreement as of the Effective Date.

**1.68**    *New ABL Facility Obligations* means the obligations of Reorganized Pace Industries and the other obligors party thereto under the New ABL Credit Agreement.

**1.69**    *New ABL Lenders* means the lenders party to the New ABL Credit Agreement.

**1.70**    *New Board* means the board of New Pace Holdco LLC, which shall initially consist of managers reasonably acceptable to the Debtors and the Required Holders and identified in the Plan Supplement.  The New Board shall operate consistent with the terms of the New Pace Holdco LLC Agreement.

**1.71**    *New Pace Holdco* means a newly formed Delaware limited liability company which shall be the direct parent of and own all of the outstanding equity interests of Reorganized Pace Industries as of the Effective Date.

**1.72**    *New Pace Holdco LLC Agreement* means the limited liability company agreement of New Pace Holdco, to be dated as of the Effective Date, governing the rights and obligations of

New Pace Holdco, and the holders of New Pace Holdco LLC Units, and shall be in form and substance reasonably acceptable to the Debtors, the New ABL Lenders and the Required Holders and shall be filed as part of the Plan Supplement.

**1.73** *New Pace Holdco LLC Units* means new common limited liability company units of New Pace Holdco, to be issued by New Pace Holdco in connection with the implementation of, and as authorized by, this Plan, under the terms and conditions set forth in the New Pace Holdco LLC Agreement.

**1.74** *New Pace Holdco Loan Agreement* means that certain loan agreement, by and among New Pace Holdco and the holders of Prepetition Senior Notes Claims, including any and all documents and instruments executed in connection therewith (in each case, as it or they may be amended, modified or supplemented from time to time on the terms and conditions set forth therein), to be dated as of the Effective Date, which shall be in form and substance reasonably acceptable to the Debtors, the New ABL Lenders and the Required Holders and shall be filed as part of the Plan Supplement.

**1.75** *New Pace Holdco Loan Facility* means the indebtedness issued by New Pace Holdco pursuant to the New Pace Holdco Loan Agreement, which shall be guaranteed by Reorganized Pace Industries and certain other Reorganized Debtors, in an aggregate principal amount equal to the amount of Prepetition Senior Notes outstanding as of the Effective Date, bearing payable-in-kind interest, which loan shall be secured by a first priority Lien upon and security interest in the Interests of Reorganized Pace Industries owned by New Pace Holdco LLC and a junior Lien on and security interest in the assets of each other credit party thereunder.

**1.76** *New Pace Holdco Loan Obligations* means the obligations of New Pace Holdco and the other obligors party thereto under the New Pace Holdco Loan Agreement.

**1.77** *New Pace Industries Term Loan Agent* means TCW Asset Management Company LLC, solely in its capacity as the administrative agent under the New Pace Industries Term Loan Agreement, and any of its successors or assigns.

**1.78** *New Pace Industries Term Loan Agreement* means that certain term loan agreement, by and among Reorganized Pace Industries, the other Reorganized Debtors that are credit parties thereunder, the New Pace Industries Term Loan Agent and the New Pace Industries Term Loan Lenders, including any and all documents and instruments executed in connection therewith (in each case, as it or they may be amended, modified or supplemented from time to time on the terms and conditions set forth therein), to be dated as of the Effective Date, which shall be in form and substance reasonably acceptable to the Debtors, the New ABL Lenders and the Required Holders and shall be filed as part of the Plan Supplement. The New Pace Industries Term Loan Agreement shall be subject to intercreditor agreements with respect to the New ABL Facility and the New Pace Holdco Loan Facility.

**1.79** *New Pace Industries Term Loan Facility* means the new term loan facility issued by Reorganized Pace Industries, the terms of which shall be set forth in the New Pace Industries

Term Loan Agreement, which shall be in the original principal amount of $50 million, plus an amount to be determined by the Reorganized Debtors and the Required Holders, and shall be funded by the New Pace Industries Term Loan Lenders on the Effective Date.

**1.80** ***New Pace Industries Term Loan Facility Obligations*** means the obligations of Reorganized Pace Industries and the other obligors party thereto under the New Pace Industries Term Loan Agreement.

**1.81** ***New Pace Industries Term Loan Lenders*** means the lenders party to the New Pace Industries Term Loan Agreement.

**1.82** ***New Pace Industries LLC Units*** means the new common limited liability units of Reorganized Pace Industries to be issued by Reorganized Pace Industries to New Pace Holdco in connection with the implementation of, and as authorized by, this Plan, under the terms and conditions set forth in the Reorganized Pace Industries LLC Agreement.

**1.83** ***New Warrants*** means the warrants, issued pursuant to the New Warrant Agreement, that will be distributed to the New Pace Industries Term Loan Lenders (including holders of the DIP Term Loan Claims that exchange DIP Term Loan Obligations for New Pace Industries Term Loan Facility Obligations pursuant to the Plan).

**1.84** ***New Warrant Agreement*** means that certain warrant agreement, to be dated as of the Effective Date, governing the New Warrants that will entitle the holders of the New Pace Industries Term Loan Facility Obligations to purchase up to 51% of the New Pace Holdco LLC Units, which shall be in form and substance reasonably acceptable to the Debtors, the New ABL Lenders and the Required Holders and shall be filed as part of the Plan Supplement.

**1.85** ***Non-Debtor Subsidiary*** means any direct or indirect wholly owned subsidiary of Pace Industries that is not a Debtor in the Chapter 11 Cases.

**1.86** ***Other Secured Claim*** means any Secured Claim against the Debtors other than DIP Claims, Prepetition ABL Claims or Prepetition Senior Notes Claims.

**1.87** ***Person*** means any individual, corporation, partnership, association, indenture trustee, limited liability company, cooperative, organization, joint stock company, joint venture, estate, fund, trust, unincorporated organization, Governmental Unit or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.88** ***Petition Date*** means April 12, 2020.

**1.89** ***Plan*** means this chapter 11 plan proposed by the Debtors, including the Plan Supplement, all applicable exhibits, supplements, appendices and schedules hereto and to the Plan Supplement, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules

and the terms hereof; *provided*, that the Plan shall be in form and substance satisfactory to the Debtors, the DIP ABL Lenders and the Required Holders.

**1.90** ***Plan Consideration*** means, with respect to any Class of Claims entitled to distributions under this Plan, one or more of Cash, New Pace Holdco LLC Units, New Pace Industries LLC Units, New Warrants, the New ABL Facility Obligations, the New Pace Industries Term Loan Facility Obligations and the New Pace Holdco Loan Obligations, as the context requires.

**1.91** ***Plan Distribution*** means the distribution of Plan Consideration under the Plan.

**1.92** ***Plan Documents*** means the applicable documents, other than this Plan, to be executed, delivered, assumed, and/or performed in connection with the consummation of this Plan, including the documents to be included in the Plan Supplement and any and all exhibits to this Plan and the Disclosure Statement, each of which shall be in form and substance acceptable to the Debtors, the DIP ABL Lenders or the New ABL Lenders (as applicable) and the Required Holders.

**1.93** ***Plan Securities*** means, collectively, the New Pace Holdco LLC Units, the New Pace Industries LLC Units, and the New Warrants.

**1.94** ***Plan Supplement*** means the supplemental appendix to this Plan (as may be amended, modified and/or supplemented) which the Debtors shall file by seven (7) calendar days prior to the deadline for filing objections to this Plan (provided that the Debtors may amend, supplement, or otherwise modify the Plan Supplement prior to the Confirmation Hearing and/or in accordance with the Plan), which may contain, among other things, draft forms, signed copies, or summaries of material terms, as the case may be, of the following: (a) Amended Constituent Documents; (b) the New ABL Credit Agreement; (c) the New Pace Industries Term Loan Agreement; (d) the New Warrant Agreement and the form of New Warrants; (e) the New Pace Holdco Loan Agreement; (f) the New Pace Holdco LLC Agreement; (g) the New Pace Industries LLC Agreement; (h) the Schedule of Rejected Contracts and Leases; (i) the list of proposed directors, officers and/or managers of New Pace Holdco and the other Reorganized Debtors, as applicable, including the New Board; (j) the compensation arrangement for any insider of the Debtors who will be an officer of the Reorganized Debtors; (k) the Indemnification Agreement; and (i) any additional documents filed with the Bankruptcy Court before the Effective Date as additional Plan Documents and/or amendments to the Plan Supplement; provided, that unless consent rights are otherwise expressly set forth in this Plan, each of the documents in the Plan Supplement (whether or not set forth above), including any alternation, restatement, modification or replacement thereto, shall be in form and substance acceptable to the Debtors, the DIP ABL Lenders or the New ABL Lenders (as applicable) and the Required Holders.

**1.95** ***Prepetition ABL Agent*** means Bank of Montreal, solely in its capacity as administrative agent under the Prepetition ABL Credit Agreement.

**1.96** ***Prepetition ABL Claims*** means all Claims arising under or related to the Prepetition ABL Credit Agreement.

**1.97**     *Prepetition ABL Credit Agreement* means that certain Amended and Restated Credit Agreement, dated as of June 30, 2015, by and among certain of the Debtors, the Prepetition ABL Agent, and the lenders party thereto, including all agreements, documents, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

**1.98**     *Prepetition ABL Facility* means that certain revolving credit facility with maximum aggregate availability of $125 million governed by the Prepetition ABL Credit Agreement.

**1.99**     *Prepetition Senior Notes* means those senior secured notes due 2020 issued pursuant to the Senior Note Agreement in the aggregate principal amount of $220 million.

**1.100**     *Prepetition Senior Notes Agent* means TCW Asset Management Company LLC, solely in its capacity as administrative and collateral agent under the Senior Note Agreement.

**1.101**     *Prepetition Senior Note Agreement* means that certain Senior Note Agreement, dated as of June 30, 2015, by and among certain of the Debtors, the Senior Notes Agent, and the purchasers party thereto, including all agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

**1.102**     *Prepetition Senior Notes Claims* means all Claims against the Debtors arising under the Prepetition Senior Notes and the Prepetition Senior Note Agreement.

**1.103**     *Priority Non-Tax Claim* means any Claim, other than an Administrative Expense Claim, a Professional Fee Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

**1.104**     *Priority Tax Claim* means any Claim of a Governmental Unit of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.105**     *Professional Fee Claims* means an administrative expense claim of a Professional Person against the Debtors for compensation for services rendered or reimbursement of costs, expenses or other charges and disbursements incurred during the period from the Petition Date up to, and including, the Effective Date.

**1.106**     *Professional Person(s)* means all Persons retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases, pursuant to sections 327 or 328 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to an order of the Bankruptcy Court or otherwise.

**1.107**     *Rejection Damages Bar Date* means the date that is thirty (30) days after the effective date of the rejection of an executory contract or unexpired lease by the Debtors pursuant to the Plan (which may be the Effective Date, the date on which the Debtors reject the applicable

contract or lease as provided in Section 10.1 of this Plan, or pursuant to an order of the Bankruptcy Court).

**1.108** *Released Parties* means (a) the Debtors, their respective Non-Debtor Subsidiaries, and the Reorganized Debtors, (b) the Prepetition Senior Notes Agent and each holder of Prepetition Senior Notes Claims, (c) the Prepetition ABL Agent and holders of Prepetition ABL Claims, (d) the Sponsor, and (e) each such party's current and former affiliates and subsidiaries, and their (and, in each case, their) current and former affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in their capacity as such. Notwithstanding the foregoing, if the Sponsor objects to or otherwise withdraws its support of confirmation of the Plan, Sponsor shall (a) not receive the benefit of (i) the releases set forth in Article XII of this Plan or (ii) the Indemnification Agreement contemplated in Article VII of this Plan and (b) remain a Releasing Party for the purposes of Article XII hereof.

**1.109** *Releasing Parties* means collectively and solely in their capacity as such, (a) each Released Party, (b) as to each of the foregoing Entities, each such Entity's predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds and their current and former officers, managers, partners, principals, shareholders, members, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and (c) all holders of Claims or Interests that have not objected to the release provisions of this Plan; provided that the current or former directors, officers, managers and employees of the Debtors shall not grant releases against the Debtors or Reorganized Debtors with respect to the Indemnification Agreement.

**1.110** *Reorganized Debtor(s)* means, as the context requires, Pace Industries, LLC and each direct and indirect subsidiary thereof that is a Debtor on and after the Effective Date, after giving effect to the restructuring transactions occurring on the Effective Date in accordance with this Plan. For the avoidance of doubt, except as may be determined by the Required Holders in their sole discretion, the term "Reorganized Debtor" shall not include any of KPI Holdings, LLC, KPI Capital Holdings, Inc., KPI Holdings, Inc. or KPI Intermediate Holdings, Inc.

**1.111** *Reorganized Pace Industries* means Pace Industries, LLC on or after the Effective Date.

**1.112** *Required Holders* shall have the meaning set forth in the Prepetition Senior Note Agreement.

**1.113** *Schedule of Rejected Contracts and Leases* means a schedule of the contracts and leases to be rejected by the Debtors pursuant to section 365 of the Bankruptcy Code and Article X hereof. The Schedule of Rejected Contracts and Leases shall be filed as part of the Plan

Supplement and may be amended from time to time, and shall be reasonably acceptable to the Debtors and the Required Holders.

**1.114 _Schedules_** means, if filed with the Bankruptcy Court, the Debtors' schedules of assets and liabilities and statements of financial affairs, as amended or supplemented from time to time.

**1.115 _Secured Claim_** means a Claim: (a) that is secured by a valid, perfected and enforceable Lien on Collateral, to the extent of the value of the Claim holder's interest in such Collateral as of the Confirmation Date; or (b) to the extent that the holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

**1.116 _Securities Act_** means the Securities Act of 1933, as amended and the Exchange Act of 1934, as amended.

**1.117 _Sponsor_** means Kenner & Company, Inc. and Kenner Equity Management, LLC.

**1.118 _Unimpaired_** means any Claim or Interest that is not Impaired.

**1.119 _U.S. Trustee_** means the United States Trustee for Region 3.

**1.120 _U.S. Trustee Fees_** means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

## B. Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Whenever this Plan uses the term "including," such reference will be deemed to mean "including, without limitation." Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Except for section 102(5) of the Bankruptcy Code, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns.

## C. Appendices and Plan Documents.

All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein. The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. Holders of Claims and Interests may inspect a copy of the Plan Documents,

once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or via the Claims Agent's website at kccllc.net/pace (the "**Debtors' Case Information Website**") or obtain a copy of any of the Plan Documents by a written request sent to the Claims Agent at the following address:

> Pace Industries, LLC
> c/o Kurtzman Carson Consultants LLC
> 222 N. Pacific Coast Highway, Suite 300
> El Segundo, California 90245
> (866) 967-0269 (U.S./Canada)
> (310) 751-2669 (outside U.S./Canada)

## ARTICLE II.

### <u>CERTAIN INTER-CREDITOR AND INTER-DEBTOR ISSUES</u>

**2.1.** *Settlement of Certain Inter-Creditor Issues.*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the treatment of Claims and Interests under this Plan represents, among other things, the settlement and compromise of certain potential inter-creditor disputes.

**2.2.** *Formation of Debtor Groups for Convenience Purposes.*

The Plan groups the Debtors together solely for purposes of describing treatment under the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Interests in the Debtors under the Plan. Such grouping shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, nor cause the transfer of any assets or the assumption of any liabilities; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities.

**2.3.** *Intercompany Claims and Intercompany Interests.*

(a) <u>Intercompany Claims</u>.

Notwithstanding anything to the contrary herein, on or after the Effective Date, any and all Intercompany Claims shall, at the option of the Debtors or the Reorganized Debtors, as applicable, and as acceptable to the Required Holders, either be (i) extinguished, cancelled and/or discharged on the Effective Date, or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Intercompany Claims being left Unimpaired. To the extent any such Intercompany Claim is reinstated, or otherwise adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid or continued as of the

Effective Date, any such transaction may be effected on or after the Effective Date without any further action by the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person. For the avoidance of doubt, any Claim of any Dissolving Debtor against any Reorganized Debtor shall be extinguished, cancelled and discharged.

(b)     Intercompany Interests.

Notwithstanding anything to the contrary herein, on or after the Effective Date, any and all Intercompany Interests shall, at the option of the Debtors or the Reorganized Debtors, as applicable, and as acceptable to the Required Holders, either be (i) extinguished, cancelled and/or discharged on the Effective Date, or (ii) unaffected by the Plan and continue in place following the Effective Date, solely for the administrative convenience of maintaining the existing corporate structure of the Debtors and the Reorganized Debtors. For the avoidance of doubt, all Interests in Pace Industries, LLC shall be extinguished, cancelled and discharged unless otherwise determined by the Required Holders in their sole discretion.

## ARTICLE III.

## DIP CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS,
## PROFESSIONAL FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

All Claims and Interests, except DIP Claims, Administrative Expense Claims, Professional Fee Claims, U.S. Trustee Fees and Priority Tax Claims, are placed in the Classes set forth in Article IV below. In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, Administrative Expense Claims, Professional Fee Claims, U.S. Trustee Fees and Priority Tax Claims have not been classified, and the holders thereof are not entitled to vote on this Plan. A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. However, a Claim or Interest is placed in a particular Class for the purpose of receiving Plan Distributions only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest and has not been paid, released or otherwise settled prior to the Effective Date.

**3.1.    *DIP Claims.***

(a)     DIP ABL Claims

The DIP ABL Claims shall be deemed to be Allowed Claims under the Plan. The DIP ABL Claims shall be refinanced and paid in full pursuant to the New ABL Facility in accordance with the terms and conditions of the DIP ABL Credit Agreement and the New ABL

Credit Agreement.  Upon satisfaction of the Allowed DIP ABL Claims as set forth in this Section 3.1(a) of the Plan, all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Cases or otherwise, shall be terminated and of no further force or effect.

      (b)    <u>DIP Term Loan Claims</u>

The DIP Term Loan Claims shall be deemed to be Allowed Claims under the Plan.  In full satisfaction, settlement, release and discharge of the Allowed DIP Term Loan Claims, on the Effective Date, each holder of Allowed DIP Term Loan Claims shall receive its pro rata share of: (a) the New Pace Industries Term Loan Facility Obligations; and (b) the New Warrants.  Upon satisfaction of the Allowed DIP Term Loan Claims as set forth in this Section 3.1(b) of the Plan, all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Cases or otherwise, shall be terminated and of no further force or effect.

### 3.2.    *Administrative Expense Claims.*

Each holder of an Allowed Administrative Expense Claim shall be paid 100% of the unpaid Allowed amount of such Claim in Cash on the date that is the later of:  (a) the Effective Date (or as soon thereafter as reasonably practicable); (b) the date such Claim would ordinarily be due and payable in accordance with ordinary business terms; and (c) the date (or as soon thereafter as reasonably practicable) that is fifteen (15) days (or, if such date is not a Business Day, on the next Business Day) after such Claim becomes an Allowed Claim or otherwise becomes payable under the Plan.  Notwithstanding the foregoing, the holder of an Allowed Administrative Expense Claim may receive such other, less favorable treatment as may be agreed upon by such holder, together with the Debtors and Required Holders.

### 3.3.    *Professional Fee Claims.*

Except to the extent that the applicable holder of an Allowed Professional Fee Claim agrees to less favorable treatment, together with the Debtors and the Required Holders, or as otherwise expressly set forth in this Plan, each holder of a Professional Fee Claim shall be paid in full in Cash pursuant to this Section 3.3.

(a)     Fee Applications

Any Professional Person seeking allowance of a Professional Fee Claim shall file with the Bankruptcy Court its final application for allowance of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date and in connection with the preparation and prosecution of such final application no later than forty-five (45) calendar days after the Effective Date or such other date as established by the Bankruptcy Court. Objections to such Professional Fee Claims, if any, must be filed and served no later than sixty-five (65) calendar days after the Effective Date or such other date as established by the Bankruptcy Court.

(b)     Post-Effective Date Fees

Upon the Effective Date, any requirement that Professional Persons comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay all Professional Persons without any further notice to, action by or order or approval of the Bankruptcy Court or any other party.

(c)     Fee Escrow Account

On or after the Effective Date, the Debtors shall establish and fund the Fee Escrow Account. The Debtors shall fund the Fee Escrow Account with Cash equal to the Debtors' good faith estimate of the Allowed Professional Fee Claims (subject to the Approved Budget (as defined in the Final DIP Order)). Initial funding for the Fee Escrow Account shall be provided from funds on deposit in the Professional Fee Reserve established under the Final DIP Order, with any shortfall to be funded by the Debtors. Funds held in the Fee Escrow Account shall not be considered property of the Debtors' Estates or property of the Debtors, but shall revert to the Debtors only after all Allowed Professional Fee Claims have been paid in full. Fees owing to the applicable holder of an Allowed Professional Fee Claim shall be paid in Cash to such holder from funds held in the Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court or authorized to be paid under a Final Order authorizing compensation of Professional Persons; provided, that the Debtors' obligations with respect to Allowed Professional Fee Claims shall not be limited by nor deemed limited to the balance of funds held in the Fee Escrow Account. To the extent that funds held in the Fee Escrow Account are insufficient to satisfy the amount of accrued Allowed Professional Fee Claims, each holder of an Allowed Professional Fee Claim shall have an Allowed Administrative Expense Claim for any such deficiency, which shall be satisfied in accordance with Section 3.2 of this Plan. The Fee Escrow Account shall be free and clear of all Liens, Claims and encumbrances other than the residual interests of the Reorganized Debtors as set forth herein.

**3.4.    *U.S. Trustee Fees.***

The Debtors shall pay all outstanding U.S. Trustee Fees on an ongoing basis on the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing

the Chapter 11 Cases, the Chapter 11 Cases are converted or dismissed, or the Bankruptcy Court orders otherwise.

**3.5.** *Priority Tax Claims.*

Except to the extent that the applicable holder of an Allowed Priority Tax Claim has been paid by the Debtors before the Effective Date, or such holder agrees to less favorable treatment, together with the Debtors and the Required Holders, each holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, at the option of the Debtors (a) payment in full in Cash made on or as soon as reasonably practicable after the later of the Effective Date and the first Distribution Date occurring at least 20 calendar days after the date such Claim is Allowed, (b) regular installment payments over a period ending not later than five (5) years after the Petition Date in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, or (c) such other amounts and in such other manner as may be determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim.

The Debtors shall have the right, in their sole discretion, to pay any Allowed Priority Tax Claim or any remaining balance of an Allowed Priority Tax Claim (together with accrued but unpaid interest) in full at any time on or after the Effective Date without premium or penalty.

## ARTICLE IV.

## CLASSIFICATION OF CLAIMS AND INTERESTS

**4.1.** *Classification of Claims and Interests.*

The following table designates the Classes of Claims against and Interests in the Debtors, and specifies which Classes are: (a) Impaired or Unimpaired by this Plan; (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or reject this Plan.

| **Class** | **Designation** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | No | No (Presumed to accept) |
| Class 2 | Other Secured Claims | No | No (Presumed to accept) |
| Class 3 | Senior Notes Claims | Yes | Yes |
| Class 4 | General Unsecured Claims | No | No (Presumed to accept) |
| Class 5 | Existing Securities Law Claims | Yes | No (Deemed to reject) |

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 6 | Existing Interests | Yes | No (Deemed to reject) |

If a controversy arises regarding whether any Claim or Interest is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.  If the Bankruptcy Court finds that the classification of any Claim or Interest is improper, then such Claim or Interest shall be reclassified and the Ballot previously cast by the holder of such Claim or Interest shall be counted in, and the Claim or Interest shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim or Interest should have been classified, without the necessity of resoliciting any votes on the Plan.

**4.2.** *Unimpaired Classes of Claims.*

The following Classes of Claims are Unimpaired and, therefore, presumed to have accepted this Plan and are not entitled to vote on this Plan under section 1126(f) of the Bankruptcy Code:

(a)     Class 1:  Class 1 consists of all Priority Non-Tax Claims.

(b)     Class 2:  Class 2 consists of all Other Secured Claims.

(c)     Class 4:  Class 4 consists of General Unsecured Claims.

**4.3.** *Impaired Classes of Claims.*

(a)     The following Class of Claims is Impaired and entitled to vote on this Plan:  Class 3 consists of all Senior Notes Claims.

(b)     The following Classes of Claims and Interests are Impaired and deemed to have rejected this Plan and, therefore, are not entitled to vote on this Plan under section 1126(g) of the Bankruptcy Code:

(i)     Class 5:  Class 5 consists of all Existing Securities Law Claims.

(i)     Class 6:  Class 6 consists of all Existing Interests.

**4.4.** *Separate Classification of Other Secured Claims.*

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any additional Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving Plan Distributions.

## ARTICLE V.

## TREATMENT OF CLAIMS AND INTERESTS

**5.1.** *Priority Non-Tax Claims (Class 1).*

(a)     Treatment: The legal, equitable and contractual rights of the holders of Priority Non-Tax Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a different treatment, together with the Debtors and the Required Holders, on the applicable Distribution Date each holder of an Allowed Priority Non-Tax Claim shall receive (i) Cash from the applicable Reorganized Debtor in an amount equal to such Allowed Claim, or (ii) such other treatment that would render such Allowed Priority Non-Tax Claim Unimpaired.

(b)     Voting:  The Priority Non-Tax Claims are Unimpaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of the Priority Non-Tax Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Priority Non-Tax Claims.

**5.2.** *Other Secured Claims (Class 2).*

(a)     Treatment: The legal, equitable and contractual rights of the holders of Other Secured Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, together with the Debtors and the Required Holders, on the applicable Distribution Date, or as soon as reasonably practicable thereafter, each holder of an Allowed Other Secured Claim shall each receive, subject to the terms of the Plan, in full and final satisfaction, settlement, release and discharge of its Allowed Other Secured Claim, at the election of the Reorganized Debtors:

(i)     Cash in an amount equal to such Allowed Other Secured Claim; or

(ii)     such other treatment that will render such Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code;

provided, however, that Other Secured Claims incurred by a Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, in the discretion of the applicable Debtor or Reorganized Debtor without further notice to or order of the Bankruptcy Court.

Each holder of an Allowed Other Secured Claim shall retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final satisfaction of such Allowed Other Secured Claim is made as provided herein.  On the full payment or other satisfaction of each Allowed Other Secured Claim in accordance with the Plan, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and

extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(b)     <u>Voting</u>: The Allowed Other Secured Claims are Unimpaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Secured Claims.

### 5.3.     *Senior Notes Claims (Class 3).*

(a)     <u>Treatment</u>:  The Senior Notes Claims shall be Allowed in an aggregate principal amount equal to approximately $232.1 million (together with any accrued and unpaid interest, fees, costs, expenses and other charges through the Effective Date).  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a holder of an allowed Senior Notes Claim agrees to a less favorable treatment with the Debtors, each holder of an allowed Senior Notes Claim shall receive its pro rata share of (a) the Class 3 Equity Distribution, and (b) the New Pace Holdco Loan Obligations.

(b)     <u>Voting</u>:  The Senior Notes Claims are Impaired Claims.  The holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Senior Notes Claims.

### 5.4.     *General Unsecured Claims (Class 4).*

(a)     <u>Treatment</u>:  General Unsecured Claims are Unimpaired Claims.  Except to the extent that a holder of a General Unsecured Claim agrees to different treatment, together with the Debtors and Required Holders, each holder of an Allowed General Unsecured Claim, at the option of the Debtors with the consent of the Required Holders, shall (a) be paid in full in Cash, (b) have its Allowed General Unsecured Claim reinstated, and paid in full, on the later to occur of the Effective Date or when such Allowed General Unsecured Claim becomes due in the ordinary course of the Debtors' or the Reorganized Debtors' business operations, or (c) have its Allowed General Unsecured Claim otherwise rendered Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(b)     <u>Voting</u>:  The Allowed General Unsecured Claims are Unimpaired Claims. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed General Unsecured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed General Unsecured Claims.

### 5.5.     *Existing Securities Law Claims (Class 5).*

(a)    Treatment:  Holders of Existing Securities Law Claims shall not receive or retain any distribution under the Plan on account of such Existing Securities Law Claims.

(b)    Voting:  The Existing Securities Law Claims are Impaired Claims.  In accordance with section 1126(g) of the Bankruptcy Code, the holders of Existing Securities Law Claims are conclusively deemed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing Securities Law Claims.

### 5.6.    *Existing Interests (Class 6).*

(a)    Treatment:  Except with respect to Intercompany Interests as provided in Section 2.3(b) of this Plan, Existing Interests shall be discharged, cancelled, released and extinguished, and holders thereof shall not receive or retain any distribution under the Plan on account of such Existing Interests.

(b)    Voting:  The Existing Interests are Impaired Interests.  In accordance with section 1126(g) of the Bankruptcy Code, the holders of Existing Interests are conclusively deemed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing Interests.

## ARTICLE VI.

## ACCEPTANCE OR REJECTION OF
## THE PLAN; EFFECT OF REJECTION BY ONE
## OR MORE CLASSES OF CLAIMS OR INTERESTS

### 6.1.    *Class Acceptance Requirement.*

A Class of Claims that is Impaired under the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of holders of the Allowed Claims in such Class that have voted on the Plan.

### 6.2.    *Tabulation of Votes on a Non-Consolidated Basis.*

All votes on the Plan shall be tabulated on a non-consolidated basis by Class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code.

### 6.3.    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."*

Because Classes 5 and 6 are deemed to have rejected this Plan, the Debtors will request confirmation of this Plan, as it may be modified or amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes.  Subject to Sections 14.3 and 14.4 of this Plan, the Debtors reserve the right, in consultation with the Required Holders, to

revoke or withdraw this Plan or, if reasonably acceptable to the Debtors and the Required Holders, to alter, amend, or modify this Plan or, alter, amend, modify, revoke or withdraw any Plan Document, in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary. Subject to Sections 14.3 and 14.4 of this Plan, the Debtors also reserve the right to request confirmation of the Plan, as it may be modified, supplemented or amended from time to time, with respect to any Class that affirmatively votes to reject the Plan.

### 6.4. *Elimination of Vacant Classes.*

Any Class of Claims or Interests that is Impaired and is entitled to vote on the Plan that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed as of the date of the deadline for voting to accept or reject the Plan shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 6.5. *Voting Classes; Deemed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class timely vote to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

### 6.6. *Confirmation of All Cases.*

Except as otherwise specified herein, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors; provided, however, that the Debtors, with the consent of the Required Holders, may at any time waive this Section 6.6.

## ARTICLE VII.

## MEANS FOR IMPLEMENTATION

### 7.1. *Non-Substantive Consolidation.*

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for purposes hereof. Except as specifically set forth herein, nothing in this Plan shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any claim against any other Debtor. Additionally, claimants holding Claims and Interests against multiple Debtors, to the extent Allowed in each Debtor's Chapter 11 Case, will be treated as holding a separate Claim or separate Interest, as applicable, against each Debtor's Estate, provided, however, that no holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim.

**7.2.** **_Continued Corporate Existence, Vesting of Assets in the Reorganized Debtors and Entry into the Indemnification Agreement._**

(a)      Except as otherwise provided in this Plan, certain of the Debtors shall continue to exist after the Effective Date as the Reorganized Debtors in accordance with the laws of their state(s) of incorporation and pursuant to the Amended Constituent Documents for the purposes of satisfying their obligations under the Plan and the continuation of their business.  On or after the Effective Date, the Reorganized Debtors, in its discretion, may take such action as permitted by applicable law and the Amended Constituent Documents as the Reorganized Debtors may determine is reasonable and appropriate.  For the avoidance of doubt, the Dissolving Debtors shall be dissolved on or after the Effective Date in accordance with applicable law.

(b)      Except as otherwise provided in this Plan, on and after the Effective Date, all property of the Debtors' Estates, wherever located, including all claims, rights, Causes of Action, tax attributes (including net operating losses) and rights in respect thereof, and any property, wherever located, and whether acquired by the Debtors under or in connection with this Plan or otherwise, shall vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, other encumbrances and Interests.  On and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire and dispose of property, wherever located, and prosecute, compromise or settle any Claims (including any Administrative Expense Claims) and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that it incurs on or after the Effective Date for Professional Persons' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

(c)      On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions that may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, dissolution, or other organizational documents pursuant to applicable state law; and (4) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

(d)      On the Effective Date, New Pace Holdco shall enter into the Indemnification Agreement.  The Indemnification Agreement shall (a) remain in full force and effect until the expiration of the D&O Insurance Policies, and (b) not be modified, reduced, or

discharged without the consent of the beneficiaries thereof. The Indemnification Agreement shall not apply to or cover any Causes of Action against a Person that result in a Final Order determining that the Person seeking indemnification is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of the duty of loyalty.

**7.3.** *New ABL Facility; New Pace Industries Term Loan Facility; New Pace Holdco Loan Facility*

On the Effective Date, without any requirement of further action by stockholders, directors or managers of the Debtors, each of the Reorganized Debtors shall be authorized to enter into the New ABL Facility, the New Pace Industries Term Loan Facility and the New Pace Holdco Loan Facility, as well as any notes, documents or agreements in connection therewith, including, without limitation, any documents required in connection with the creation or perfection of the Liens on any Collateral securing such facilities.

**7.4.** *Authorization, Issuance and Delivery of Plan Securities.*

(a) On the Effective Date, Reorganized Pace Industries and New Pace Holdco are authorized to issue or cause to be issued those Plan Securities to be issued by them in accordance with the terms of this Plan, the Reorganized Pace Industries LLC Agreement, the New Pace Holdco LLC Agreement and the New Warrant Agreement and to take any and all action associated therewith, without the need for any further Bankruptcy Court, corporate, limited liability company, member or shareholder action.

(b) On the Effective Date, (i) Reorganized Pace Industries shall issue and cause to be delivered to New Pace Holdco the Reorganized Pace Industries LLC Units, and (ii) New Pace Holdco shall issue and cause to be delivered the New Pace Holdco LLC Units directly to the holders of Class 3 Prepetition Senior Notes Claims for distribution in accordance with the terms of the Plan.

(c) On the Effective Date, New Pace Holdco shall issue, and cause to be delivered directly to the New Pace Industries Term Loan Lenders, the New Warrants to purchase New Pace Holdco LLC Units pursuant to the New Warrant Agreement.

(d) As a condition to receiving any Plan Securities under this Plan, each holder of a Class 3 Prepetition Senior Notes Claims shall have executed and delivered to New Pace Holdco a signature page to the New Pace Holdco LLC Agreement. As a condition to receiving any New Warrants under this Plan, each New Pace Industries Term Loan Lender shall have executed and delivered to New Pace Holdco a signature page to the New Warrant Agreement.

(e) The New Pace Holdco LLC Units shall not be listed on a national securities exchange. Moreover, the Reorganized Debtors shall not be a reporting company under the Securities Act, and the Reorganized Debtors shall not be required to and shall not file reports with the Securities Exchange Commissions or any other Governmental Unit after the Effective

Date.

### 7.5. *Cancellation of Existing Securities and Agreements.*

Except for the purpose of evidencing a right to distribution under this Plan, and except as otherwise set forth herein, on the Effective Date, the Prepetition ABL Credit Agreement and the Prepetition Senior Note Agreement shall be deemed cancelled, discharged and of no further force or effect. Notwithstanding anything to the contrary herein, the Prepetition ABL Credit Agreement and the Prepetition Senior Note Agreement shall continue in effect solely to the extent necessary to permit the holders of Allowed Prepetition ABL Claims and Allowed Prepetition Senior Notes Claims, respectively, to receive Plan Distributions in accordance with the terms of this Plan and permit the Debtors to make Plan Distributions on account of such Claims.

### 7.6. *New Board*

On the Effective Date, the New Board shall be appointed. Unless reappointed pursuant to this Section 7.6 hereof, the members of the board of managers of each Debtor prior to the Effective Date shall have no continuing obligations to the Reorganized Debtors in their capacities as such on and after the Effective Date and each such member shall be deemed to have resigned or shall otherwise cease to be a manager of the Reorganized Debtors on the Effective Date. Commencing on the Effective Date, each of the managers of the Reorganized Debtors shall serve pursuant to the terms of the Amended Constituent Documents and may be replaced or removed in accordance therewith.

### 7.7. *New Management*

As of the Effective Date, the individuals who will serve in certain senior management positions of the Reorganized Debtors shall consist of those individuals set forth in the Plan Supplement. The compensation arrangement for any insider of the Debtors that shall become an officer of a Reorganized Debtor shall be disclosed in the Plan Supplement to be filed with the Bankruptcy Court on or before the date of the Confirmation Hearing.

### 7.8. *Corporate and Other Action.*

(a) The Debtors shall serve on the U.S. Trustee quarterly reports of their disbursements until such time as a final decree is entered closing the Chapter 11 Cases or the Chapter 11 Cases are converted or dismissed, or the Bankruptcy Court orders otherwise.

(b) On the Effective Date, the Amended Constituent Documents and any other applicable amended and restated corporate or other organizational documents of the Debtors shall be deemed authorized in all respects.

(c) Any action under the Plan to be taken by or required of the Debtors, including the adoption or amendment of their certificate of incorporation and bylaws, the issuance of securities and instruments, or the selection of officers or managers, shall be authorized and approved in all respects, without any requirement of further action by the Debtors' equity holders, holders of partnership interests, sole member, board of managers, or similar body, as applicable.

(d) The Debtors shall be authorized to execute, deliver, file, and record such documents (including the Plan Documents), contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Bankruptcy Court, corporate, limited liability company, board, member, or shareholder approval or action. In addition, the selection of the Persons who will serve as the initial managers, officers and managers of the Reorganized Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of managers or equity holders of the applicable Reorganized Debtors.

### 7.9. *Comprehensive Settlement of Claims and Controversies.*

Pursuant to Bankruptcy Rule 9019 and in consideration for the Plan Distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims and controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any Plan Distribution on account thereof. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are: (a) in the best interest of the Debtors, their Estates and their property and stakeholders; and (b) fair, equitable and reasonable.

### 7.10. *Transactions Authorized Under Plan.*

On and after the Effective Date, the Debtors shall be authorized to take such actions as may be necessary or appropriate to implement the transactions contemplated by the Plan.

### 7.11. *Approval of Plan Documents.*

The solicitation of votes with respect to the Plan shall be deemed a solicitation for the approval of the Plan and all transactions contemplated hereunder (and subject to the terms and conditions set forth herein). Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions. On the Effective Date, the Debtors shall be authorized to enter into, file, execute and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity of any further corporate, board, shareholder, manager, or similar action.

# ARTICLE VIII.

## DISTRIBUTIONS

**8.1.** *Distributions.*

The Disbursing Agent shall make all Plan Distributions to the applicable holders of Allowed Claims in accordance with the terms of this Plan.

**8.2.** *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims (other than the DIP ABL Claims and the DIP Term Loan Claims), and no holder of a Claim (other than a DIP ABL Claim and a DIP Term Loan Claim) shall be entitled to interest accruing on such Claim on or after the Petition Date.

**8.3.** *Date of Distributions.*

Unless otherwise provided herein, any Plan Distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon as reasonably practicable thereafter; <u>provided</u>, <u>that</u> the Debtors may utilize periodic Distribution Dates to the extent that use of a periodic Distribution Date does not delay payment of the Allowed Claim more than thirty (30) days. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**8.4.** *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various lists of holders of Claims in each of the Classes, as maintained by the Debtors or their agents, shall be deemed closed and there shall be no further changes in the record holders of any of the Claims after the Distribution Record Date. Neither the Debtors nor the Disbursing Agent shall have any obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date. Additionally, with respect to payment of any Cure Amounts or any Cure Disputes in connection with the assumption and/or assignment of the Debtors' executory contracts and unexpired leases, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease, even if such non-Debtor party has sold, assigned or otherwise transferred its Claim for a Cure Amount.

**8.5.** *Disbursing Agent.*

    (a)    <u>Powers of Disbursing Agent</u>.

    The Disbursing Agent shall be empowered to: (i) effectuate all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (ii) make all applicable Plan Distributions or payments contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date), pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

    (b)    <u>Expenses Incurred by the Disbursing Agent on or After the Effective Date</u>.

    Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Debtors, the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including reasonable attorney and other professional fees and expenses) of the Disbursing Agent shall be paid in Cash by the Debtors and will not be deducted from Plan Distributions made to holders of Allowed Claims by the Disbursing Agent. The foregoing fees and expenses shall be paid in the ordinary course, upon presentation of invoices to the Debtors.

    In the event that the Disbursing Agent and the Debtors are unable to resolve a dispute with respect to the payment of the Disbursing Agent's fees, costs and expenses, the Disbursing Agent may elect to submit any such dispute to the Bankruptcy Court for resolution.

    (c)    <u>Bond</u>.

    The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors. Furthermore, any such entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

    (d)    <u>Cooperation with Disbursing Agent</u>.

    The Debtors shall use all commercially reasonable efforts to provide the Disbursing Agent with the amount of Claims and the identity and addresses of holders of Claims, in each case, as set forth in the Debtors' books and records. The Debtors will cooperate in good faith with the Disbursing Agent to comply with the withholding and reporting requirements outlined in Section 8.12 of this Plan.

**8.6.** *Delivery of Distribution.*

Subject to the provisions contained in this Article VIII, the Disbursing Agent will issue, or cause to be issued, and authenticate, as applicable, all Plan Consideration, and subject to Bankruptcy Rule 9010 and except as provided in Section 8.3 of this Plan, make all Plan Distributions or payments to any holder of an Allowed Claim as and when required by this Plan at: (a) the address of such holder on the books and records of the Debtors or their agents; or (b) the address in any written notice of address change delivered to the Debtors or the Disbursing Agent, including any addresses included on any filed proofs of Claim or transfers of Claim filed with the Bankruptcy Court. In the event that any Plan Distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such Plan Distribution shall be made to such holder without interest; provided, however, such Plan Distributions or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of 180 days from: (i) the Effective Date; and (ii) the first Distribution Date after such holder's Claim is first Allowed.

**8.7.** *Satisfaction of Claims.*

Unless otherwise specifically provided herein, any Plan Distributions and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

**8.8.** *Manner of Payment Under Plan.*

Except as specifically provided herein, at the option of the Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

**8.9.** *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Plan Distribution of a value in excess of the Allowed amount of such Claim.

**8.10.** *Exemption from Securities Laws.*

Pursuant to section 1145 of the Bankruptcy Code, the issuance of the Reorganized Pace Industries LLC Units and the New Pace Holdco LLC Units is exempt from the registration requirements of the Securities Act and any State or local law requiring registration for offer or sale of a security. To the extent section 1145 of the Bankruptcy Code is not applicable, the Reorganized Pace Industries LLC Units and the New Pace Holdco LLC Units shall be exempt from such registration requirements pursuant to section 4(a)(2) of the Securities Act and Rule

506 of Regulation D thereunder or such other exemption as may be available from any applicable registration requirements.

### 8.11. *Setoffs and Recoupments.*

Except as expressly provided in this Plan, the Debtors may, but shall not be required to, pursuant to sections 553 and 558 of the Bankruptcy Code or applicable non-bankruptcy law, setoff and/or recoup against any Allowed Claim and any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights and Causes of Action of any nature that such Debtors may hold against the holder of such Allowed Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver, abandonment or release by the Debtors or their successor of any and all claims, rights and Causes of Action that such Debtors or their successors may possess against the applicable holder; provided further, that, for the avoidance of doubt, the Debtors may not setoff and/or recoup any Allowed Claim, right, or Cause of Action that the Debtors may hold against Allowed DIP Claims, Allowed Prepetition ABL Claims or Allowed Prepetition Senior Notes Claims.

### 8.12. *Withholding and Reporting Requirements.*

In connection with this Plan and all Plan Distributions hereunder, the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Plan Distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of any Plan Distribution to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Debtors or the Disbursing Agent believe are reasonable and appropriate, including requiring a holder of a Claim to submit appropriate tax and withholding certifications. Notwithstanding any other provision of this Plan: (a) each holder of an Allowed Claim that is to receive a Plan Distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations on account of such distribution; and (b) no Plan Distributions shall be required to be made to or on behalf of such holder pursuant to this Plan unless and until such holder has made arrangements satisfactory to the Debtors for the payment and satisfaction of such tax obligations or has, to the Debtors' satisfaction, established an exemption therefrom.

## ARTICLE IX.

## PROCEDURES FOR RESOLVING CLAIMS

### 9.1. *Disputed Claims.*

Notwithstanding section 502(a) of the Bankruptcy Code, and in light of the Unimpaired status of all Allowed General Unsecured Claims under the Plan, holders of Claims

do not need to file proofs of Claim with the Bankruptcy Court, and the Debtors or the Reorganized Debtors, as applicable, and the holders of Claims shall determine, adjudicate, and resolve any disputes over the validity and amounts of such Claims in the ordinary course of business; *provided*, that (unless expressly waived pursuant to the Plan) the Allowed amount of such Claims shall be subject to and shall not exceed the limitations under or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable. If a holder of a Claim elects to file a proof of Claim with the Bankruptcy Court, such holder shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for all purposes with respect to the Claim, and the Bankruptcy Court shall retain jurisdiction over all such Claims, which shall be resolved on a case-by-case basis through settlements, Claim objections (or, if necessary, through adversary proceedings), adjudication in a forum other than the Bankruptcy Court, or by withdrawal of the Claims by the holders of such Claims. From and after the Effective Date, the Reorganized Debtors may satisfy, dispute, settle, or otherwise compromise any Claim without approval of the Bankruptcy Court. Disputed Claims shall not be entitled to any Plan Distributions unless and until they become Allowed Claims.

### 9.2. *Objections to Claims.*

Other than with respect to Professional Fee Claims (or as otherwise expressly provided in any order of the Bankruptcy Court), only the Reorganized Debtors shall be entitled to object to Claims after the Effective Date. Any objections to Claims (other than Administrative Expense Claims) shall be served and filed on or before the later of: (a) the Claims Objection Deadline and (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) hereof (for the avoidance of doubt, this objection deadline may be extended one or more times by the Bankruptcy Court). Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the objecting party effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (c) if counsel has agreed to or is otherwise deemed to accept service, by first class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Cases (so long as such appearance has not been subsequently withdrawn). From and after the Effective Date, the Debtors, in their sole discretion, shall have exclusive authority to settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

### 9.3. *Estimation of Claims.*

The Debtors may request that the Bankruptcy Court enter an Estimation Order with respect to any Claim (other than a DIP ABL Claim or a DIP Term Loan Claim), pursuant to section 502(c) of the Bankruptcy Code, for purposes of determining the Allowed amount of such Claim regardless of whether any Person has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time (including during the pendency of any appeal with respect to the allowance or disallowance of such Claims). In the event that the Bankruptcy Court

estimates any contingent or unliquidated Claim for allowance or distribution purposes, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the objecting party may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, resolved or withdrawn by any mechanism approved by the Bankruptcy Court.

### 9.4. *Expenses Incurred on or After the Effective Date.*

Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Debtors, the amount of any reasonable fees and expenses incurred by any Professional Person or the Claims Agent on or after the Effective Date in connection with implementation of this Plan, including reconciliation of, objection to, and settlement of Claims, shall be paid in Cash by the Debtors.

## ARTICLE X.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1. *General Treatment.*

As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases of the Debtors shall be deemed assumed except that: (a) any executory contracts and unexpired leases that previously have been assumed, assumed and assigned, or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; (b) any executory contracts and unexpired leases listed on the Schedule of Rejected Contracts and Leases shall be deemed rejected as of the Effective Date; and (c) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as provided for in the Final Order resolving such motion. Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise will not constitute a termination of obligations owed to the Debtors under such contract or lease that survive breach under applicable law. Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments and rejections described in this Section 10.1 pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to this Section 10.1 shall revest in and be fully enforceable by the Debtors in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law. Nothing contained in this Plan or the listing of a document on the Schedule of Rejected Contracts and Leases, or the Cure Schedule shall constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors or their successors and assigns has any liability thereunder.

**10.2.** *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

All Claims arising from the rejection of executory contracts or unexpired leases, if evidenced by a timely filed proof of claim, will be treated as General Unsecured Claims. In the event that the rejection of an executory contract or unexpired lease by the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors or their properties or interests in property or their agents, successors or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the Rejection Damages Bar Date.

**10.3.** *Cure of Defaults for Assumed or Assumed and Assigned Executory Contracts and Unexpired Leases.*

(a)      Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such executory contract or unexpired lease to be assumed or assumed and assigned pursuant to the Plan, any monetary defaults arising under such executory contract or unexpired lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "*Cure Amount*") in full in Cash on the later of thirty (30) days after: (i) the Effective Date; or (ii) the date on which any Cure Dispute relating to such Cure Amount has been resolved (either consensually or through judicial decision).

(b)      With respect to any executory contract or unexpired lease to be assumed or assumed and assigned pursuant to Section 10.1 of this Plan, the Debtors shall, no later than seven (7) days after the Petition Date, file a schedule (a "*Cure Schedule*") setting forth the Cure Amount, if any, for each executory contract or unexpired lease to be assumed or assumed and assigned by the Debtors.

(c)      In the event of a dispute (each, a "*Cure Dispute*") regarding: (i) the Cure Amount; (ii) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to the proposed assumption or assumption and assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption or assumption and assignment. To the extent a Cure Dispute relates solely to the Cure Amount, the Debtors may assume and/or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute; provided, that, such Debtors has access to sufficient Cash in an amount sufficient to pay the full amount asserted as the required cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court). To the extent the Cure Dispute is resolved or determined against the Debtors, the Debtors may reject the applicable executory contract or unexpired lease after such determination, and the counterparty may thereafter file a proof of claim in the manner set forth in Section 10.2 of this Plan.

**10.4.** *Effect of Confirmation Order on Assumption, Assumption and Assignment, and Rejection.*

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute entry of an order by the Bankruptcy Court pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code approving the assumptions, assumptions and assignments and rejections described in this Article X and determining that: (a) with respect to such rejections, such rejected executory contracts and unexpired leases are burdensome and that the rejection therein is in the best interests of the Estates; (b) with respect to such assumptions, to the extent necessary, that the Debtors have (i) cured, or provided adequate assurance that the Debtors will promptly cure, any default in accordance with section 365(b)(1)(A) of the Bankruptcy Code, (ii) compensated or provided adequate assurance that it or an affiliate will promptly compensate the counterparty for any actual pecuniary loss to such party resulting from such default, and (iii) provided adequate assurance of future performance under such executory contract or unexpired lease; and (c) with respect to any assignment, to the extent necessary, that the Debtors or the proposed assignee has (i) cured, or provided adequate assurance that it or an affiliate will promptly cure, any default in accordance with section 365(b)(1)(A) of the Bankruptcy Code, (ii) compensated or provided adequate assurance that the Debtors or the proposed assignee will promptly compensate the counterparty for any actual pecuniary loss to such party resulting from such default, and (iii) that "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) by the assignee has been demonstrated and no further adequate assurance is required. Assumption of any executory contract or unexpired lease and satisfaction of the Cure Amounts shall result in the full discharge, release and satisfaction of any claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date such executory contract or unexpired lease is assumed. Each executory contract and unexpired lease assumed pursuant to this Article X shall revest in and be fully enforceable by the Debtors in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law. To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto. Any party that fails to timely file a Cure Dispute on the basis that consent to assume or assume and assign the applicable executory contract or unexpired lease is a condition to such assumption or assumption and assignment, shall be deemed to have consented to the assumption or assumption and assignment, as applicable, of such contract or unexpired lease.

**10.5.** *Assumption of Directors and Officers Insurance Policies.*

Notwithstanding anything in the Plan to the contrary, the Debtors shall be deemed to have assumed all of their unexpired D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair or otherwise modify any advancement, indemnity or other obligations of the insurers under the D&O Liability Insurance Policies.

In addition, after the Effective Date, the Debtors shall not terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled from the applicable insurers to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

**10.6.** *Severance Contracts and Programs.*

Except as otherwise expressly provided in the Plan, a prior order of the Bankruptcy Court or to the extent subject to a motion pending before the Bankruptcy Court as of the Effective Date, all severance benefit plans and policies for former employees (including any severance contracts between one or more of the Debtors and a former employee that were in effect as of or after the Petition Date), to the extent contemplated by the Approved Budget, are treated as executory contracts under the Plan and on the Effective Date shall be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code.

## ARTICLE XI.

## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THE PLAN

**11.1.** *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date is subject to:

(a)     the Confirmation Order, in form and substance reasonably acceptable to the Debtors, the DIP ABL Lenders and the Required Holders, having become a Final Order and remaining in full force and effect;

(b)     all actions, agreements and documents, including the Plan Documents and the Plan Supplement, in form and substance reasonably acceptable to the Debtors, the DIP ABL Lenders and the Required Holders, being filed with the Bankruptcy Court, executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by

the Debtors that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

(c)      a chapter 11 trustee, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) not having been appointed in any of the Chapter 11 Cases;

(d)      all material governmental, regulatory and third party approvals, authorizations, certifications, rulings, no-action letters, opinions, waivers and/or consents required in connection with the Plan, having been obtained or made, as applicable, and remaining in full force and effect, and there existing no claim, action, suit, investigation, litigation or proceeding, pending or threatened in any court or before any arbitrator or governmental instrumentality, which would prohibit the consummation of the Plan;

(e)      the Amended Constituent Documents, in form and substance reasonably acceptable to the Debtors and the Required Holders, shall have been filed with the applicable authorities of the relevant jurisdictions of incorporation and shall have become effective in accordance with such jurisdictions' corporation laws; and

(f)      the issuance of the New Pace Holdco LLC Units, Reorganized Pace Industries LLC Units, and the New Warrants, and the New ABL Facility, the New Pace Industries Term Loan Facility, and the Pace Holdco Loan Facility having been consummated, and being in full force and effect (including, without limitation, the receipt of commitments for additional loans under the New Pace Industries Term Loan Facility in an amount to be determined by the Required Holders).

### 11.2.    *Satisfaction and Waiver of Conditions Precedent.*

Except as otherwise provided herein, any actions taken on the Effective Date shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Any of the conditions set forth in Section 11.1 of this Plan may be waived in whole or in part, if reasonably acceptable to the Debtors, the DIP ABL Lenders and the Required Holders, without notice and a hearing, and the Debtors' benefits under any "mootness" doctrine shall be unaffected by any provision hereof.  The failure to satisfy or waive any condition may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any act, action, failure to act or inaction by the Debtors).  The failure of the Debtors to assert the non-satisfaction of any such conditions shall not be deemed a waiver of any other rights hereunder, and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

### 11.3.    *Effect of Failure of Conditions Precedent to the Effective Date.*

If all of the conditions to effectiveness have not been satisfied (as provided in Section 11.1 hereof) or duly waived (as provided in Section 11.2 hereof) and the Effective Date

has not occurred on or before the first Business Day that is more than 60 days after the Confirmation Date, or by such later date as set forth by the Debtors (with the consent of the Required Holders) in a notice filed with the Bankruptcy Court prior to the expiration of such period, then, if reasonably acceptable to the Debtors, the DIP ABL Lenders and the Required Holders, the Debtors may file a motion to vacate the Confirmation Order. Notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if all of the conditions to effectiveness set forth in Section 11.1 hereof are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section 11.3, this Plan shall be null and void in all respects, the Confirmation Order shall be of no further force or effect, no Plan Distributions shall be made, the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence, nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the holder of any Claim against or Interest in the Debtors; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtors or any other Person with respect to any matter set forth in the Plan.

## ARTICLE XII.

## EFFECT OF CONFIRMATION

### 12.1. *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Interest in, the Debtors and inure to the benefit of and be binding on such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted this Plan.

### 12.2. *Discharge of Claims Against and Interests in the Debtors.*

Upon the Effective Date and in consideration of the Plan Distributions, except as otherwise provided herein or in the Confirmation Order (including with respect to Claims left Unimpaired by this Plan), each Person that is a holder (as well as any trustees and agents for or on behalf of such Person) of a Claim or Interest shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities that arose prior to the Effective Date. Except as otherwise provided herein, upon the Effective Date, all such holders of Claims and Interests shall be forever precluded and enjoined, pursuant to sections 105, 524 or 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtors or any property, wherever located, of the Estates.

### 12.3. *Term of Pre-Confirmation Injunctions or Stays.*

Unless otherwise provided herein, all injunctions or stays provided in the Chapter 11 Cases arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 12.4. *Injunction Against Interference with Plan.*

Upon the entry of the Confirmation Order, all holders of Claims and Interests and other Persons, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions, whether in the United States or elsewhere, to interfere with the implementation or consummation of this Plan. Moreover, Bankruptcy Code section 1141(c) provides, among other things, that the property dealt with by this Plan is free and clear of all Claims and Interests (except as otherwise provided in this Plan or the Confirmation Order). As such, to the fullest extent permissible under applicable law, no Person holding a Claim or Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under this Plan other than assets required to be distributed to that Person under this Plan. As of the Confirmation Date, to the fullest extent permissible under applicable law, all Persons are precluded and barred from asserting against any property to be distributed under this Plan any Claims, rights, Causes of Action, liabilities, Interests, or other action or remedy based on any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in this Plan or the Confirmation Order.

### 12.5. *Injunction.*

(a) **Except as otherwise specifically provided in this Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons or Entities who have held, hold or may hold Claims against and/or Interests in the Debtors or the Estates, and all other parties in interest, along with their present or former employees, agents, officers, directors, principals, representatives and affiliates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, their Estates or any of their property, wherever located, or any direct or indirect transferee of any property, wherever located, of, or direct or indirect successor in interest to, any of the foregoing Persons or any property, wherever located, of any such transferee or successor; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, or their Estates or any of their property, wherever located, or any direct or indirect transferee of any property, wherever located, of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property, wherever located, of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or their Estates or any of their property, wherever located,**

or any direct or indirect transferee of any property, of, or successor in interest to, any of the foregoing Persons; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law (including, without limitation, commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan) to the fullest extent permitted by applicable law, or (v) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or their Estates, or against the property or interests in property of the Debtors or their Estates, with respect to any such Claim or Interest. Such injunction shall extend to any successors or assignees of the Debtors and their properties and interest in properties; **provided**, **however**, that nothing contained herein shall preclude such Persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan.

(b)     By accepting Plan Distributions, each holder of an Allowed Claim or Interest will be deemed to have specifically consented to the injunctions set forth in this Section 12.5.

**12.6.**     *Releases.*

(a)     <u>Releases by the Debtors</u>.  Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, on and after the Effective Date, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, the Released Parties shall be deemed released and discharged by the Debtors and their Estates from any and all Claims, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtors, their Estates or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity or that any holder of a Claim or Interest or other Entity would have been legally entitled to assert derivatively for or on behalf of the Debtors, or their Estates, based on, relating to or in any manner arising from, in whole or in part, the commencement of the Chapter 11 Cases, the Debtors, their Estates, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party excluding any assumed executory contract or lease, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the DIP Credit Agreements, the Chapter 11 Cases, or, in each case, related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective

Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a Final Order to have constituted willful misconduct (including, without limitation, actual fraud) or gross negligence; **provided,** that if any Released Party directly or indirectly brings or asserts any Claim or Cause of Action against any other Released Party that has been released or is contemplated to be released pursuant to the Plan in any way arising out of or related to any document or transaction that was in existence prior to the Effective Date, and such Released Party does not abandon such Claim or Cause of Action upon request, then the release set forth in the Plan shall automatically and retroactively be null and void *ab initio* with respect to the Released Party bringing or asserting such Claim or Cause of Action; **provided further** that the immediately preceding proviso shall not apply to (i) any action by a Released Party in the Bankruptcy Court (or any other court determined to have competent jurisdiction), including any appeal therefrom, to prosecute the amount, priority or secured status of any prepetition or ordinary course administrative Claim against the Debtors (except to the extent otherwise released hereby) or (ii) any release or indemnification provided for in any settlement granted under any other court order, **provided** that, in the case of (i) and (ii), the Debtors shall retain all defenses related to any such action. Notwithstanding anything contained herein to the contrary, the foregoing release shall not release any obligation of any party under the Plan or any document, instrument or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in the Plan is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (ii) in the best interests of the Debtors and all holders of Interests and Claims; (iii) fair, equitable and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to the Debtors asserting any claim, Cause of Action or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

(b) **Releases by the Holders of Claims and Interests.** Except as otherwise specifically provided in this Plan or the Confirmation Order, on and after the Effective Date, for good and valuable consideration, including the obligations of the Debtors under this Plan, the Plan Consideration and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, each Releasing Party shall be deemed to have consented to this Plan and the restructuring embodied herein for all purposes, and shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Released Parties from any and all Claims, Interests, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability,

contribution, indemnification, joint liability or otherwise that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on, relating to or in any manner arising from, in whole or in part, the commencement of the Chapter 11 Cases, the Debtors, the Estates, the liquidation, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Releasing Party excluding any assumed executory contract or lease, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the DIP Credit Agreements, the Prepetition ABL Credit Agreement, the Prepetition Senior Note Agreement, or this Plan or the Disclosure Statement, or, in each case, related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a Final Order to have constituted willful misconduct (including, without limitation, actual fraud) or gross negligence; __provided__ that any holder of a Claim or Interest that objects to the releases contained in the Plan shall not receive the benefit of the releases set forth in the Plan (even if for any reason otherwise entitled).  Notwithstanding anything contained herein to the contrary, the foregoing release shall not release any obligation of any party under the Plan or any document, instrument or agreement executed to implement the Plan. For the avoidance of doubt, the Sponsor (on behalf of itself and its current and former affiliates and subsidiaries, and their current and former affiliates' and subsidiaries' current and former managers, officers, equity holders, predecessors, successors and assigns, subsidiaries and each of their respective current and former equity holders, officers, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in their capacity as such) shall release all Claims against the Debtors (including, without limitation, for accrued and unpaid management, consulting, advisory or monitoring fees) other than claims under the Indemnification Agreement.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in the Plan is:  (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (ii) in the best interests of the Debtors and all holders of Interests and Claims; (iii) fair, equitable and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to the Debtors asserting any claim, Cause of Action or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

(c)     Notwithstanding anything to the contrary contained herein, the releases set forth in this Section 12.6 shall not release any (i) claims against any Person to

the extent such Person asserts a crossclaim, counterclaim and/or claim for setoff which seeks affirmative relief against the Debtors or any of their officers, managers, or representatives and (ii) claims against any Person arising from or relating to such Person's gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court.

12.7. *Exculpation and Limitation of Liability.*

On the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, for good and valuable consideration, to the maximum extent permissible under applicable law, none of the Exculpated Parties shall have or incur any liability to any holder of any Claim or Interest or any other Person for any act or omission in connection with, or arising out of the Debtors' restructuring, including the commencement of the Chapter 11 Cases, negotiation, implementation and execution of this Plan, the Plan Supplement, the Chapter 11 Cases, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of this Plan except for gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute gross negligence or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the applicable Persons shall, to the maximum permitted under applicable law, be entitled to rely on the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan, and administration thereof. The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the securities pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

12.8. *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released in or encompassed by Sections 12.6 and 12.7 of this Plan. The Debtors are expressly authorized hereby to seek to enforce such injunction.

12.9. *Retention of Causes of Action/Reservation of Rights.*

(a)     Except as expressly provided in this Plan or in the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtors or the Estates may have, or that the Debtors may choose to assert on behalf of their Estates, under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Causes of Action or claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim and/or claim for setoff that seeks affirmative relief against the Debtors, their officers, directors or representatives or (ii) the turnover of any property of the Estates to the Debtors.

(b)     Except as expressly provided in this Plan or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtors had immediately prior to the Petition Date or the Effective Date against or regarding any Claim left Unimpaired by the Plan. The Debtors shall have, retain, reserve and be entitled to commence, assert and pursue all such rights and Causes of Action as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

(c)     Except as expressly provided in this Plan or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to release any post-Effective Date obligations of any party under the Plan, or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## ARTICLE XIII.

## RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, to the fullest extent permissible under law, over all matters arising in, arising under, or related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     To hear and determine all matters relating to the assumption or rejection of executory contracts or unexpired leases, including whether a contract or lease is or was executory or expired, and the Cure Disputes resulting therefrom;

(b)     To hear and determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)     To hear and resolve any disputes arising from or relating to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004, or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)     To ensure that Plan Distributions to holders of Allowed Claims are accomplished as provided herein;

(e)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(f)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(g)     To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court (including, without limitation, with respect to releases, exculpations and indemnifications);

(h)     To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     To hear and determine all matters relating to the allowance, disallowance, liquidation, classification, priority or estimation of any Claim;

(j)     To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(k)     To hear and determine disputes arising in connection with or related to the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, the Disclosure Statement, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing (including without limitation the Plan Supplement and the Plan Documents); provided that the Bankruptcy Court shall retain jurisdiction over disputes concerning the Indemnification Agreement;

(l)     To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)     To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Confirmation Hearing, or the deadline for responding or objecting to a Cure Amount, for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(q)     To recover all assets of the Debtors and property of the Estates, wherever located;

(r)     To hear and determine any rights, claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory; and

(s)     To enter a final decree closing the Chapter 11 Cases.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, the provisions of this Article XIII shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

### 14.1.   *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code and to the fullest extent permitted by applicable law, (i) any issuance, transfer, or exchange under this Plan of New Pace Holdco LLC Units, the New Warrants, the Reorganized Pace Industries LLC Units and the security interests in favor of the lenders under the New ABL Facility, the New Pace Industries Term Loan Facility or the New Pace Holdco Loan Facility and (ii) the consummation of sale transactions by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under this Plan, the sale by the Debtors of any owned property pursuant to section 363(b) of the Bankruptcy Code, and any assumption, assignment, and/or sale by the Debtors of their interests in unexpired leases of non-residential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, shall constitute a "transfer under a plan" and shall not be subject to any stamp, real estate transfer, recording, or other similar tax.

### 14.2.  *Termination of Professionals.*

On the Effective Date, the engagement of each Professional Person retained by the Debtors shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Person shall be entitled to prosecute their respective Professional Fee Claims and represent their respective constituents with respect to applications for allowance and payment of such Professional Fee Claims and the Debtors shall be responsible for the reasonable and documented fees, costs and expenses associated with the prosecution of such Professional Fee Claims.  Nothing herein shall preclude the Debtors from engaging a former Professional Person on and after the Effective Date in the same capacity as such Professional Person was engaged prior to the Effective Date.

### 14.3.  *Amendments.*

Upon the consent of the Required Holders, this Plan may be amended, modified, or supplemented in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, the Debtors may, if reasonably acceptable to the Debtors and the Required Holders, make appropriate technical adjustments, remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

### 14.4.  *Revocation or Withdrawal of this Plan.*

The Debtors reserve the right, with the consent of the Required Holders, to revoke, delay or withdraw this Plan, as to any or all of the Debtors, prior to the Effective Date.  If the Debtors revoke, delay or withdraw this Plan, in accordance with the preceding sentence, prior to the Effective Date, or if confirmation or consummation of the Plan does not occur, then: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in this Plan, assumption, assumption and assignment, or rejection of executory contracts or leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person or (iii) constitute an admission of any sort by the Debtors or any other Person.

### 14.5.  *Allocation of Plan Distributions Between Principal and Interest.*

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such

distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

### 14.6. *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, with the consent of the Required Holders, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.7. *Governing Law.*

Except to the extent that the Bankruptcy Code or other U.S. federal law is applicable, or to the extent a Plan Document or exhibit or schedule to the Plan provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof to the extent such principles would result in the application of the laws of any other jurisdiction.

### 14.8. *Section 1125(e) of the Bankruptcy Code.*

The Debtors have, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtors and their affiliates, agents, managers, officers, employees, advisors, and attorneys participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

### 14.9. *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed

pursuant to the Plan, the provisions of the Plan shall govern. Nothing in the Plan or the Confirmation Order shall modify or derogate from, or be deemed to modify or derogate from, any order (whether preliminary, interim, final or otherwise and including, without limitation, the Final DIP Order) approving the DIP ABL Credit Agreement, the DIP Term Loan Agreement and/or the transactions contemplated therein.

**14.10. *Time.***

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply. If any payment, distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

**14.11. *Exhibits.***

All exhibits to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

**14.12. *Notices.***

In order to be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (including by facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Pace Industries, LLC
> 481 South Shiloh Drive
> Fayetteville, AR 72704
> Attn: Craig Potter
> Fax: (479) 443-7058
> Email: craig.potter@paceind.com

> with a copy to (which shall not constitute notice):

> Willkie Farr & Gallagher LLP
> 787 Seventh Avenue
> New York, NY 10019
> Attn: Matthew A. Feldman, Rachel C. Strickland, and Debra M. Sinclair
> Fax: (212) 728-8111
> Email: mfeldman@willkie.com
>          rstrickland@willkie.com

dsinclair@willkie.com

-and-

Young Conaway Stargatt & Taylor LLP
1000 N. King St.
Wilmington, DE 19801
Attn: Robert S. Brady, Edmon L. Morton and Joseph Mulvihill
Fax: (302) 571-1253
Email: rbrady@ycst.com
    emorton@ycst.com
    jmulvihill@ycst.com

**14.13.** ***Filing of Additional Documents.***

On or before substantial consummation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**14.14.** ***Reservation of Rights.***

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtors or the Required Holders with respect to this Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtors or the Required Holders with respect to any Claims or Interests prior to the Effective Date.

Dated:  April 11, 2020

Respectfully submitted,

**PACE INDUSTRIES, LLC,** a Delaware
limited liability company, on behalf of itself
and its affiliated Debtors

By: __/s/ Craig Potter_____
     Name: Craig Potter
     Title:  Chief Financial Officer