# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| PACE INDUSTRIES, LLC, et al.,[1] | Case No. 20-10927 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  May 5, 2020 at 10:30 a.m.** |
| | **Objection Deadline:  April 28, 2020 at 5:00 p.m.** |
| | **Re:  Docket Nos. 1 & 44** |

## MACQUARIE SEPTA (US) I, LLC'S MOTION FOR AN ORDER DISMISSING THE CHAPTER 11 CASES OF KPI INTERMEDIATE HOLDINGS, INC. AND ITS DIRECT AND INDIRECT SUBSIDIARIES

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: KPI Holdings, LLC (5032); KPI Capital Holdings, Inc. (6489); KPI Holdings, Inc. (6913); KPI Intermediate Holdings, Inc. (4492); Pace Industries, LLC (6490); Pace Industries, Inc. (6822); Pace FQE, LLC (3611); Port City Group, Inc. (6598); Muskegon Castings, LLC (6858); Alloy Resources, LLC (0283); and Pace Industries of Mexico, L.L.C. (5764). The Debtors' headquarters are located at 481 South Shiloh Drive, Fayetteville, Arkansas 72704.

{01556228;v1 }

**TABLE OF CONTENTS**

Page

JURISDICTION AND VENUE ..................................................................................................1

PRELIMINARY STATEMENT .................................................................................................2

BACKGROUND ..........................................................................................................................2

RELIEF REQUESTED .................................................................................................................3

ARGUMENT ................................................................................................................................4

    I.    The Court Must Dismiss the Chapter 11 Cases of the KPI Intermediate Debtors Because It Lacks Subject Matter Jurisdiction Over Unauthorized Petitions ...........................................................................................................4

        A.    The Directors of the KPI Intermediate Debtors Did Not Have Authority to File Petitions for Bankruptcy ...................................................5

        B.    Federal Public Policy Does Not Invalidate Equity Owners' Retention of the Right to Approve Any Bankruptcy Filing .......................10

        C.    Conclusion ......................................................................................................13

NOTICE.......................................................................................................................................13

# TABLE OF AUTHORITIES

### Cases

*Alta Berkley VI C.V. vs. Omneon, Inc.*, 2011 WL 2923884 (Del. Super. Ct. July 21, 2011) .................................................................................................................. 7

*Hager v. Gibson*, 108 F.3d 35 (4th Cir. 1997) ........................................................... 5, 10

*In re Appraisal of Metromedia Int'l Grp., Inc.*, 971 A.2d 893 (Del. Ch. 2009) ............ 7

*In re Bay Club Partners-472, LLC*, 2014 WL 1796688 (Bankr. D. Or. May 6, 2014) ........................................................................................................................ 12

*In re FKF Madison Park Grp. Owner*, *LLC*, 2011 WL 350306 (Bankr. D. Del. Jan. 31, 2011) ..................................................................................................... 4

*In re Franchise Servs. of N. Am., Inc.*, 2018 WL 485959 (Bankr. S.D. Miss. Jan. 17, 2018), aff'd, 891 F.3d 198 (5th Cir. 2018), *as revised* (June 14, 2018) ............ 12

*In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198 (5th Cir. 2018), as revised (June 14, 2018) ............................................................................................... passim

*In re Global Ship Sys., LLC*, 391 B.R. 193 (Bankr. S.D. Ga. 2007) ..................... 11, 13

*In re Intervention Energy Holdings, LLC*, 553 B.R. 258 (Bankr. D. Del. 2016) ......... 12

*In re Mid-South Business Associates, LLC*, 555 B.R. 565 (Bankr. N.D. Miss. 2016) ......................................................................................................................... 4

*In re Nica Holdings, Inc.*, 810 F.3d 781 (11th Cir. 2015) ............................................. 5

*In re NNN 123 N. Wacker, LLC*, 510 B.R. 854 (Bankr. N.D. Ill. 2014) ...................... 11

*In re S & R Grandview, LLC*, 2013 WL 5525729, (Bankr. E.D.N.C. Oct. 4, 2013) ...... 5

*Jones Apparel Grp., Inc. v. Maxwell Shoe Co.*, 883 A.2d 837 (Del. Ch. 2004). ........ 7, 8

*Keenihan v. Heritage Press*, *Inc.*, 19 F.3d 1255, (8th Cir. 1994) .................................. 5

*Maxwell vs. Aristar, Inc.*, 1976 WL 2448 (Del. Ch. Jan. 28, 1976) .............................. 7

*Price v. Gurney*, 324 U.S. 100 (1945) ............................................................... 4, 5, 10

*Salamone v. Gorman*, 106 A.3d 354 (Del. 2014) ....................................................... 14

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611 (Del. Ch. 2005), *aff'd in relevant part, rev'd in part*, 901 A.2d 106 (Del. 2006). .......................................... 13

### Statutes

Delaware Code, Title 8, § 102 ...................................................................................... 6

Delaware Code, Title 8, § 141 ...................................................................................... 5

Macquarie Septa (US) I, LLC, a Delaware limited liability company ("Macquarie Septa"), by and through its undersigned counsel, hereby submits this motion (the "Motion") for entry of an order in the form attached hereto as **Exhibit A** dismissing the above-captioned chapter 11 cases (the "Chapter 11 Cases") of KPI Intermediate Holdings, Inc., a Delaware corporation ("KPI Intermediate"), and each of its direct and indirect subsidiaries, Pace Industries, LLC, Pace Industries, Inc., Pace FQE, LLC, Port City Group, Inc., Muskegon Castings, LLC, Alloy Resources, LLC and Pace Industries of Mexico, L.L.C. (collectively, the "KPI Intermediate Debtors"), pursuant to section 1112(b) of title 11 of the United States Code (the "Bankruptcy Code"). In support of this Motion, Macquarie Septa respectfully represents the following:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware (the "Court") dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Macquarie Septa consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue of the Chapter 11 Cases in this Court would have been proper if the voluntary petitions filed by the KPI Intermediate Debtors had been properly authorized under applicable Delaware law under 28 U.S.C. §§ 1408 and 1409 and, therefore, this Court has the authority to dismiss the improperly filed voluntary petitions.

2.	The bases for the relief requested herein are section 1112(b) of the Bankruptcy Code, Rule 1017(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Rule 1017-2, and section 141 of Title 8 of the Delaware Code, Del. Code Ann. tit. 8, § 141 (the "Delaware General Corporation Law").

## PRELIMINARY STATEMENT

3.	The Court must dismiss the Chapter 11 Cases of the KPI Intermediate Debtors because the directors (the "Directors") of KPI Intermediate lacked corporate authority to file the voluntary petitions for the KPI Intermediate Debtors. The absence of authority is jurisdictional.

## BACKGROUND

4.	In January of 2018, Macquarie Septa and its affiliate, Macquarie Sierra Investment Holdings Inc. ("Macquarie Sierra"), entered into an Investment and Subscription Agreement with KPI Intermediate and KPI Holdings, LLC. (the "Investment Agreement"). Pursuant to the Investment Agreement, Macquarie Septa and Macquarie Sierra purchased 250 shares and 150 shares, respectively, of Series A Preferred Stock issued by KPI Intermediate (the "Series A Preferred Stock") for an aggregate purchase price of $37,150,000.

5.	To induce Macquarie Septa and Macquarie Sierra to pay KPI Intermediate $37,150,000 for the Series A Preferred Stock, KPI Intermediate adopted and filed with the Delaware Secretary of State the *KPI Intermediate Holdings, Inc. Amended and Restated Certificate of Incorporation* (the "Certificate"), a true and correct copy of which is attached hereto as Exhibit B, amending its original certificate of incorporation to include protections for the holders of Series A Preferred Stock. When purchasing the Series A Preferred Stock, Macquarie Septa relied upon these protections in the Certificate, which include without limitation, the following provisions:

>   6.1     So long as any share of Series A Preferred Stock remains outstanding, the following actions of the Corporation or any of its Subsidiaries (whether undertaken directly or indirectly, by amendment, merger, consolidation or otherwise) shall require the written consent or affirmative vote of the holders of a majority in interest of the Series A Preferred Stock, given in writing or by vote at a meeting, consenting or voting (as the case may be) separately as a class, and **any such action taken without such consent or vote shall be null and void *ab initio*, and of no force or effect**: . . .
>
>   6.1.3   **directing, adopting or approving** any plan of liquidation, dissolution or winding-up of any Pace Company and **any voluntary bankruptcy** or similar filing by any Pace Company. . . .

Certificate § 6.1, 6.1.3 (emphases added).

6.      On April 12, 2020 (the "Petition Date"), the Directors caused the KPI Intermediate Debtors to file unauthorized voluntary bankruptcy petitions (collectively, the "Petitions") with this Court. None of the Petitions include any written consent or affirmative vote of Macquarie Septa, the holder of 62.5% of the Series A Preferred Stock because neither its written consent nor affirmative vote was obtained.[2] Macquarie Septa did **not** consent to the filing of the Petitions.

7.      Instead, the Directors willfully ignored the express limits on their authority as set forth in the Certificate and purported to authorize the petitions, which they had no power to authorize.

## RELIEF REQUESTED

8.      Macquarie Septa respectfully requests the entry of an order dismissing the Chapter 11 Cases of the KPI Intermediate Debtors pursuant to section 1112(b) of the Bankruptcy Code, because the KPI Intermediate Debtors' Petitions were not properly authorized as a matter of applicable Delaware state law and are therefore void *ab initio* and of no force or effect.

---

[2]   Macquarie Sierra sold its shares of Series A Preferred Stock.

**ARGUMENT**

I. **The Court Must Dismiss the Chapter 11 Cases of the KPI Intermediate Debtors Because It Lacks Subject Matter Jurisdiction Over Unauthorized Petitions**

9. The Chapter 11 Cases of the KPI Intermediate Debtors must be dismissed because the Directors lacked corporate authority to file the Petitions of the KPI Intermediate Debtors in the first place. It is blackletter law that "[a] party cannot subject an entity to bankruptcy without authority." *In re FKF Madison Park Grp. Owner, LLC*, 2011 WL 350306, at *3 (Bankr. D. Del. Jan. 31, 2011).

10. It is well settled that a bankruptcy court lacks subject matter jurisdiction over a bankruptcy petition filed without the required corporate authority. *In re Mid-South Business Associates, LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016) (citing *In re Delta Starr Broadcasting, L.L.C.*, 422 F. App'x 362, 368 (5th Cir. 2011)). As the Supreme Court has held, "[i]f the [court] finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. 100, 106 (1945). *See also, In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 206-8 (5th Cir. 2018), as revised (June 14, 2018)("If the petitioners lack authorization under state law, the bankruptcy court 'has no alternative but to dismiss the petition.' *Price*, 324 U.S. at 106, 65 S.Ct. 513. . . . Absent a duly authorized petition, the bankruptcy court has no power 'to shift the management of a corporation from one group to another, to settle intracorporate disputes, and to adjust intracorporate claims.' *Id.*"); *Hager v. Gibson*, 108 F.3d 35, 39 (4th Cir. 1997) ("[W]here a voluntary petition for bankruptcy is filed on behalf of a corporation, the bankruptcy court does not acquire jurisdiction unless those purporting to act for the corporation have authority under local law to institute the proceedings.") (citation and internal quotation marks omitted); *Keenihan v. Heritage Press*, *Inc.*, 19 F.3d 1255,

1258 (8th Cir. 1994) ("A person filing a voluntary bankruptcy petition on a corporation's behalf must be authorized to do so . . . ."); *In re S & R Grandview, LLC*, 2013 WL 5525729, at *1 (Bankr. E.D.N.C. Oct. 4, 2013) ("A bankruptcy court cannot establish jurisdiction over a petitioning entity where the individual instituting the proceeding lacks authority under state law or the corporate governing instruments.").

        **A.**        **The Directors of the KPI Intermediate Debtors Did Not Have Authority to File Petitions for Bankruptcy**

11.        The Supreme Court held, more than 70 years ago, that state law governs corporate authority to file petitions for relief under the Bankruptcy Code. *Price* at 106; *see also In re Nica Holdings, Inc.*, 810 F.3d 781, 789 (11th Cir. 2015); *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 206-8 (5th Cir. 2018), as revised (June 14, 2018) ("State law thus determines who has the authority to file a voluntary petition on behalf of the corporation. If the petitioners lack authorization under state law, the bankruptcy court 'has no alternative but to dismiss the petition.'") (citations omitted). In this case, Delaware corporate law governs the question of authority to file because KPI Intermediate is a Delaware corporation. Under Delaware corporate law, the Certificate determines what authority has been delegated by shareholders, including the holders of the Series A Preferred Stock, to the Directors. Del. Code tit. 8, § 141 ("If any such provision is made in the certificate of incorporation, the powers and duties conferred or imposed upon the board of directors by this chapter shall be exercised or performed to such extent and by such person or persons as shall be provided in the certificate of incorporation.").

12.        Under Delaware law, the certificate of incorporation is the organizational document that governs the rights of all shareholders, including preferred shareholders, and the authority of the board. *The Frederick HSU Living Trust v. ODN Holding Corp.*, 2017 WL 1437308, at *44 n. 26 (Del. Ch. Apr. 24, 2017). The certificate of incorporation may include

"[a]ny provision for the management of the business and for the conduct of the affairs of the corporation, and any provision creating, defining, limiting and regulating the powers of the corporation, the directors, and the stockholders, or any class of the stockholders, or the governing body, members, or any class or group of members of a nonstock corporation; if such provisions are not contrary to the laws of this State." Del. Code tit. 8, § 102(b)(1).

13. "[A] preferred shareholder's rights are defined in either the corporation's certificate of incorporation or in the certificate of designation, which acts as an amendment to the certificate of incorporation." *In re Appraisal of Metromedia Int'l Grp., Inc.* 971 A.2d 893, 899 (Del. Ch. 2009).

14. Thus, the rights of preferred shareholders "are contractual in nature and the 'construction of preferred stock provisions are matters of contract interpretation for the courts.'" *Id.* at 899 (citation omitted). Because the rights of preferred shareholders are contract rights, "in interpreting them the same method is applied as that which is followed in interpreting contracts generally." *Maxwell vs. Aristar, Inc.*, 1976 WL 2448, at *3 (Del. Ch. Jan. 28, 1976); *see also Alta Berkley VI C.V. vs. Omneon, Inc.*, 2011 WL 2923884, at *4 (Del. Super. Ct. July 21, 2011) (holding that "it is well settled that canons of contract construction must be applied when construing the rights of preferred stockholders as provided in the certificate").

15. A Delaware court's primary goal in matters of contract interpretation is to "attempt to fulfill, to the extent possible, the reasonable shared expectations of the parties at the time they contracted." *Alta Berkley*, at *4. Moreover, "the law of Delaware governing contracts is clear: a valid contract will be enforced unless the contract violates public policy or positive law, or unless a party's non-performance is excused." *Alta Berkley*, at *4.

16. "Delaware's corporate statute is widely regarded as the most flexible in the nation." *Jones Apparel Grp., Inc. v. Maxwell Shoe Co.*, 883 A.2d 837, 845 (Del. Ch. 2004). Instead of dictating a rigid structure, "it leaves the parties to the corporate contract (managers and stockholders) with great leeway to structure their relations, subject to relatively loose statutory constraints." *Id.* "Sections 102(b)(1) and 141(a) . . . embody Delaware's commitment to private ordering in the charter." *Id.* In light of this commitment and the "broad effect" of these statutes, Delaware courts do "not lightly find that certificate provisions are unlawful." *Id.* at 845-46. A provision is not contrary to Delaware law just because it withdraws traditional power from the board. *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d at 210. The "obvious purpose" of § 141(a) "is to permit (absent some conflict with Delaware public policy) certificate provisions to withdraw authority from the board." *Jones Apparel Grp., Inc.*, at 852.

17. Here, the Certificate includes contractually agreed-upon protections for the holders of the Series A Preferred Stock upon which Macquarie Septa relied when it made its investment, including, without limitation, the requirement of "the written consent or affirmative vote of the holders of a majority in interest of the Series A Preferred Stock . . . separately as a class . . . directing, adopting or approving . . . any voluntary bankruptcy or similar filing by any Pace Company. . . ." Certificate § 6.1.3. The Certificate defines the "Pace Companies" as KPI Intermediate "and its Subsidiaries, with each such entity a 'Pace Company.'" The Certificate expressly provides that if the Directors purport to proceed without such consent, their actions "shall be null and void *ab initio*, and of no force or effect . . . ." Certificate § 6.1. Section 6.1 of the Certificate is unambiguous and unequivocally bars the Directors from filing voluntary bankruptcy petitions for any of the KPI Intermediate Debtors without the consent of the majority of the holders of the Series A Preferred Stock.

18. The Directors' decision regarding the Chapter 11 Cases was not unbiased. The Directors negotiated a prepackaged plan (the "Plan") that provides substantial personal benefits to the Directors and the sponsor who controls them, including, without limitation (a) global releases of the Directors, the equity sponsor, and all officers, directors and affiliates of the Debtors and the sponsor (the "Relasees") by the KPI Intermediate Debtors and debtors KPI Holdings, LLC, KPI Capital Holdings, Inc. and KPI Holdings, Inc., (b) global third-party releases requiring the holders of existing equity interests to affirmatively object to the Plan and to otherwise "opt out" of these third-party release,[3] (c) broad indemnifications, and (d) exculpation provisions.[4] In many instances, an exculpation provision for the act of filing a bankruptcy petition may be uncontroversial, but here with respect to the Chapter 11 Cases, the Directors knowingly and willfully exceeded their authority when they decided to file the Petitions without the affirmative vote of the majority of the Series A Preferred Stock, and now the Directors seek to use such unauthorized filings to exculpate themselves from liability for their intentional misconduct. *See* Joint Prepackaged Chapter 11 Plan for Pace Industries, LLC and its Affiliated Debtors, Section 12.7. If this ploy is successful, every director in every case where a debtor's corporate charter documents include a restriction on the directors' authority to file bankruptcy petitions could use this as a playbook: willfully breach the restriction on their authority and then negotiate a chapter 11 plan that exculpates them from liability for the intentional usurpation of authority that was never granted to them in the first place.

---

[3] At the hearing on April 14, 2020 this Court ruled that "opt-out" releases were unacceptable and the Plan would need to be amended to limit the third-party releases to "opt-in" third party releases, but the Directors' decision to seek any releases at all demonstrates their inherent conflict.

[4] Macquarie Septa reserves all objections that it has to the confirmation of the Plan, including without limitation the granting of releases to conflicted insiders and exculpation provisions shielding them from their willful violations of the Certificate, and to any other relief sought by the Debtors in the unauthorized Chapter 11 Cases.

Additionally, the Plan proposed by the Debtors contemplates a potentially lucrative management incentive plan. *See* Joint Prepackaged Chapter 11 Plan for Pace Industries, LLC and its Affiliated Debtors, Section 1.64.

19. These types of conflicts are not unusual, which is one reason why preferred shareholders often seek approval rights over particular actions in the governing corporate documents and bargain for limits on the power of the board to act without the preferred shareholders' consent. This is common in Delaware corporations. Macquarie Septa, like many other preferred equity investors, negotiated for and relied on restrictions on the power of the Directors to act unilaterally as a condition to making its investment.

20. In attempting to defend their willful disregard of the limitations on their authority to file the voluntary petitions, the Directors will undoubtedly cause the KPI Intermediate Debtors to assert reasons that they contend make the unauthorized Chapter 11 Cases a better path forward than any available out-of-court restructuring transaction. Such contentions are, however, irrelevant to the fundamental question: did the Directors have the power to file the Petitions without the consent of the holders of the majority of the Series A Preferred Stock? They did not and, therefore, the Petitions are void *ab initio* and of no force or effect. Once this Court concludes that the Directors lacked the authority to file the Petitions, as Macquarie Septa respectfully submits the Court must conclude based on the unambiguous language in the Certificate and the undisputed fact that the holders of the Series A Preferred Stock did not consent to the filing of the Petitions, the Supreme Court has held that this Court "has no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. 100, 106 (1945). *See also In re Franchise Servs. of N. Am., Inc.*, 891 F.3d at 206-7; *Hager*, at 39.

21. The Directors' preference for a pre-negotiated chapter 11 plan that grants them broad releases and indemnification rights simply cannot create authority that exceeds the limits established by the Certificate or justify unauthorized actions. On the contrary, their decision demonstrates why preferred shareholders need the types of protections that Macquarie Septa bargained for and received in Section 6.1.3 of the Certificate.

### B. Federal Public Policy Does Not Invalidate Equity Owners' Retention of the Right to Approve Any Bankruptcy Filing

22. The consent right that the Certificate provides for the Series A Preferred Shares with respect to any bankruptcy filing is valid and enforceable. Courts have confirmed that equity owners have the right to retain for themselves control over whether an entity they own may file a bankruptcy petition.

> [F]ederal bankruptcy law does not prevent a bona fide equity holder from exercising its voting rights to prevent the corporation from filing a voluntary bankruptcy petition just because it also holds a debt owed by the corporation and owes no fiduciary duty to the corporation or its fellow shareholders. A different result might be warranted if a creditor with no stake in the company held the right. So too might a different result be warranted if there were evidence that a creditor took an equity stake simply as a ruse to guarantee a debt. We leave those questions for another day.

*In re Franchise Servs. of N. Am., Inc.*, 891 F.3d at 209. *See also In re Global Ship Sys., LLC*, 391 B.R. 193, 203 (Bankr. S.D. Ga. 2007) (finding that a substantial equity holder's exercise of a consent right over a bankruptcy petition of a limited liability company is not contrary to public policy, even when the equity holder was also a creditor), *In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 861 (Bankr. N.D. Ill. 2014) (dismissing bankruptcy case for cause pursuant to section 1112(b) where undisputed documents demonstrated more probably than not that the debtor was not authorized by its members to file for bankruptcy and the debtor did not carry its burden in rebutting that evidence). The Fifth Circuit held "[t]here is no prohibition in federal bankruptcy law against granting a preferred shareholder the right to prevent a voluntary bankruptcy filing"

even when the shareholder is also an unsecured creditor. *In re Franchise Servs. of N. Am., Inc.,* 891 F.3d at 208.

23. Courts that have not enforced an equity holder's right to consent to a bankruptcy petition because it might be contrary to a federal policy have done so only where the equity holder was a substantial creditor with a nominal equity position. *Compare In re Franchise Servs. of N. Am., Inc.*, 2018 WL 485959, at *16 (Bankr. S.D. Miss. Jan. 17, 2018), *aff'd,* 891 F.3d 198 (5th Cir. 2018), *as revised* (June 14, 2018) (reviewing relevant cases and noting that in cases "which have addressed golden shares or blocking provisions, either provision will be upheld as valid if it is held by an equity holder. If either provision is held by a creditor, however, the provision will be void as a matter of public policy.") *with In re Intervention Energy Holdings, LLC*, 553 B.R. 258, 265 (Bankr. D. Del. 2016) (finding that a consent right over bankruptcy filings held by minority equity holder with a single common unit, "whose primary relationship with the debtor is that of creditor—not equity holder—… is void as contrary to federal public policy"); *In re Bay Club Partners-472, LLC*, 2014 WL 1796688, at *5 (Bankr. D. Or. May 6, 2014) (finding consent of members not enforceable because it was a "maneuver of an 'astute creditor' to preclude Bay Club from availing itself of the protections of the Bankruptcy Code prepetition"). As the Fifth Circuit noted, "[i]t is one thing to look past corporate governance documents and the structure of a corporation when a creditor has negotiated authority to veto a debtor's decision to file a bankruptcy petition; it is quite another to ignore those documents when the owners retain for themselves the decision whether to file bankruptcy." *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d at 208 (citing *In re Squire Court Partners*, 574 B.R. at 708); *see also In re Global Ship Sys., LLC*, 391 B.R. 193, 199, 203 (Bankr. S.D. Ga. 2007).

24. Macquarie Septa is an equity holder only, holding only Series A Preferred Stock, and is not a creditor of any of the KPI Intermediate Debtors. There is no basis under applicable law upon which to deny Macquarie Septa the consent rights granted to it in its capacity as an owner of KPI Intermediate.

25. The provisions in the Certificate, which were negotiated by sophisticated parties, with the advice of counsel to induce investors to purchase Series A Preferred Stock in the amount of $37,150,000, are applicable and valid under Delaware law. Delaware law allows the parties to allocate decision-making authority among equity holders and the Directors. The flexibility created by this freedom of contract is intended to make investments in Delaware corporations more attractive. Delaware courts have long understood "[i]t is not the court's role to rewrite the contract between sophisticated market participants, allocating the risk of an agreement after the fact, to suit the court's sense of equity or fairness." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 624 (Del. Ch. 2005), *aff'd in relevant part, rev'd in part*, 901 A.2d 106 (Del. 2006). Freedom of contract is essential to facilitating investments in Delaware corporations and commerce. See, *Salamone v. Gorman*, 106 A.3d 354, 370 (Del. 2014) quoting ev3, Inc. v. Lesh, 114 A.3d 527, 530 n.3 (Del. 2014), as revised (Apr. 30, 2015)(explaining that "[o]ur focus on the actual language agreed to and used by the parties to a contract best promotes 'parties' ability to negotiate and shape commercial agreements,' in keeping with the goal of Delaware law to 'ensure freedom of contract and promote clarity in the law [and thus] facilitate commerce" because "[I]nvestors ought to be able to rely on the express terms of the certificate and have doubts resolved in favor of their ability to act by majority vote"). Macquarie Septa respectfully submits that the Court should embrace this cardinal principal, and reject the attempts by the Directors and the KPI Intermediate Debtors to ignore it precisely when its application is

needed (i.e., when the Directors decide that they want to file a chapter 11 case because the KPI Intermediate Debtors are distressed).

### C. Conclusion

26. The question here is straightforward: whether Delaware law permits the parties to amend a corporate charter to require shareholder consent in connection with a voluntary bankruptcy petition and whether a federal policy overrides Delaware law. All precedent is consistent: Delaware law allows the parties to allocate decision-making authority among various classes of equity holders and directors in its certificate of incorporation and there is no federal policy that bars such allocation of authority to equity holders. Macquarie Septa respectfully submits that the Petitions commencing the Chapter 11 Cases of the KPI Intermediate Debtors were filed without the requisite corporate authority pursuant to controlling Delaware law. Accordingly, the Court is without subject matter jurisdiction and the Petitions must be dismissed.

### NOTICE

27. No trustee, examiner or statutory committee of creditors has been appointed in the Chapter 11 Cases. Notice of this Motion will be given to all parties who have requested notice in the Chapter 11 Cases. Macquarie Septa has filed a separate motion to limit notice to such parties. Macquarie Septa submits that, under the circumstances, no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, for the reasons set forth above and in the Motion, Macquarie Septa respectfully requests that the Court grant the Motion, enter an Order in the form attached hereto, and grant such other and further relief as it deems just and proper.

Dated: April 17, 2020
Wilmington, Delaware

/s/ William P. Bowden
William P. Bowden (#2553)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
wbowden@ashbygeddes.com

-and-

GIBSON, DUNN & CRUTCHER LLP
Jeffrey C. Krause  (Admitted Pro Hac Vice)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
JKrause@gibsondunn.com