# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* <br><br> PACE INDUSTRIES, LLC, et al.,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 20-10927 (MFW) <br><br> (Jointly Administered) <br><br> Hearing Date: May 21, 2020 at 2:30 p.m. <br><br> Re: Docket No. 133 |

## MACQUARIE SEPTA (US) I, LLC AND MACQUARIE SIERRA INVESTMENT HOLDINGS INC.'S OBJECTION TO FIRST AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN FOR PACE INDUSTRIES, LLC AND ITS AFFILIATED DEBTORS

Macquarie Septa (US) I, LLC, a Delaware limited liability company ("Macquarie Septa"), and Macquarie Sierra Investment Holdings Inc., a Delaware corporation ("Macquarie Sierra" and, together with Macquarie Septa, "Macquarie"), by and through their undersigned counsel, hereby submit this objection (this "Objection")[2] to the *First Amended Joint Prepackaged Chapter 11 Plan for Pace Industries, LLC and Its Affiliated Debtors* [Docket No. 133] (the "Plan")[3] for Pace Industries, LLC and its affiliated Debtors (collectively, the "Debtors"). In support of its Objection, Macquarie respectfully states:

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: KPI Holdings, LLC (5032); KPI Capital Holdings, Inc. (6489); KPI Holdings, Inc. (6913); KPI Intermediate Holdings, Inc. (4492); Pace Industries, LLC (6490); Pace Industries, Inc. (6822); Pace FQE, LLC (3611); Port City Group, Inc. (6598); Muskegon Castings, LLC (6858); Alloy Resources, LLC (0283); and Pace Industries of Mexico, L.L.C. (5764). The Debtors' headquarters are located at 481 South Shiloh Drive, Fayetteville, Arkansas 72704.

[2] Macquarie is filing a separate objection to the purported assumption of the contracts pursuant to which the Debtors sold to Macquarie the Series A Preferred Stock that is being eviscerated by the Plan.

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

1

## PRELIMINARY STATEMENT

1. The Plan the Debtors propose to confirm contains overly broad releases, which the Debtors may in the future seek to argue have functionally released claims of third parties, including Macquarie, against non-Debtors, without their consent. This Court has already admonished the Debtors against the inclusion of nonconsensual or "opt-out" third-party releases of the type they included in the original plan. In response, the Debtors amended their initial chapter 11 plan to specify that Class 6 holders of Existing Interests (which consist of all Interests in the Debtors other than Intercompany Interests, including the preferred stock interests held by Macquarie) have to affirmatively "opt-in" to be bound by and benefit from the release provisions in the Plan. Macquarie does not opt in, and respectfully submits that the release provisions in the Plan are so overbroad that insiders and other non-Debtors may argue that they released Macquarie's direct claims despite Macquarie having opted out.

2. The rights of Macquarie, in its capacity as a holder of Class 6 Interests, are jeopardized by these overly broad release provisions. Macquarie has elected to not "opt-in" to (and, indeed to affirmatively "opt-out" of) the release provisions in the Plan, but the existing overly broad release provisions in the Plan could functionally override Macquarie's election and nevertheless be used by insiders and other non-Debtors or the Debtors to contend that Macquarie's direct claims have been released and barred. In particular, the Plan provides that the Debtors are releasing claims "on behalf of the holder of any Claim or Interest or other Entity." *See* Plan § 12.6(a). The Debtors are not permitted to release direct (non-derivative) claims "on behalf of" third parties; these claims do not belong to the Debtors and the Debtors may not unilaterally release them without the consent of the applicable third parties. Section 12.6(a) also purports to release claims arising from the purchase or sale of the Debtors' securities. Such claims, by their nature, belong to the buyers who purchased or the sellers who

sold such securities. They are not claims of the Debtors. The Plan, however, effectively disguises these third-party releases as the Debtors' releases.

3. The Debtors' release provisions are set forth in Section 12.6(a) of the Plan. As seen in Exhibit A attached hereto, this provision purports to release claims of Claim and Interest holders, which include Macquarie, by allowing the Debtors to release direct claims "on behalf" of these holders (whereas non-derivative claims are addressed in a subsequent clause). The corresponding injunction provision is set forth in Section 12.8 of the Plan and provides that all claims that are released pursuant to Section 12.6 (the Debtors' releases) are barred. Taken together with Section 12.8, the inclusion of non-Debtor claims in Section 12.6 operates to release and bar third-party claims without third-party consent.

4. Accordingly, and for the reasons discussed in this Objection, Macquarie respectfully requests that the Court deny confirmation of the Plan unless and until the offending language in the release provisions is struck and revised, as provided in the redline of Section 12.6 of the Plan attached hereto as <u>Exhibit A</u>.

## ARGUMENT

**I. The Debtors' Releases Are Impermissibly Broad and May Not Include Claims of Third Parties That Do Not Belong to the Debtors**

5. This Court has previously held that releases in a chapter 11 plan may not be overly broad. *See In re Wash. Mut., Inc.,* 442 B.R. 314, 354-56 (Bankr. D. Del. 2011) ("*Washington Mutual*"). Specifically, this Court has held that a plan release provision should be "limited to <u>claims of the Debtors</u> (with respect to <u>releases given by the Debtors</u>) and to claims of creditors relating to claims they have asserted against the Debtors (with respect to releases given by creditors or shareholders)." *Id.* at 356 (emphases added). In *Washington Mutual*, the Court found that the third-party releases at issue were "too broad and should not extend to any affiliates

3

of the Debtors." *Id.* at 354 ("There is no evidence of who the affiliates are or why they should be getting a discharge without filing their own bankruptcy cases."). *Washington Mutual* further held that "there is no basis for granting third party releases of the Debtor's officers and directors, even if it is limited to their post-petition activity." *Id.* ("The only 'contribution' made by them was in the negotiation of the Global Settlement and the Plan. Those activities are nothing more than what is required of directors and officers of debtors in possession (for which they have received compensation and will be exculpated); they are insufficient to warrant such broad releases of any claims third parties may have against them.") (citing *In re Spansion, Inc.,* 426 B.R. 114, 145 (Bankr. D. Del. 2010)).

6. In *Washington Mutual*, the Court noted that it had "previously held that it does not have the power to grant a third party release of a non-debtor," *Washington Mutual*, 442 B.R. at 352 (citations omitted), and ruled that "any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases." *Id.* at 355. The Court clarified that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place). *Id.* Failing to return a ballot is not a sufficient manifestation of consent to a third party release." *Id.* (citing *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999)).

7. Here, Section 12.6(a) of the Plan purports to allow the Debtors to release claims "<u>on behalf</u> of the holder of any Claim or Interest or other Entity," (Plan § 12.6(a) (emphasis added)), which would allow the Debtors to do precisely what *Washington Mutual* held a debtor cannot do—release non-Debtors claims. *See* 442 B.R. at 556. Similarly, releasing a claim by a

buyer of securities such as Macquarie would be improper because by definition such claims belong to the buyer, not the Debtors.

WHEREFORE, for the reasons set forth above, Macquarie respectfully requests that the Court sustain this Objection and deny confirmation of the Plan unless and until the offending language in the release provisions is struck and revised, as provided in the redline of Section 12.6 of the Plan attached hereto as Exhibit A, and grant such other and further relief as it deems just and proper.

Dated: May 14, 2020
Wilmington, Delaware

*/s/ William P. Bowden*
William P. Bowden (#2553)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
wbowden@ashbygeddes.com

-and-

GIBSON, DUNN & CRUTCHER LLP
Jeffrey C. Krause (Admitted Pro Hac Vice)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
JKrause@gibsondunn.com

*Counsel to Macquarie Septa (US) I, LLC and Macquarie Sierra Investment Holdings Inc.*