# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **PACE INDUSTRIES, LLC, *et al.*,**[1] | Case No. 20-10927 (MFW) |
| **Debtors.** | (Jointly Administered) |
| | **Re: Docket Nos. 77 & 208** |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (A) APPROVING PREPETITION SOLICITATION PROCEDURES, (B) APPROVING ADEQUACY OF DISCLOSURE STATEMENT, AND (C) CONFIRMING FIRST AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN FOR PACE INDUSTRIES, LLC AND ITS AFFILIATED DEBTORS

Upon the *Conformed First Amended Joint Prepackaged Chapter 11 Plan for Pace Industries, LLC and its Affiliated Debtors* [Docket No. 208] (including all exhibits, schedules, appendices, and supplements thereto, and as amended, modified and/or supplemented from time to time (including by the terms of this Order), and including the Plan Supplement and any amendments, modifications and/or supplements thereto, together, the "Plan"),[2] a conformed copy of which is attached hereto as Exhibit A, and the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan for Pace Industries, LLC and its Affiliated Debtors* [Docket No. 77] (including all exhibits, schedules, appendices, and supplements thereto, and as amended, modified and/or supplemented from time to time, the "Disclosure Statement"); and upon the *Debtors' Motion for Entry of an Order (A) Scheduling Combined Hearing To Consider (I) Approval of Disclosure*

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: KPI Holdings, LLC (5032); KPI Capital Holdings, Inc. (6489); KPI Holdings, Inc. (6913); KPI Intermediate Holdings, Inc. (4492); Pace Industries, LLC (6490); Pace Industries, Inc. (6822); Pace FQE, LLC (3611); Port City Group, Inc. (6598); Muskegon Castings, LLC (6858); Alloy Resources, L.L.C. (0283); and Pace Industries of Mexico, L.L.C. (5764). The Debtors' headquarters are located at 481 South Shiloh Drive, Fayetteville, Arkansas 72704.

[2]     Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Plan.

*Statement, (II) Approval of Solicitation Procedures and Forms of Ballots, and (III) Confirmation of Prepackaged Plan; (B) Establishing an Objection Deadline to Object to Disclosure Statement and Plan; (C) Approving the Form and Manner of Notice of Combined Hearing, Objection Deadline, and Notice of Commencement; (D) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (E) Extending Time, and Upon Plan Confirmation, Waiving of Requirements to (I) Convene Section 341 Meeting, and (II) File Statements of Financial Affairs and Schedule of Assets and Liabilities; and (F) Granting Related Relief* [Docket No. 20] (the "<u>Scheduling Motion</u>"); and the *Order (A) Scheduling Combined Hearing to Consider (I) Approval of Disclosure Statement, (II) Approval of Solicitation Procedures and Forms of Ballots, and (III) Confirmation of Prepackaged Plan; (B) Establishing an Objection Deadline to Object to Disclosure Statement and Plan; (C) Approving the Form and Manner of Notice of Combined Hearing, Objection Deadline, and Notice of Commencement; (D) Approving Notice and Objection Procedures for the Assumption of Executory Contract and Unexpired Leases; (E) Extending Time, and Upon Plan Confirmation, Waiving of Requirements to (I) Convene Section 341 Meeting, and (II) File Statements of Financial Affairs and Schedules of Assets and Liabilities; and (F) Granting Related Relief* [Docket No. 79] (the "<u>Scheduling Order</u>") having been entered on April 15, 2020; and the Court having considered: (a) the *Declaration of Craig Potter in Support of First Day Relief* [Docket No. 4] (the "<u>First Day Declaration</u>"), (b) the *Declaration of Craig Potter in Support of Order (A) Approving Prepetition Solicitation Procedures, (B) Approving Adequacy of Disclosure Statement, and (C) Confirming First Amended Joint Prepackaged Chapter 11 Plan for Pace Industries, LLC and its Affiliated Debtors* [Docket No. 211] (the "<u>Potter Declaration</u>"), (c) the *Declaration of Jonathan Miller in Support of Confirmation of First Amended Joint Prepackaged Chapter 11 Plan for Pace Industries, LLC and its Affiliated Debtors* [Docket No. 212] (the "<u>Miller Declaration</u>"), (d) the*

*Declaration of James Lee of Kurtzman Carson Consultants, LLC Regarding the Mailing, Voting, and Tabulation of Ballots Accepting and Rejecting the Joint Prepackaged Chapter 11 Plan for Pace Industries, LLC and its Affiliated Debtors* [Docket No. 67] (the "Voting Declaration"); (e) the *Affidavit of Service of Robert Miller Regarding Summary of Joint Prepackaged Plan and Notice of Hearing to Consider (A) Adequacy of Disclosure Statement and Solicitation Procedures; (B) Confirmation of Plan of Reorganization; and (C) Related Materials* [Docket No. 112] (the "Notice Affidavit"), (f) the *Affidavit of Publication of Kurtzman Carson Consultants LLC of Notice of Commencement of Cases Under Chapter 11 of the Bankruptcy Code and Summary of Joint Prepackaged Chapter 11 Plan and Notice of Hearing to Consider (A) Adequacy of Disclosure Statement and Solicitation Procedures; (B) Confirmation of Plan of Reorganization; and (C) Related Materials* [Docket No. 122] (the "Publication Certificate"), (g) the *Notice of Filing of Plan Supplement for the First Amended Joint Prepackaged Chapter 11 Plan for Pace Industries, LLC and its Affiliated Debtors* [Docket No. 165] (as amended by Docket No. 185, the "Plan Supplement"), (h) the *Notice Regarding (I) Potential Assumption and Assignment of Executory Contracts and (II) Proposed Cure Amounts in Connection with Joint Prepackaged Plan for Pace Industries, LLC and its Affiliated Debtors* [Docket No. 95], the *Second Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures* [Docket No. 130], and the *Notice of Filing of Cure Schedule with Respect to Second Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures* [Docket No. 131]; (j) the objections filed with respect to confirmation of the Plan by: (i) Macquarie Septa (US) I, LLC and Macquarie Sierra Investment Holdings Inc. [Docket Nos. 178 and 181]; (ii) Sterling National Bank [Docket Nos. 183 and 186]; (iii) Hughes Builders Inc. [Docket No. 184]; (iv) Magna Mirrors of America, Inc. [Docket No. 180]; (v) Toyota Motor Engineering & Manufacturing North America, Inc. [Docket No. 176];

(vi) Delphi Powertrain Systems [Docket No. 188]; and (vii) Microsoft Corporation [Docket No. 195] (collectively, the "Objections"); and (k) the Debtors' memorandum of law filed in support of approval of the adequacy of the Disclosure Statement, approval of the prepetition Solicitation Procedures (as defined below) and confirmation of the Plan, dated May 18, 2020 (the "Confirmation Brief") [Docket No. 193]; and upon (i) the testimony, affidavits, declarations and exhibits admitted into evidence at the May 29, 2020 hearing to approve the Solicitation Procedures, approve the adequacy of the Disclosure Statement and confirm the Plan (referred to herein as the "Combined Hearing"), (ii) arguments of counsel presented at the Combined Hearing, and (iii) pleadings filed in support of confirmation of the Plan; and upon all pleadings and other documents filed, all orders entered, and evidence and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of these cases (the "Chapter 11 Cases"); and the Court having found that due and proper notice has been given with respect to the Combined Hearing and the deadlines and procedures for filing objections to the Solicitation Procedures, Disclosure Statement and Plan; and upon the appearance of interested parties having been duly noted in the record of the Combined Hearing; and upon the record of the Combined Hearing and the Chapter 11 Cases; and after due deliberation thereon, and sufficient cause appearing therefor;

### IT IS HEREBY ORDERED THAT:[3]

### <u>JURISDICTION</u>

1.      The Court has jurisdiction to consider the Disclosure Statement, Solicitation Procedures, and Plan pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[3]      The findings and conclusions set forth herein and in the record of the Combined Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

*Standing Order of Reference of the United States District Court for the District of Delaware* dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors have confirmed their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue in this Court is proper under 28 U.S.C. §§ 1408 and § 1409.

## COMMENCEMENT OF THE CASES AND FILING OF PLAN

2. On April 12, 2020 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The Chapter 11 Cases have been consolidated for procedural purposes only. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases. On April 24, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee"). The U.S. Trustee disbanded the Committee on May 6, 2020, following the resignation of two of its three members.

3. On the Petition Date, the Debtors filed the Plan[4] and Disclosure Statement.

4. The Plan is a separate chapter 11 plan for each of the Debtors. Except as otherwise expressly provided in this Order, any reference in the Plan or this Order to the Effective Date, the Confirmation Date or the Confirmation Hearing, shall be applicable to and have the meanings ascribed to them as it relates to each particular Debtor and the Plan for such

---

[4] The Plan Supplement was filed on May 7, 2020 [Docket No. 165] and amended on May 15, 2020 [Docket No. 185] and May 28, 2020 [Docket No. 210].

Debtor.  This Order shall be a separate Order with respect to each of the Debtors in each Debtor's separate Chapter 11 Case.

## ADEQUACY OF DISCLOSURE
## STATEMENT AND SOLICITATION PROCEDURES

5.      The Disclosure Statement contains "adequate information" within the meaning of Section 1125 of the Bankruptcy Code.

6.      The procedures for the solicitation and tabulation of votes to accept or reject the Plan (as more fully described in the Scheduling Motion) provided for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

7.      Prior to the Petition Date, the Debtors, through their claims agent Kurtzman Carson Consultants, LLC ("KCC"), caused the Disclosure Statement, the Plan, and the form of Ballot for each holder of Claims in Class 3 (the "Voting Class")  (collectively, the "Solicitation Package") to be transmitted and served in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, Rules 2002 and 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), and all other applicable provisions of the Bankruptcy Code and Bankruptcy Rules, which therefore constituted sufficient notice to all interested parties.  No other or further solicitation was or shall be required.

8.      The Debtors solicited acceptances of the Plan on April 11, 2020 until 11:59 p.m. (prevailing Eastern Time) (the "Voting Deadline").  The Voting Deadline was reasonable and provided an adequate period of time under the circumstances for creditors in the Voting Class to make an informed decision to accept or reject the Plan.

9.      The Debtors were not required to solicit votes from holders of Claims in Class 1, Class 2, or Class 4 (collectively, the "Unimpaired Classes") because the Plan provides that such classes are unimpaired and are therefore conclusively presumed to have accepted the Plan.

10.      The Debtors were not required to solicit votes from holders of Claims in Class 5 or Class 6 (collectively, the "Impaired Classes") because the Plan provides that such classes are impaired, shall not receive or retain any property under the Plan, and are therefore deemed to have rejected the Plan.

11.      As set forth in the Voting Declaration, Solicitation Packages were transmitted to holders of Claims in Class 3 – the only Class of Claims entitled to vote to accept or reject the Plan – via e-mail on April 11, 2020.  Additionally, as set forth in the Notice Affidavit, packages including the Combined Notice, the Plan, the Disclosure Statement, and the Class 6 Voting Notices were transmitted to and served on holders of Claims in Class 6 in accordance with the terms of the Scheduling Order.

12.      The form of the Ballot annexed to the Scheduling Motion as Exhibit B is sufficiently consistent with Official Form No. B 314, adequately addresses the particular circumstances of these Chapter 11 Cases, and is appropriate for the holders of Claims in the Voting Class.

13.      The instructions and form of the Ballot required the furnishing of sufficient information to assure that duplicate Ballots were not submitted and that any duplicate or incorrectly filed Ballots would not be tabulated.  All procedures used to tabulate the Ballots were fair, reasonable, and were conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable laws and regulations.

14.     On April 15, 2020, the Debtors filed the Voting Declaration, certifying the method and results of the Ballot tabulations for the Voting Class.  All members of the Voting Class submitted a Ballot voting to accept the Plan.

15.     Accordingly, pursuant to the requirements of section 1126 of the Bankruptcy Code, the Court finds that all Classes eligible to vote on acceptance of the Plan accepted the Plan.

16.     The Voting Declaration, the Notice Affidavit, and the Publication Certificate were timely, adequate, and sufficient under the circumstances and no other or further solicitation was or shall be required.

**THE PLAN COMPLIES WITH THE STANDARDS FOR**
**CONFIRMATION UNDER SECTION 1129 OF THE BANKRUPTCY CODE**

17.     <u>Section 1129(a)(1)</u>.  The Plan complies with each applicable provision of the Bankruptcy Code.  In particular, the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code.  Among other things:

i.      In accordance with section 1122(a) of the Bankruptcy Code, Article IV of the Plan classifies each Claim against and Interest in the Debtors into a Class containing only substantially similar Claims or Interests;

ii.     In accordance with section 1123(a)(1) of the Bankruptcy Code, Article IV of the Plan properly classifies all Claims and Interests that require classification;

iii.    In accordance with section 1123(a)(2) of the Bankruptcy Code, Article IV of the Plan properly specifies each Class of Claims or Interests that is not impaired under the Plan;

iv.     In accordance with section 1123(a)(3) of the Bankruptcy Code, Article V of the Plan properly specifies the treatment of each Class of Claims or Interests that is impaired under the Plan;

v.      In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or Interest of a

particular Class unless the holder of such a Claim or Interest agrees to less favorable treatment;

vi.     In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation, including, without limitation, the provisions regarding Effective Date transactions and transfers, the restructuring transactions and management of the Reorganized Debtors, and the funding of the Plan;

vii.     In accordance with section 1123(a)(6) of the Bankruptcy Code, the Amended Constituent Documents contain a provision prohibiting the issuance of non-voting equity securities;

viii.     In accordance with section 1123(a)(7) of the Bankruptcy Code, the manner of selection of officers, directors and/or managers of the Reorganized Debtors is consistent with the interests of creditors and equity security holders and with public policy;

ix.     In accordance with section 1123(b)(1) of the Bankruptcy Code, Article V of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests;

x.     In accordance with section 1123(b)(2) of the Bankruptcy Code, Article X of the Plan provides for the assumption, assumption and assignment, or rejection of the Debtors' executory contracts and unexpired leases that have not been previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code and orders of the Court.  In addition, adequate assurance of future performance by the applicable Debtor or its designee under any contracts that are being assumed and assigned under the Plan has been provided;

xi.     In accordance with section 1123(b)(3) of the Bankruptcy Code, Article XII of the Plan provides that, except as set forth therein, the Reorganized Debtors, as applicable, shall have, retain, reserve, and be entitled to assert all claims, Causes of Action, rights of setoff, or other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and/or equitable rights respecting any Claim left unimpaired, as set forth in Articles IV or V of the Plan, may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced;

xii.     In accordance with section 1123(b)(3) of the Bankruptcy Code, Articles II and XII of the Plan provide that the treatment of Claims against and Interests in the Debtors under the Plan represents,

among other things, the settlement and compromise of certain disputes. Such settlements are fair, equitable, reasonable and in the best interests of the Debtors, the Reorganized Debtors, their respective Estates, and their stakeholders;

xiii.   In accordance with section 1123(b)(5) of the Bankruptcy Code, Article V of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims in each Class of Claims;

xiv.   In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code; and

xv.   In accordance with section 1123(d) of the Bankruptcy Code, Article X of the Plan provides for the satisfaction of Cure Amounts associated with each executory contract and unexpired lease to be assumed or assumed and assigned pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. Cure Amounts will be determined in accordance with the underlying agreements and applicable law.

18.   <u>Section 1129(a)(2)</u>. The Debtors have complied with all applicable provisions of the Bankruptcy Code with respect to the Plan and the solicitation of acceptances or rejections thereof. In particular, the Plan complies with the requirements of sections 1125 and 1126 of the Bankruptcy Code as follows:

i.   All persons entitled to receive notice of the Disclosure Statement, the Plan and the Combined Hearing have received proper, timely and adequate notice in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and all such persons have had an opportunity to appear and be heard with respect thereto;

ii.   In transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices in soliciting and tabulating the votes on the Plan, the Debtors solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Bankruptcy Rules and applicable non-bankruptcy law. Accordingly, the Released Parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and by the exculpation provisions set forth in Sections 12.7 of the Plan;

iii.      Written notice of the Combined Hearing and the time to file objections to approval of the Disclosure Statement and the Solicitation Procedures and confirmation of the Plan has been provided substantially in the form, within the time, and in accordance with the Bankruptcy Rules and the procedures approved and prescribed by this Court in the Scheduling Order. Such written notice is adequate and sufficient notice of the Disclosure Statement, the Plan, the contents of the Plan, the Combined Hearing, and the opportunity to object to any aspect of the foregoing, including the Solicitation Procedures;

iv.      Claims and Interests in Class 1, Class 2 and Class 4 under the Plan are unimpaired, and such Classes are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code;

v.      The Plan was voted on by the only Class of impaired Claims or Interests that was entitled to vote pursuant to the Bankruptcy Code and the Bankruptcy Rules (i.e., Class 3);

vi.      The Debtors have made a final determination of the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims in the Voting Class under the Plan; and

vii.      The Voting Class accepted the Plan unanimously, and accordingly, the Plan meets the requirement that at least two-thirds in amount and a majority in number of the Claims actually voting in at least one impaired class vote in favor of the Plan.

19.      <u>Section 1129(a)(3)</u>.  The Plan has been proposed in good faith and not by any means forbidden by law.  In so finding, the Court has considered the totality of the circumstances in these Chapter 11 Cases.  The Plan is the result of extensive, good faith, arm's-length negotiations among the Debtors and their principal creditor constituencies, reflects substantial input from such constituencies, and achieves the goal of reorganization embodied by the Bankruptcy Code.

20.      The Debtors filed and have prosecuted the Chapter 11 Cases with an honest belief that they were in need of restructuring and that the restructuring contemplated in the Plan is the best strategic alternative available to them and all of their stakeholders.  The

Debtors' good faith is evident from the record of the Chapter 11 Cases, including the Disclosure Statement, the Plan, and the record of the Combined Hearing. The Plan achieves a fair and appropriate result, consistent with the objectives and purposes of the Bankruptcy Code. The Debtors and each of their respective officers, directors, employees, advisors and professionals (i) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate and implement the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated thereby, including the Plan Supplement documents, and (b) take any actions authorized, directed or contemplated by this Order or the Plan. Thus, the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

21. <u>Section 1129(a)(4)</u>. Except as provided in the Plan and the DIP Order, no payment for services or costs and expenses in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been or will be made by the Debtors, other than payments that have been (or subsequently are) authorized by or are subject to an order of the Court. Pursuant to Section 3.3 of the Plan, and except as otherwise provided herein, in the Plan or in the DIP Order, all payments to be made to Professional Persons or other entities asserting a Fee Claim for services rendered before the Effective Date will be subject to review and approval by this Court.

22. <u>Section 1129(a)(5)</u>. To the extent known, the Debtors have disclosed the identities and affiliations of the individuals proposed to serve, after confirmation of the Plan, as directors, officers, and/or managers of each of the Reorganized Debtors, and the identity and the nature of compensation of insiders that will be employed or retained by any of the Reorganized Debtors. The appointments to, or continuance in, such offices by the individuals proposed to

serve, after confirmation of the Plan, as directors, officers, and/or managers is consistent with the interests of holders of Claims and Interests and with public policy.

23. <u>Section 1129(a)(6)</u>. The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.

24. <u>Section 1129(a)(7)</u>. Each holder of an impaired Claim in the Voting Class will, on account of such Claim, receive or retain property under the Plan having a value, as of the Effective Date, that is not less than the amount that such holder would have received or retained if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. <u>See</u> Disclosure Statement, <u>Exhibit B</u>.

25. <u>Section 1129(a)(8)</u>. The Plan has not been accepted by all impaired Classes of Claims and Interests because, pursuant to section 1126(g) of the Bankruptcy Code, the holders of Claims in Class 5 and Class 6 are conclusively deemed to have rejected the Plan. Nevertheless, the Plan is confirmable because it satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to such non-accepting classes, as set forth below.

26. <u>Section 1129(a)(9)</u>. Except to the extent that the holder of a particular Claim has agreed to different treatment, the Plan provides treatment for DIP Claims, Administrative Expense Claims, Priority Tax Claims, Fee Claims and Priority Non-Tax Claims that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

27. <u>Section 1129(a)(10)</u>. As evidenced by the Voting Declaration, at least one Class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider (as that term is defined in Section 101(31) of the Bankruptcy Code).

28. <u>Section 1129(a)(11)</u>. The information in the Disclosure Statement establishes that the Plan is feasible and that confirmation of the Plan is not likely to be followed

by the liquidation or the need for the further financial reorganization of the Debtors or the Reorganized Debtors (except with respect to the Dissolving Debtors, which shall be dissolved on or after the Effective Date in accordance with the terms of the Plan).

29.     Section 1129(a)(12).  The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Section 3.4 of the Plan provides for the payment of all fees due to the United States Trustee.

30.     Sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129 (a)(16). Sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

31.     Section 1129(b).  The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to Classes 5 and 6, which Classes are impaired and deemed to reject the Plan.  The Plan does not discriminate unfairly with respect to such Classes because no similarly situated holders of Claims or Interests are receiving a recovery under the Plan.  The Plan is "fair and equitable" with respect to such Classes because (i) no holders of Claims or Interests junior to the Claims and Interests in such Classes will receive or retain property under the Plan on account of such Claims or Interests, and (ii) no holders of Claims in a senior Class will receive a recovery in excess of 100% of the amount of its Claim(s).  Thus, the Plan may be confirmed notwithstanding the rejection by Classes 5 and 6.

32.     Section 1129(c).  The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The Plan is the only chapter 11 plan filed in each of the Chapter 11 Cases.

33.     Section 1129(d).  No party in interest, including, but not limited to, any governmental unit (as defined in section 101(27) of the Bankruptcy Code), has requested that the Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is the

avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and the principal purpose of the Plan is not such avoidance.

34.     All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not in conflict with any federal or state law.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## NEW ABL FACILITY, NEW PACE INDUSTRIES
## TERM LOAN FACILITY; NEW PACE HOLDCO LOAN FACILITY

35.     The New ABL Facility, New Pace Industries Term Loan Facility and New Pace HoldCo Loan Facility are essential elements of the Plan.  The terms of the New ABL Facility, New Pace Industries Term Loan Facility and New Pace HoldCo Loan Facility are reasonable, and the Debtors have provided adequate notice of the material terms thereof.  The Debtors and the Reorganized Debtors are authorized, without further approval of this Court, to execute and deliver all agreements, documents, instruments and certificates relating to the New ABL Facility, New Pace Industries Term Loan Facility and New Pace HoldCo Loan Facility.

## DISCHARGE, INDEMNIFICATION,
## INJUNCTIONS, RELEASES AND EXCULPATION

36.     The discharge, indemnification, injunctions, releases and exculpation provisions set forth in the Plan constitute good-faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are made in exchange for good and valuable consideration and:  (i) are in the best interests of the Debtors, their Estates, and holders of Claims and Interests; (ii) are consensual, fair, equitable and reasonable; (iii) are integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan, (iv) confer substantial benefits on the Debtors' Estates, (v) given and made after

sufficient and appropriate notice and opportunity for a hearing, and (vi) critical to the success of the Plan and the failure to implement the injunctions, exculpation, and releases would seriously impair the Debtors' ability to confirm and implement the Plan. Each of the discharge, release, indemnification, injunction and exculpation provisions set forth in the Plan:

i.      is within the jurisdiction and judicial power of the Court under 28 U.S.C. §§ 1334(a), (b) and (d);

ii.      is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code;

iii.      is an integral element of the settlements and transactions incorporated into the Plan;

iv.      confers a material benefit on, and is in the best interests of, the Debtors and their Estates;

v.      is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and

vi.      is consistent with and permitted by sections 105, 1123, 1125(e) and 1129 of the Bankruptcy Code and other applicable law.

Accordingly, it is hereby

**ORDERED** that:

36.      Pursuant to Bankruptcy Rule 3017(b), the Disclosure Statement and all other materials included in the Solicitation Package are APPROVED in all respects as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code.

37.      The Combined Notice (as defined in the Scheduling Motion) complied with the terms of the Scheduling Order, was adequate based on the circumstances of these Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable non-bankruptcy law.

38.     The Solicitation Procedures, including the procedures for transmittal of the

Solicitation Packages, the forms of the Ballot, the Voting Deadline, the Voting Record Date (as

defined in the Voting Declaration), and the procedures for tabulating votes were appropriate and

satisfactory based on the circumstances of these Chapter 11 Cases and are approved under

sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy

Rules, and all other applicable non-bankruptcy rules, laws, and regulations.  The solicitation of

votes complied with the provisions of section 1125(g) of the Bankruptcy Code.

39.     The Plan (as modified by the terms set forth below) and each of its

provisions (whether or not specifically described herein) are CONFIRMED in each and every

respect, pursuant to section 1129 of the Bankruptcy Code.  All Plan Documents, including, but

not limited to, the Plan Supplement, are approved in all respects.

40.     The Plan is hereby modified as follows

a.   The definition of "Chapter 11 Cases" set forth in Article I, Section A,
     paragraph 1.13 is modified to insert "Case No. 20-10927 (MFW)."

b.   The definition of "New Pace Holdco Loan Facility" set forth in Article I,
     Section A, paragraph 1.76, is modified to delete the clause "in an aggregate
     principal amount equal to the amount of the Prepetition Senior Notes
     outstanding as of the Effective Date" and replacing such clause with the
     phrase "in an aggregate principal amount of $188 million."

c.   The definition of "New Pace Industries Term Loan Facility" set forth in
     Article I, Section A, paragraph 1.81 shall be modified to delete the text "$50
     million, plus an amount to be determined by the Reorganized Debtors and the
     Required Holders, to be funded by the New Pace Industries Term Loan
     Lenders on the Effective Date" and replace it with "$125 million, to be funded
     by the New Pace Industries Term Loan Lenders in accordance with the terms
     of the New Pace Industries Term Loan Agreement."

d.   The treatment of the Senior Note Claims set forth in Article V, Section 5.13,
     is hereby modified to delete the second sentence in its entirety and replace it
     with the following:  "On the Effective Date, or as soon as reasonably
     practicable thereafter, except to the extent that a holder of an allowed Senior
     Note Claim agrees to a less favorable treatment with the Debtors, each holder
     of an allowed Senior Note Claims shall receive its pro rata share of (a) the

Class 3 Equity Distribution, (b) $50 million in aggregate principal amount of the New Pace Industries Term Loan Facility Obligations, and (c) the New Pace Holdco Loan Obligations."

42.     The Debtors have filed the Plan Supplement, consisting of the following: (i) form of organizational documents for New Pace Holdco, (ii) form of New ABL Credit Agreement, (iii) form of New Pace Industries Term Loan Agreement, (iv) form of New Pace Holdco Loan Agreement, (v) Schedule of Rejected Contracts and Leases, (vi) the identity of the proposed directors and officers of the Reorganized Debtors, (vii) a summary of the terms of the Indemnification Agreement and (viii) form of the New Pace Holdco Shareholders Agreement. The filing and notice of such documents was good and proper under the circumstances and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order and all other applicable rules, laws and regulations, and no other or further notice is or shall be required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan, and the Debtors are authorized to take any and all actions to implement such documents. The Debtors reserve the right to alter, amend, update or modify the Plan Supplement and any schedules, exhibits or amendments thereto, prior to the Effective Date in accordance with the terms of the Plan and the Restructuring Support Agreement and subject to the terms of this Order.

43.     On the Effective Date, the initial board of managers/directors of the Reorganized Debtors shall be consistent with the terms of the Plan and the Plan Supplement. Such appointment and designation is hereby approved and ratified as being in the best interests of the Debtors and creditors and consistent with public policy, and such directors hereby are deemed elected and appointed to serve in their respective capacities as of the Effective Date without further action of the Bankruptcy Court or the Reorganized Debtors.

44.     The Effective Date of the Plan shall occur on the first Business Day on which all conditions set forth in Section 11.1 of the Plan have been satisfied or waived in accordance with Section 11.2 of the Plan.

45.     All Objections to the approval of the Disclosure Statement or confirmation of the Plan and any reservation of rights contained therein that (a) have not been withdrawn, waived or settled prior to the entry of this Order, or (b) are not cured by the relief granted herein, are hereby OVERRULED in their entirety and on their merits, and all withdrawn objections or responses are hereby deemed withdrawn with prejudice.  The record of the Combined Hearing is hereby closed.

46.     Except as otherwise provided in the Plan, nothing contained in this Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Debtors or their Estates.

47.     The Plan provides for the comprehensive settlement of Claims and controversies against the Debtors.  The negotiations of such settlements were conducted in good faith and at arm's length, and each such settlement is of benefit to the Debtors' Estates and represents a fair, necessary and reasonable compromise of the Claims held by the holders thereof.  The terms and conditions of each such compromise and settlement are therefore an integral part of the Plan.  The settlements, as reflected in the relative distributions and recoveries of holders of Claims and Interests under the Plan, are fair and reasonable to the Debtors and their Estates and accordingly are approved.  The settlements will save the Debtors and their Estates the costs and expenses of prosecuting various disputes, the outcome of which would likely consume substantial resources of the Debtors' Estates and require substantial time to adjudicate.

## A. Plan Implementation

48. This Order establishes conclusive corporate or other authority, and evidence of such corporate or other authority, required for each of the Debtors to undertake any and all acts and actions required to implement, or contemplated by, the Plan, including without limitation, the specific acts or actions or documents or instruments identified in Article VII of the Plan, and no board, member or shareholder vote shall be required with respect thereto.

49. In accordance with section 1142 of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation or similar law of any other state (collectively, the "<u>Reorganization Effectuation Statutes</u>"), but subject to the fulfillment or waiver of all conditions precedent in Section 11.1 of the Plan, without further action by the Court or the stockholders, managers or directors of any Debtor or Reorganized Debtor, the Debtors, the Reorganized Debtors, and any officer (each, a "<u>Designated Officer</u>") of the applicable Reorganized Debtor, are authorized to: (a) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order, or the transactions contemplated thereby or hereby, including, without limitation, those transactions identified in Article VII of the Plan and the payment of any taxes owing in respect of distributions under the Plan; and (b) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate and consummate the Plan, including the Plan Documents. Without limiting the generality of the foregoing provisions of this Paragraph 47, the applicable Debtors are authorized to enter into with the applicable agent and/or lenders a payoff letter (containing ordinary and customary terms and conditions and otherwise in accordance with Section 5.17 of the DIP Order) in connection with the payment under the Plan of the applicable DIP Claims.

50. To the extent that, under applicable non-bankruptcy law, any of the actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order, or the transactions contemplated thereby or hereby would otherwise require the consent or approval of the stockholders or directors of any of the Debtors or Reorganized Debtors, this Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors and stockholders of the appropriate Debtor(s) or Reorganized Debtor(s).

51. Each and every federal, state, and local government agency is hereby authorized and directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements, mortgages, deeds of trusts, indemnity deeds of trusts and any other security documents) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Order.

52. The consummation of the Plan, including the assumption of any executory contract or unexpired lease by a Reorganized Debtor, shall not constitute a change in ownership or change in control under any employee benefit plan or program, financial instrument, loan or financing agreement, executory contract or unexpired lease or contract, lease or agreement in existence on the Effective Date to which any Debtor is a party.

**B.**   **Approval of Injunction, Release and Exculpation Provisions**

53. The injunction, release and exculpation provisions contained in the Plan, including those set forth in Article XII of the Plan (as modified by paragraph 52 hereof), are expressly incorporated into this Order as if set forth in full herein, and are authorized and approved and shall be immediately effective on the Effective Date of the Plan without further order or action on the part of the Court or any other party.

54.     Notwithstanding anything in the Plan or the Confirmation Order to the contrary, the direct claims, if any, owned by Macquarie Septa (US) I, LLC, or Macquarie Sierra Investment Holdings Inc., against any entity other than the Debtors, including without limitation any non-derivative claims arising from the purchase, sale or rescission of any purchase or sale of any security of the Debtors, shall not be released, prejudiced or impaired by the Plan or the Confirmation Order.

55.     Upon entry of this Order, all holders of Claims or Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

## C.     Approval of Certain Corporate Actions

56.     The Debtors are authorized to take, prior to the Effective Date, such actions necessary or desirable to modify the corporate structure of the Debtors, including, without limitation, the adoption of the Amended Constituent Documents of each applicable Reorganized Debtor, and any instruments required to be issued under the Plan, to undertake, consummate and execute and deliver any documents relating to the restructuring transaction contemplated by the Plan.

## D.     Order Binding on All Parties

57.     In accordance with section 1141(a) and other applicable provisions of the Bankruptcy Code and Section 12.1 of the Plan, and notwithstanding any otherwise applicable law, upon the occurrence of the Effective Date, the terms of the Plan and this Order shall be binding upon, and inure to the benefit of the Debtors, all holders of Claims and Interests, any other person giving, acquiring, or receiving property under the Plan, any and all non-Debtor

parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in these Chapter 11 Cases, and their respective successors and assigns.

58.     On the Effective Date, all settlements, compromises, releases, waivers, discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on Persons who may have had standing to assert any settled, compromised, released, waived, discharged, exculpated, or enjoined Causes of Action after the Effective Date.

**E.     Vesting and Transfer of Assets**

59.     On the Effective Date, except as otherwise provided in the Plan, all property of the Estates of the Debtors, including all claims, rights and Causes of Action, and any property acquired by the Debtors under or in connection with the Plan, shall vest in each respective Reorganized Debtor free and clear of all Claims, liens, charges, other encumbrances and Interests.

**F.     Approval of Discharge of Claims Against and Termination of Interests**

60.     The discharge provisions as set forth in Section 12.2 of the Plan are approved in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of the Court or any other party.

61.     Except as otherwise provided in the Plan, the DIP Order or this Order, in accordance with, and to the extent provided in, section 1141(d)(1) of the Bankruptcy Code, entry of this Order acts as a discharge, effective as of the Effective Date, of all debts of, Claims against, liens on, and Interests in the Debtors, their assets or properties, which debts, Claims, liens, and Interests arose at any time before the entry of this Order.  The discharge of the Debtors shall be effective as to each Claim, regardless of whether a proof of claim therefor was filed, whether the Claim is or becomes an Allowed Claim or whether the holder thereof voted to accept the Plan.  On the Effective Date, as to every discharged Claim and Interest, any holder of such

Claim or Interest shall be precluded from asserting against the Debtors or the Reorganized

Debtors, the assets or properties of any of them, any other or further Claim or Interest based

upon any document, instrument, act, omission, transaction or other activity of any kind or nature

that occurred before the Confirmation Date.

### G. Survival of Corporate Indemnities; Indemnification Agreement

62. Notwithstanding anything to the contrary contained herein or in the Plan,

subject to the occurrence of the Effective Date, the obligations of the Reorganized Debtors to

indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of

directors or officers who were directors or officers of any of the Debtors as of the Petition Date

and prior to the Effective Date against any Causes of Action relating to the Debtors, shall be

governed solely by the Indemnification Agreement. The obligations of the Reorganized Debtors

to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of

directors or officers of any of the Reorganized Debtors who are directors or officers on and after

the Effective Date shall be governed by the Amended Constituent Documents.

63. On the Effective Date, New Pace HoldCo shall enter into the

Indemnification Agreement, which shall contain terms in all material respects consistent with the

summary of terms filed with the Plan Supplement, which shall (a) remain in full force and effect

until the expiration of the D&O Liability Insurance Policies, and (b) not be modified, reduced, or

discharged without the consent of the beneficiaries thereof. The Indemnification Agreement

shall not apply to or cover any Causes of Action against a Person that result in a Final Order

determining that the Person seeking indemnification is liable for fraud, willful misconduct, gross

negligence, bad faith, self-dealing or breach of the duty of loyalty.

## H.    Intercompany Claims and Interests

64.    Notwithstanding anything to the contrary in the Plan, on or after the Effective Date, any and all Intercompany Claims shall, at the option of the Debtors or the Reorganized Debtors, as applicable, and as acceptable to the Required Holders, either be (i) extinguished, cancelled and/or discharged on the Effective Date, or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Intercompany Claims being left Unimpaired.  To the extent any such Intercompany Claim is reinstated, or otherwise adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid or continued as of the Effective Date, any such transaction may be effected on or after the Effective Date without any further action by the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.  For the avoidance of doubt, any Claim of any Dissolving Debtor against any Reorganized Debtor shall be extinguished, cancelled and discharged.

65.    Notwithstanding anything to the contrary in the Plan, on or before the Effective Date, any and all Intercompany Interests shall, at the option of the Debtors, as applicable, and as acceptable to the Required Holders, either be (i) extinguished, cancelled and/or discharged on the Effective Date, or (ii) unaffected by the Plan and continue in place following the Effective Date, solely for the administrative convenience of maintaining the existing corporate structure of the Debtors and the Reorganized Debtors.  Notwithstanding the foregoing, the Intercompany Interests of KPI Capital Holdings, Inc. in KPI Holdings, Inc., and the interests of KPI Holdings, Inc. in KPI Intermediate Holdings, Inc., shall be cancelled upon the merger of such entities, with KPI Capital Holdings, Inc. as the surviving corporation.

**I. Exemption From Certain Transfer Taxes**

66.     Pursuant to section 1146(a) of the Bankruptcy Code and to the fullest extent permitted by applicable law, (i) any issuance, transfer, or exchange under this Plan of New Pace Holdco Interests and the security interests in favor of the lenders under the New ABL Facility, the New Pace Industries Term Loan Facility or the New Pace Holdco Loan Facility and (ii) the making or delivery of an instrument or transfer under a plan confirmed under section 1129 or 1191 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

**J. Executory Contracts and Unexpired Leases**

67.     Subject to Section 10.4 of the Plan, this Order shall constitute an order of the Bankruptcy Court approving the assumption, assumption and assignment, or rejection, as applicable, of executory contracts and unexpired leases, the assumption, assumption and assignment, or rejection of which is provided for in Section 10.1 of the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code, and such assumption, assumption and assignment, or rejection shall be deemed effective as of the Effective Date.

68.     Subject to the occurrence of the Effective Date, the Debtors are authorized to assume, assume and assign and/or reject executory contracts or unexpired leases in accordance with Article X of the Plan and orders of this Court.  Each executory contract and unexpired lease assumed pursuant to Section 10.1 of the Plan shall revest in, and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law.  Any order entered after the Confirmation Date by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and

502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered prior to the Confirmation Date.

69. As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount (either as set forth in the Cure and Assumption Notices or as otherwise agreed to in writing by the Debtors and the applicable non-debtor counterparty), all executory contracts and unexpired leases to which any Debtor is a party identified, that are not on the Schedule of Rejected Contracts and Leases, as amended, modified or supplemented from time to time in accordance with the Plan, and shall be deemed assumed or assumed and assigned by and/or to the Reorganized Debtors; except that: (i) any executory contracts and unexpired leases that previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; and (ii) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as is determined by a Final Order of the Bankruptcy Court resolving such motion. Except as set forth in the immediately following paragraph, all executory contracts and unexpired leases that are not listed on the Schedule of Rejected Contracts and Leases shall be assumed by the Reorganized Debtors in accordance with Article X of the Plan, subject to the occurrence of the Effective Date.

70. Weber-Stephen Products LLC. Notwithstanding anything to the contrary in the Cure and Assumption Notices, Pace Industries, LLC and Pace Industries, Inc. shall satisfy all of their outstanding obligations under the contracts (including any related orders, forms or quotes) between Pace Industries, LLC or Pace Industries, Inc. and Weber-Stephen Products LLC listed on the Cure and Assumption Notices (collectively, the "Weber Contracts") as such obligations become due in the ordinary course of business regardless of whether such obligations arose before or after the Effective Date (including, without limitation, obligations that arose prior

to the Petition Date). All of Pace Industries, LLC's (on behalf of itself and, to the extent applicable, the other Debtors) and Weber-Stephen Products LLC's rights, claims, defenses, or otherwise in connection with the Weber Contracts are preserved.

71.     <u>Smiths Medical ASD, Inc</u>.  Notwithstanding anything to the contrary in the Plan, this Order, or the Cure and Assumption Notices, any claims for damages held by Smiths Medical ASD, Inc. ("<u>Smiths</u>") against the Debtors that arose prior to the Petition Date under the purchase orders listed on the Cure and Assumption Notices or the related Manufacture and Purchase Agreement dated November 28, 2018 (as amended, modified or otherwise supplemented) between Smiths and Pace Industries, LLC shall be treated as Disputed Claims in accordance with Article IX of the Plan. Smiths and Pace Industries, LLC (and, to the extent applicable, any other Debtors) shall determine, adjudicate, and resolve any disputes over the validity and amounts of such claims in the ordinary course of business in accordance with Article IX of the Plan. Nothing contained in the Plan, this Order, the Cure and Assumption Notices, any document related to any of the foregoing, or any other order of the Court is intended or shall be construed: (a) as an admission by the Debtors as to the validity or amount of any claim Smiths may assert against the Debtors; (b) as a waiver of the Debtors' rights to dispute any claim asserted by Smiths against the Debtors on any grounds; (c) as a promise to pay any claim asserted by Smiths against the Debtors; or (d) as a waiver of any setoff rights Smiths may validly assert under applicable law.  All of the Debtors' and Smiths' rights with respect to any claims Smiths has asserted or may assert against the Debtors are preserved.

72.     <u>STORE Capital Acquisitions, LLC</u>.  Notwithstanding anything to the contrary in the Cure and Assumption Notices, the Disbursement Agreements dated October 31, 2019 (File Nos. 7210/920118.12, 7210/920118.9, 7210/920118.4 (for 231 Industrial Park, 312 Industrial Park, and 512 Hwy 62/65 Bypass), and 7210/920118.11 (collectively, the

"Disbursement Agreements") by and between the Debtors and STORE Capital Acquisitions, LLC ("STORE") shall be assumed by the Debtors pursuant to Article X of the Plan. The Debtors and STORE agree that, as of the date hereof, no amounts are due and owing under the Disbursement Agreements.

73. The Hutchinson Group, Ltd. Notwithstanding anything to the contrary in the Cure and Assumption Notices, the Debtors and The Hutchinson Group, Ltd. ("Hutchinson") agree that the Cure Amount due under the purchase orders outstanding between Hutchinson and the Debtors to be assumed in accordance with the terms of the Plan totals $37,626.48, as evidenced by Invoice Nos. 3271-090, 3271-089, 3271-088, 3271-087, 3271-086, 3271-086A, and 3271-065 issued by Hutchinson to the Debtors.

74. Administration Systems Research Corporation International. In resolution of its informal objection, Administration Systems Research Corporation International shall have an Allowed Class 4 General Unsecured Claim in the amount of $81,171.82, to be paid in full in Cash in accordance with the Plan as soon as practicable after the Effective Date.

75. Delphi Powertrain Systems, LLC. Notwithstanding anything to the contrary in the Cure and Assumption Notices, the Debtors shall satisfy all of their outstanding obligations under that certain Pattern Agreement dated April 8, 2014, between Delphi Powertrain Systems, LLC ("Delphi") and Pace Industries, LLC listed on the Cure and Assumption Notices (the "Delphi Contract") as such obligations become determined (as agreed upon by Delphi and the Debtors) and due in the ordinary course of business, regardless of whether such obligations arose before or after the Effective Date (including, without limitation, obligations that arose prior to the Petition Date). Delphi and the Debtors shall determine, adjudicate, and resolve any disputes over the validity and amounts of such obligations in the ordinary course of business in

accordance with Article IX of the Plan. All of the Debtors' and Delphi's rights, claims, defenses, or otherwise in connection with the Delphi Contract are preserved.

76. <u>Magna Mirrors of America, Inc</u>. Notwithstanding anything to the contrary in the Cure and Assumption Notices, the Debtors shall satisfy all of their outstanding obligations under that certain Purchase Contract dated as of January 25, 2016, by and between Magna Mirrors of America, Inc. ("<u>Magna</u>") and Pace Industries, LLC (together with all outstanding purchase orders between Magna and the Debtors, the "<u>Magna Contracts</u>") as such obligations become determined (as agreed upon by Magna and the Debtors) and due in the ordinary course of business, regardless of whether such obligations arose before or after the Effective Date (including, without limitation, obligations that arose prior to the Petition Date). Magna and the Debtors shall determine, adjudicate, and resolve any disputes over the validity and amounts of such obligations in the ordinary course of business in accordance with Article IX of the Plan. All of the Debtors' and Magna's rights, claims, defenses, or otherwise in connection with the Magna Contracts are preserved.

77. <u>Mazuma and Sterling National Bank</u>. Notwithstanding anything to the contrary in the Cure and Assumption Notices, that certain Master Lease Agreement No. MCC1185, dated on or about December 30, 2010 (the "<u>MLA</u>"), identified in the Cure and Assumption Notices, which includes the following lease schedules (collectively, the "<u>Lease Schedules</u>" and, together with the MLA, the "<u>Mazuma Lease Agreement</u>"), relating to the Debtors' leasing from Mazuma of certain equipment (together, the "<u>Mazuma Equipment</u>") shall be, and hereby is, assumed by the Debtors pursuant 11 U.S.C. 365(b)(1) and Article X of the Plan. The Debtors and Mazuma agree that the Cure Amounts set forth below (collectively, the "<u>Actual Mazuma Cure Amount</u>") are the amounts due and owing by the Debtors under the Mazuma Lease Agreement as of May 1, 2020, and are subject to reduction by any and all

payments made by the Debtors after May 1, 2020, as mutually agreed upon by and between the

Debtors and Mazuma.

| Total Due Schedule | Item Due | Due Date 4/1/2020 | 5/1/2020 | Grand Total |
|---|---|---|---|---|
| **019** | Lease Payment | $192,160.68 | $192,160.68 | $384,321.36 |
| **019A** | Lease Payment | $77,141.84 | $77,141.84 | $154,283.68 |
| **019B** | Lease Payment | $16,987.09 | $16,987.09 | $33,974.18 |
| **019C** | Lease Payment | $23,798.02 | $23,798.02 | $47,596.04 |
| **020A** | Lease Payment | $13,919.31 | $13,919.31 | $27,838.62 |
| **020B** | Lease Payment | $58,285.87 | $58,285.87 | $116,571.74 |
| **020C** | Lease Payment | $49,455.77 | $49,455.77 | $98,911.54 |
| **021** | Lease Payment | $26,851.93 | $26,851.93 | $53,703.86 |
| **023R** | Lease Payment | $81,770.02 | $81,770.02 | $163,540.04 |
| | Sales Tax | $835.77 | $835.77 | $1,671.54 |
| **023R Total** | | **$82,605.79** | **$82,605.79** | **$165,211.58** |
| **024A** | Lease Payment | $152,527.46 | $152,527.46 | $305,054.92 |
| **024B** | Lease Payment | $121,508.04 | $121,508.04 | $243,016.08 |
| **025** | Lease Payment | $24,891.39 | $24,891.39 | $49,782.78 |
| **026R** | Lease Payment | $80,250.00 | $80,250.00 | $160,500.00 |
| **027** | Lease Payment | $73,785.27 | $73,785.27 | $147,570.54 |
| | Reconciliation | $84,254.40 | | $84,254.40 |
| **027 Total** | | **$158,039.67** | **$73,785.27** | **$231,824.94** |
| **028** | Lease Payment | $85,856.28 | $85,856.28 | $171,712.56 |
| **028A** | Progress Funding | $48,132.97 | $46,580.27 | $94,713.24 |
| **Grand Total** | | **$1,212,412.11** | **$1,126,605.01** | **$2,339,017.12** |

With respect to Sterling National Bank ("SNB"), all payments due on or after June 2, 2020 under

Lease Schedule 023R, other than sales taxes (which shall continue to be collected by Mazuma),

shall be paid by the Debtors or the Reorganized Debtors directly to SNB, by wire, in the ordinary

course and according to Lease Schedule 023R. The $82,605.79 payment due on May 1, 2020

(the "May Payment") shall be paid, in full, on June 3, 2020, provided, however, that the May

Payment shall be paid as follows: (i) $**58,482.66,** being remitted by Mazuma to SNB for and on

account of payments made by the Debtor to Mazuma after May 1, 2020, relating to Lease

Schedule 023R, and with such remittance expressly conditioned upon the Debtors having made,

and Mazuma having received, such payments in that amount relating to Lease Schedule 023R as of June 3, 2020, and (ii) **$23,287.36**, being remitted by the Debtors to SNB. The payment due June 1, 2020 under the Schedule 023R shall be made by the Debtors or Reorganized Debtors by wire on June 3, 2020 with (i) $81,770.02 being paid directly to SNB by the Debtors or Reorganized Debtors, and (ii) $835.77 being paid directly to Mazuma by the Debtors or the Reorganized Debtors for sales tax. The $82,605.79 payment due on April 1, 2020 shall be paid, in full, with (i) $81,770.02 being paid directly to SNB by the Debtors or Reorganized Debtors, and (ii) $835.77 being paid directly to Mazuma by the Debtors or the Reorganized Debtors for sales tax, each on or before July 15, 2020. SNB shall not look to payments made by the Debtors to Mazuma post-confirmation to satisfy the amounts due under this resolution.

78. Toyota Motor Engineering & Manufacturing North America, Inc. Notwithstanding anything to the contrary (including anything that purports to be supervening) in this Order or the Plan, the Reorganized Debtors agree as follows with respect to (a) Toyota Motor Engineering & Manufacturing North America, Inc., on behalf of itself and its indirect or direct subsidiaries, parents, and related North American affiliates (collectively, "Toyota") and (b) each of Toyota's tiered suppliers that use or incorporate goods or services supplied by the Debtors pursuant to existing executory contracts with the Debtors to provide production to Toyota (collectively, "Toyota Customers"):

    (i)    Pursuant to various purchase agreements, purchase orders, and/or other executory contracts between (x) the Debtors and Toyota Customers (collectively, the "Toyota Tier Agreements") and (y) the Debtors and Toyota, including those certain Toyota Motor Engineering & Manufacturing North America, Inc. Terms and Conditions, effective as of April 1, 2009, as posted on the private side of ToyotaSupplier.com, and the Contract Documents related thereto, including but not limited to the Scheduled Purchase Orders, as each of those terms are defined in the *Limited Objection and Reservation of Rights of Toyota Motor Engineering & Manufacturing North America, Inc. in Connection with the Debtors' Proposed Assumption of Certain Toyota Agreements* [Docket No. 176] (collectively, the "Toyota Terms" and together with the Toyota Tier Agreements referred to as the

"Toyota Agreements"), the Debtors supply certain goods and services to Toyota and Toyota Customers (collectively, "Items"). Pursuant to 11 U.S.C. § 365, the Reorganized Debtors are deemed to assume all of the Toyota Agreements in their entirety, as is, without modification of any kind.

(ii)     Subject to paragraph (iii) below, the Reorganized Debtors hereby assume and agree to pay, perform and discharge, any and all liabilities, responsibilities, and obligations set forth in the Toyota Agreements (collectively, "Obligations") as such Obligations become due and/or owing in the ordinary course of business, regardless of whether such Obligations arose before or after the Petition Date, including, but not limited to, any warranty, recall and product liability for all Items on the terms set forth in the applicable Toyota Agreements. For the avoidance of doubt, failure to specifically reference a provision in the Toyota Agreements herein does not alleviate the Reorganized Debtors' responsibilities under the Toyota Agreements. Toyota and Toyota Customers reserve all claims, defenses, rights, and interests as set forth in the Toyota Agreements or existing under applicable law, including, without limitation, tooling, returnable dunnage, intellectual property rights, rights of setoff and recoupment, warranty rights and claims, and confidential information.

(iii)    Toyota, the Toyota Customers, and the Reorganized Debtors, as applicable, shall determine, adjudicate, and resolve any disputes over the existence, validity and amounts of any Obligations in the ordinary course of business in accordance with the Toyota Agreements and Article IX of the Plan. Nothing contained in the Plan, this Order, the Cure and Assumption Notices, any document related to any of the foregoing, or any other order of the Court is intended or shall be construed as a waiver of any of the Debtors' and the Reorganized Debtors claims, defenses, rights and interests as set forth in the Toyota Agreements or otherwise existing under applicable law.

79.     JAC Products, Inc. Notwithstanding anything to the contrary in this Order or the Plan, the Debtors and JAC Products, Inc. ("JAC") agree that the Reorganized Debtors shall assume and agree to pay, perform and discharge, any and all liabilities, responsibilities, and obligations set forth in any executory contracts with JAC as such obligations become due and/or owing in the ordinary course of business, regardless of whether such obligations arose before or after the Petition Date, on the terms set forth in such executory contracts.

80.     Internal Revenue Service. The Debtors will file all federal tax returns that are due to be filed but have not yet been filed in the time frames indicated below. For the avoidance of doubt, if these federal tax returns are not filed in accordance with the deadlines and

other requirements imposed by non-bankruptcy law, the Debtors will remain subject to non-bankruptcy law, including but not limited to, any applicable penalties and interest for the late filing of such returns as may be required by the Internal Revenue Code.

    i.    Returns for *Case No. 20-10928: KPI Holdings LLC 1065/201912* will be filed within ninety (90) days of the Effective Date.

    ii.    Returns for *Case No. 20-10929: KPI Capital Holdings Inc. 1120/201712* will be filed within ninety (90) days of the Effective Date.

    iii.    Returns for *Case No. 20-10933: Pace Industries Inc. 945/201412-201912* will be filed within one hundred twenty (120) days of the Effective Date.

## K.    Fee Claims

81.    Except as otherwise provided in Section 3.3 of the Plan, all proofs or applications for payment of Fee Claims must be filed with the Bankruptcy Court by the date that is forty-five (45) days after the Effective Date (or, if such date is not a Business Day, by the next Business Day thereafter) or such later date as is determined by the Court. Pursuant to Section 3.3 of the Plan, objections to Fee Claims must be filed with the Bankruptcy Court and served on the Reorganized Debtors and the affected Professional Person no later than sixty-five (65) days after the Effective Date. Notwithstanding anything in the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* dated May 7, 2020 [Docket No. 162], all Professional Persons are authorized to file a single first and final fee application to this Court no later than forty-five (45) days after the Effective Date.

## L.    Administrative Expense Claims

82.    Each holder of an Allowed Administrative Expense Claim shall be paid 100% of the unpaid Allowed amount of such Claim in Cash on the date that is the later of: (a) the Effective Date (or as soon thereafter as reasonably practicable); (b) the date such Claim would

ordinarily be due and payable in accordance with ordinary business terms; and (c) the date (or as soon thereafter as reasonable practicable) that is fifteen (15) days (or, if such date is not a Business Day, on the next Business Day) after such Claim becomes an Allowed Claim or otherwise becomes payable under the Plan. Notwithstanding the foregoing, the holder of an Allowed Administrative Expense Claim may receive such other, less favorable treatment as may be agreed upon by such holder, together with the Debtors and the Required Holders.

**M.     Priority Tax Claims**

83.     Except to the extent that the applicable holder of an Allowed Priority Tax Claim has been paid by the Debtors before the Effective Date, or such holder agrees to less favorable treatment, together with the Debtors and the Required Holders, each holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, at the option of the Debtors (a) payment in full in Cash made on or as soon as reasonably practicable after the later of the Effective Date and the first Distribution Date occurring at least 20 calendar days after the date such Claim is Allowed, (b) regular installment payments over a period ending not later than five (5) years after the Petition Date in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, or (c) such other amounts and in such other manner as may be determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value as of the Effective Date equal to such Allowed Priority Tax Claim

84.     The Debtors shall have the right, in their sole discretion, to pay any Allowed Priority Tax Claim or any remaining balance of an Allowed Priority Tax Claim (together with accrued but unpaid interest) in full any time on or after the Effective Date.

**N.     Distributions**

85.     The procedures governing distributions contained in Article VIII of the Plan shall be, and hereby are, approved in their entirety.

### O. Stay of Confirmation Order Waived

86. This Order (a) is a final order and the period in which an appeal must be filed shall commence upon the entry hereof, (b) shall be immediately effective and enforceable upon the entry hereof, and (c) for good cause shown, based on the record of the Combined Hearing, shall not be subject to any stay otherwise applicable under the Bankruptcy Rules, including Bankruptcy Rule 3020(e).

### P. Binding Effect of Prior Orders

87. Pursuant to section 1141 of the Bankruptcy Code, effective as of and subject to the occurrence of the Effective Date, and subject to the terms of the Plan and this Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder, and all motions or requests for relief by the Debtors pending before the Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Reorganized Debtors and their respective successors and assigns.

### Q. Notice of Confirmation of the Prepackaged Plan

88. Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Debtors or the Reorganized Debtors, as the case may be, are directed to serve a notice of the entry of this Order, substantially in the form of <u>Exhibit B</u> attached hereto and incorporated by reference (the "<u>Notice of Confirmation</u>"), on all parties that actually received notice of the Combined Hearing no later than twenty (20) Business Days after the Effective Date; <u>provided</u>, <u>however</u>, that the Reorganized Debtors shall be obligated to serve the Notice of Confirmation only on the record holders of Claims or Interests as of the Confirmation Date. As soon as reasonably practicable after the entry of this Order, the Debtors shall make copies of this Order and the Notice of

Confirmation available on their reorganization website at https://kccllc.net/pace. Such service constitutes good and sufficient notice pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c).

### R.    Miscellaneous Provisions

89.    After the entry of this Order, subject to Section 14.3 of the Plan, so long as such action does not adversely affect the treatment of holders of Allowed Claims and Allowed Interests pursuant to the Plan, the Debtors may make appropriate technical adjustments, remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.  The Debtors may make technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court; provided, however, that, such technical adjustments and modifications are immaterial or do not adversely affect the treatment of holders of Claims or Interests under the Plan and such modifications comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Any waiver under Section 11.2 of the Plan shall not be considered to be a modification of the Plan.

90.    As of the date of this Order, the Section 341(a) Meeting (as defined in the Scheduling Order) has not been convened.  The convening of the Section 341(a) Meeting is hereby waived.

91.    On the Effective Date, the engagement of each Professional Person retained by the Debtors shall be terminated without further order of the Bankruptcy Court or act of the parties unless otherwise agreed by the Debtors and such Professional Person; provided, however, (a) such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent the Debtors with respect to applications for payment of such Fee Claims, and (b)

nothing herein or in the Plan shall prevent the Reorganized Debtors from retaining any such Professional Person on or after the Effective Date, which retention shall not require Bankruptcy Court approval.

92.     Any document related to the Plan that refers to a plan of reorganization of the Debtors other than the Plan confirmed by this Order shall be, and it is, deemed to be modified such that the reference to a plan of reorganization of the Debtors in such document shall mean the Plan confirmed by this Order, as appropriate.

93.     On or before substantial consummation of the Plan, the Debtors may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

94.     Police and Regulatory Powers.  For the avoidance of doubt, nothing in the Plan or this Order is intended to nor shall it be construed to bar any governmental unit (as that term is defined in section 101(27) of the Bankruptcy Code) from enforcing any police or regulatory power to the extent excepted from the automatic stay provisions of section 362(b)(4) of the Bankruptcy Code, regardless of whether the automatic stay is then in effect; provided that, in no event shall any governmental unit be permitted, whether through the commencement, conduct, or continuation of an administrative or judicial action or proceeding or otherwise, to assert, seek, pursue, collect, set off or otherwise recover a Claim, debt, obligation, expense or liability (whether direct or indirect, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due) of any kind or description, including any fine, penalty or other forfeiture, or any costs or expenses related thereto, arising from or related to, whether directly or indirectly, actions or omissions that occurred on or prior to the Effective Date (all such items, "Liabilities"), from or against a Debtor or Reorganized Debtor, as the case may be.

Determination of whether actions by governmental units violate this Order shall occur in this Court.

95.     Notwithstanding any provision in the Plan, this Confirmation Order or any implementing Plan documents (collectively, "Plan Documents"), nothing in the Plan Documents shall discharge or release the Debtors, the Reorganized Debtors, or any non-debtor from any right, claim, obligation, liability or Cause of Action of the United States or any State, or impairs the ability of the United States or any State to pursue any claim, liability, obligation, right, defense, or Cause of Action against any Debtor, Reorganized Debtor or non-debtor. Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests of or with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and the Reorganized Debtors shall comply with all applicable non-bankruptcy law. All claims, liabilities, obligations, rights, Causes of Action, or defenses of or to the United States or any State shall survive the Chapter 11 Case as if it had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, defenses, claims, obligations, liabilities, or Causes of Action would have been resolved or adjudicated if the Chapter 11 Case had not been commenced; provided, that nothing in the Plan Documents shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under non-bankruptcy law with respect to any such claim, liability, or cause of action. Without limiting the foregoing, for the avoidance of doubt, nothing shall: (i) require the United States or any State to file any proofs of claim or administrative expense claims in the Chapter 11 Case for any right, claim, liability, obligation, defense, or Cause of

Action; (ii) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors or any non-debtor; (iii) be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (iv) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (v) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (vi) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law. Failure to specifically include or reference particular sections or provisions of the Plan or any related agreement in this Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Court that the Plan be confirmed and such related agreements be approved in their entirety.

96.     To the extent the Plan is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtors and any party, the Plan controls the Disclosure Statement and any other such agreements. To the extent that the Plan is inconsistent with this Order, this Order (and any other orders of the Bankruptcy Court) controls the Plan.

97.     As of the Effective Date, pursuant to the Plan, the Reorganized Debtors may operate their business and use, acquire, and settle and compromise claims or interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Order.

98.     Unless otherwise provided in the Plan or in this Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court and extant on the date of entry of this Order shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

99.     Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan or by order of the Bankruptcy Court, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce any claims, rights and Causes of Action that the Debtors or the Estates may hold.

100.     Notwithstanding the entry of this Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, but not limited to, jurisdiction for the purposes set forth in Article XIII of the Plan.

Dated: May 29th, 2020
Wilmington, Delaware

MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE